1   Brian S. Kabateck, SBN 152054
    (bsk@kbklawyers.com)
2   Richard L. Kellner, SBN 171416
3   (rlk@kbklawyers.com)
    Evan M. Zucker, SBN 266702
4   (ez@kbklawyers.com)
5   KABATECK BROWN KELLNER LLP
6   644 South Figueroa Street
    Los Angeles, California  90017
7   Telephone: (213) 217-5000
8   Facsimile: (213) 217-5010

9   Austin Tighe
10  FEAZELL & TIGHE, LLP
    6618 Sitio Del Rio Boulevard
11  Building C-101
12  Austin, Texas 78730
    Tel: (512) 372-8100
13  Fax: (512) 372-8140
14  austin@feazell-tighe.com

15  Attorneys for Plaintiff, on behalf of himself
16  and all others similarly situated

17            **UNITED STATES DISTRICT COURT**

18            **NORTHERN DISTRICT OF CALIFORNIA**

19  CLIFFORD MCKENZIE on behalf of    CASE NO.
    himself and all others similarly
20  situated;                         <u>**Class Action**</u>
                                       **COMPLAINT FOR:**
21              Plaintiff,
22        vs.                         1. **Violation of Truth In Lending**
                                         **Laws 15 USC § 1601, et seq.;**
23  WELLS FARGO HOME
    MORTGAGE, INC., a California      2. **Breach of Contract;**
24  corporation; WELLS FARGO
    BANK, N.A., WELLS FARGO &         **JURY TRIAL DEMANDED**
25  COMPANY, and DOES 1 through 10
    inclusive;
26
27              Defendants.
28

Plaintiff Clifford McKenzie on behalf of himself and all others similarly situated, alleges as follows:

## NATURE OF ACTION

1.      Plaintiff Cliff McKenzie brings this action for violation of the Truth in Lending Act ("TILA") and breach of contract on his own behalf and on behalf of all similarly situated individuals or entities.  Plaintiff and the putative class members were improperly and unlawfully forced to purchase flood insurance on their property by Wells Fargo Home Mortgage, Inc., Wells Fargo Bank, N.A., Wells Fargo & Company (collectively "Wells" or "Defendants").

2.      Wells forced Plaintiff to purchase flood insurance on his home in excess of the requirements at law and in excess of the contract governing his loan.  Additionally, Wells improperly represented and failed to disclose the true terms of the flood insurance requirements of Plaintiff's loan.

3.      Wells has a policy whereby they review insurance policies held by Plaintiff and the putative class members and if it is determined that the hazard insurance on a home has policy limits in excess of any flood insurance policy, Wells requires the loan holder to purchase additional flood insurance. If the loan holder does not purchase the additional insurance on his/her own, Wells force-places this insurance though an affiliate carrier who charges excessive and exorbitant rates for that insurance.   These rates are in excess of the value and cost of the insurance coverage in order to provide a kickback to Wells.

4.      Plaintiff and putative class members have been damages by Wells' conduct by being forced to pay premiums for insurance coverage in excess of that required by law or their contractual agreements, and in excess of the usual and customary rates of insurance.

5.     Plaintiff seeks to represent the class defined as follows:

    All borrowers with loans secured by a one to four unit,
    owner occupied dwelling with a loan owned or serviced
    by Defendants, who were required by Defendants to
    purchase or maintain flood insurance within four years
    from the filing of this complaint through the close of the
    class notice period of this matter.

## THE PARTIES

6.     Plaintiff is an individual who, during all relevant times, resided in Harris County, State of Texas.

7.     Defendant Wells Fargo Home Mortgage, Inc., is a California corporation with its principal place of business in San Francisco, California. Wells is conducting its lending and home mortgage business throughout California and the United States, including Harris County Texas.

8.     Defendant Wells Fargo Bank N.A. is a national banking association legally chartered in Sioux Falls, South Dakota, with its principal place of business in San Francisco, California.

9.     Defendant Wells Fargo & Company is a nationwide financial services company incorporated in Delaware, with its principal place of business in San Francisco, California.

10.     Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein under the fictitious names Does 1 through 10, inclusive, and therefore, sues such Defendants by such fictitious names. Plaintiff will amend this complaint to allege the true names and capacities of said fictitiously named Defendants when their true names and capacities have been ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Doe Defendants are legally responsible in some manner for

the events and occurrences alleged herein, and for the damages suffered by Plaintiff. As used herein, the term "Defendant" refers collectively to all Defendants named herein.

11.    Plaintiff is informed, believes, and thereon alleges that all Defendants, including the fictitious Doe Defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, partners and/or joint venturers and employees of all other Defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture, conspiracy and/or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their Co-Defendants; however, this allegation is pled as an "alternative" theory wherever not doing so would result in a contradiction with other allegations.

12.    As an alternative theory, Plaintiff is informed and believes, and on that basis alleges, that Defendants are alter egos of each other.  Plaintiff is informed and believes, and on that basis alleges, that there is common control over Defendants, and they operate pursuant to a common business plan. There is unity of interest among Defendants.

13.    The alternative alter-ego relationship among the Defendants should be recognized to prevent an injustice.  If the alter-ego relationship among Defendants is not recognized, an inequity will result because an entity responsible for wrongdoing will be shielded from liability.  Moreover, the Co-Defendant entities which make, in whole or in part, the decisions would escape liability, which is inequitable.  Furthermore, the alter ego relationship should be recognized to ensure effective injunctive and declaratory relief, so that the wrongful practices alleged herein are not relocated to an affiliated company.

14.   All allegations in this complaint are based on information and belief and/or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.  Whenever allegations in this complaint are contrary or inconsistent, such allegations shall be deemed alternative.

## JURISDICTION AND VENUE

15.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the Truth In Lending Act, 12 U.S.C. § 1601 *et seq.*  The Court also has original diversity jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  Plaintiffs are citizens of different states than Defendants.  The amount in controversy in this action exceeds $5,000,000 and there are more than 100 members in the proposed class.

16.   This Court also has diversity jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332(a).  The matter in controversy is greater than $75,000 and this matter is between citizens of different states.  This Court also has supplemental or pendent jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

17.   Venue is proper in the United States District Court, pursuant to 28 U.S.C. §1391(c) because Defendants are corporations wherein they are subject to personal jurisdiction in the venue of this Court at the time the action was commenced with their headquarters and principal place of business located in San Francisco California.

## FACTUAL ALLEGATIONS

18.   On March 5, 2004 Cliff McKenzie entered into a home loan with Mortgage Resource Group, LLC which was secured by a deed of trust on his home located at 2619 Sailboat Drive, Houston, Texas 77058.  Attached hereto

1    as Exhibit A is a true and correct copy of Mr. McKenzie's redacted note.

2    Attached hereto as Exhibit B is a true and correct copy of Mr. McKenzie's

3    redacted Deed of Trust.

4          19.    Plaintiff's loan is now owned by Wells.

5          20.    Mr. McKenzie's home on Sailboat drive had a market value of

6    less than $200,000.  Mr. McKenzie carried a Flood insurance policy with

7    coverage amount of $215,000.00 through the FEMA National Flood

8    Insurance Program, policy #SF00520917.  A true and correct copy of Mr.

9    McKenzie's Flood Dwelling Policy Endorsement declaration is attached

10   hereto as Exhibit C.

11         21.    Mr. McKenzie is legally obligated to maintain flood insurance

12   for no more than the amount of the mortgage loan which was originally

13   $109,264.00.   Mr. McKenzie's FEMA flood insurance policy met this

14   requirement.

15         22.    On June 2, 2011, Mr. McKenzie received a letter from

16   Defendants titled "FLOOD INSURANCE COVERAGE DEFICIENCY

17   NOTIFICATION".  The letter states that Wells' records indicate that that

18   amount of coverage provided by Plaintiff's flood insurance carrier is less than

19   the coverage required by Wells.  The letter also says if the additional

20   coverage is not obtain in 45 days Wells is "required to secure additional flood

21   insurance for you at your expense."  This letter also advised that the force-

22   placed insurance coverage would be purchased though and affiliate of Wells

23   and would in almost all instances be more expensive that otherwise obtained

24   insurance coverage.

25         23.    This letter was fraudulent, deceptive and misleading.  Mr.

26   McKenzie has sufficient flood insurance and Wells was not required to secure

27   additional flood insurance.

28

COMPLAINT

24. Wells owes Plaintiff a duty of good faith and fair dealing and Wells breached that duty by requiring force-placed flood insurance and providing deceptive, fraudulent, misleading and unfair disclosures and statements to Plaintiff and by purchasing this insurance coverage from an affiliate of Wells from whom they received a kickback.

25. Plaintiff provided Wells with evidence of a flood insurance policy in excess of the required coverage with a policy limit of $215,700 (in excess of the outstanding balance of the loan and, in fact, the value of the property) with a yearly premium of $595.00 though FEMA National Flood Insurance Program. Despite Plaintiff's response and proffer of evidence of sufficient flood insurance coverage, on July 22, 2011 Defendants force-purchased additional flood insurance on Mr. McKenzie's home at the expense of Mr. McKenzie for an additional $21,300.00, with an annual premium of $192.00. This conduct was unfair and unlawful.

26. Wells force-placed flood insurance on Plaintiff and putative class members homes at the expense of Plaintiff and the class while purchasing this insurance through an affiliate who they received a kickback from. Wells added the additional premium to the balance of Plaintiff and class members' loans thereby increasing interest received and expanding the possibility for recovering late fees.

27. As a result of Defendants' conduct, as alleged herein, Plaintiff and class members have been damaged, including, but not limited to, payment of unnecessary and excessive insurance premiums.

## CLASS ALLEGATIONS

28. Plaintiff brings this action on his own behalf and on behalf of all persons similarly situated pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks to represent the following class:

1       All borrowers with loans secured by a one to four unit,

2       owner occupied dwelling with a loan owned or serviced

3       by Defendants, who were required  by Defendants to

4       purchase or maintain flood insurance within four years

5       from the filing of this complaint through the close of the

6       class notice period of this matter.

7       29.    Excluded from the class are governmental entities, Defendants,

8  any entity in which Defendants have a controlling interest, and Defendants'

9  officers, directors, affiliates, legal representatives, employees, co-

10  conspirators, successors, subsidiaries, and assigns.  Also excluded from the

11  class is any judge, justice, or judicial officer presiding over this matter and the

12  members of their immediate families and judicial staff.

13       30.    Plaintiff's claims are typical of the claims of the class.  Plaintiff

14  is a member of the class he seeks to represent.  Members of the class are

15  ascertainable from Plaintiff's description of the class and/or Defendants'

16  records and/or records of third parties accessible through discovery.

17       31.    The representative Plaintiff will fairly and adequately represent

18  the members of the class and has no interests which are antagonistic to the

19  claims of the class.  The Plaintiff's interests in this action are antagonistic to

20  the interests of Defendants, and he will vigorously pursue the claims of the

21  class.

22       32.    The representative Plaintiff has retained counsel who are

23  competent and experienced in class action litigation, and have successfully

24  represented plaintiffs in complex class actions.

25       33.    Common questions of law and fact impact the rights of each

26  member of the class and a common remedy by way of permissible damages,

27  restitutionary disgorgement and/or injunctive relief is sought for the class.

28

34.   There are numerous and substantial questions of law and fact common to all members of the class which will predominate over any individual issues. These common questions of law and fact include, without limitation:

    a.  Whether Plaintiff was charged for flood insurance not required by legal obligation;

    b.  Whether Defendants misrepresented, failed to disclose or deceived Plaintiff;

    c.  Whether Defendants' disclosures clearly and conspicuously disclose the amount of flood insurance required by legal obligation.

    d.  Whether Defendants' disclosures violated TILA;

    e.  Whether Defendants breached their contractual obligations;

    f.  Whether Defendants owe a duty of good faith and fair dealing to refrain from force-placing flood insurance in excess of the borrowers legal obligation;

    g.  Whether Defendants have been unjustly enriched;

    h.  Whether Defendants should be required to provide restitutionary disgorgement to class members;

    i.  Whether class members have been damaged by Defendants' conduct;

    j.  Whether class members are entitled to declaratory relief; and

    k.  Whether Defendants' conduct should be enjoined.

35.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Trial of Plaintiff's and the class members' claims is manageable.  Unless a class is certified, Defendants will be unjustly enriched at the expense of class members.

36.     There is no plain, speedy or adequate remedy other than by maintenance of this class action because Plaintiff is informed and believes that damage to each member of the class is relatively small, making it economically unfeasible to pursue remedies other than by way of a class action.

37.     The persons in the class are so numerous that disposition of their claims in this case and as part of a single class action lawsuit, rather than numerous individual lawsuits, will benefit the parties and greatly reduce the aggregate judicial resources that would be spent.

38.     Plaintiff knows of no difficulty that will be encountered in the management of this litigation, which would preclude its maintenance of a class action.

39.     Defendants have acted on grounds generally applicable to the entire class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole. Prosecution of separate actions by individual members of the class would create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the Defendants.

40.     Without a class action, Defendants will likely retain the benefit of their wrongdoing and will continue a course of action, which will result in further damages to Plaintiff and the class.

/ / /

/ / /

COMPLAINT

# FIRST CAUSE OF ACTION

## Violations of Truth in Lending Laws, 15 U.S.C. §1601, et seq.

### (By Plaintiff and the Class Against Defendants and Does 1 through 10)

41.     Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

42.     Congress enacted the Truth in Lending Act to ensure meaningful disclosures of the terms of leases of personal property for personal, family, or household purposes.  Plaintiff's loan was for personal property for personal, family or household purposes and qualifies for the protections of TILA.

43.     12 C.F.R. §226.17 and 12 C.F.R. §226.5 require lenders to make full disclosures at the consummation of a loan.  These terms are required to be made clearly and conspicuously.  The disclosures are required to set forth the terms and legal obligations between the parties.  A misleading disclosure is as much a violation of TILA as a failure to disclose at all.

44.     Regulation Z (12 C.F.R. Part 226) defining the implementation of TILA requires that lenders clearly and conspicuously disclose the terms of insurance requirements.

45.     Defendants failed to adequately disclose the terms of the insurance requirements.

46.     Defendants violated TILA by misrepresenting to Plaintiff and class members that they were required to purchase flood insurance in amounts greater than necessary to secure the amount of funds loaned.

47.     Defendants' notices to Plaintiff and the class members demanding additional flood insurance failed to disclose the terms of the flood insurance requirement in place or under law.

48.     Defendants' failed to provide proper disclosures regarding its amendment of the terms of the loan, including the alteration of the terms with

11

1  regard to the amount of flood insurance required by borrower . This conduct

2  violates TILA and Regulation Z.

3      49.    Plaintiff's claim is timely in that the failure to disclose happened

4  within the statutory time period required by Plaintiff to bring an action under

5  TILA or could only be discovered within the applicable time period or was

6  equitably tolled by the conduct of Defendants.

7      50.    Plaintiff and class members have been damaged as the result of

8  Defendants' violation of TILA, including, but not limited to, incurring

9  excessive insurance premiums.

10                    **SECOND CAUSE OF ACTION**

11                        **Breach of Contract**

12  **(By Plaintiff and the Class Against Defendants and Does 1 through 10)**

13      51.    Plaintiff incorporates all preceding paragraphs as though fully

14  set forth herein.

15      52.    Plaintiff and Defendants have a contractual relationship

16  evidenced by the Note and Deed of Trust securing the property at 2619

17  Sailboat Drive, Houston , Texas.

18      53.    Defendants are responsible for the mortgage loan servicing

19  obligations under the Note as well as the application of hazard insurance,

20  including flood insurance requirements.

21      54.    Plaintiff performed all obligations under his contractual

22  relationship except to the extent excuse by the conduct of Defendants.

23      55.    The Notes and Deeds of Trust are industry standard form

24  documents. Industry practice does not allow borrowers an opportunity to

25  make changes to the Note or Deed of Trust. The Note and Deed of Trust are

26  presented on a "take it or leave it" basis. Consistent with industry practice,

27  Plaintiff was not provided an opportunity to make any changes to his Note or

28  Deed of Trust and was offered them on a "take it or leave it" basis. Given the

superior bargaining power of the industry and its lenders, the Notes and Deeds of Trust are contracts of adhesion.

56.     Defendants breached the terms of the Note and Deed of Trust by force-placing flood insurance on Mr. McKenzie's loan in excess of his principal loan balance and the amount of coverage required by the contractual relationship and despite Mr. McKenzie carrying adequate flood insurance.

57.     The Note and Deed of Trust entered into by Mr. McKenzie contains an implied covenant of good faith and fair dealing.  Defendants breached that covenant by force-placing flood insurance in excess of the necessary and required amount and charging Plaintiff for the premium. Defendants also breached the contract and the covenant by charging excessive premiums for the force-placed insurance.

58.     Plaintiff and class members have been damaged as the result of Defendants' breach of contract, including, but not limited to, incurring excessive insurance premiums.

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1.     Certification of the proposed class and notice thereto to be paid by Defendants;

2.     For general, special, compensatory and incidental damages in an amount to be determined at trial, prejudgment interest and other damages according to proof;

3.     For reasonable attorneys' fees and costs;

4.     For restitutionary disgorgement of all profits Defendants obtained as a result of their unfair and/or fraudulent business practices;

5.     For appropriate injunctive and declaratory relief;

COMPLAINT

6.     For costs of suit herein; and

7.     For such further relief as the Court may deem just and proper.

Dated:  October 5, 2011            KABATECK BROWN KELLNER LLP


By: _____
        Richard L. Kellner
        Evan M. Zucker

FEAZELL & TIGHE, LLP
        Austin Tighe

        Attorneys for Plaintiff on behalf of
        himself and all others similarly
        situated

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demand a trial by jury of all claims and causes of action in this lawsuit.

Dated:  October 5, 2011                    KABATECK BROWN KELLNER LLP


By: _____
        Richard L. Kellner
        Evan M. Zucker

FEAZELL & TIGHE, LLP
        Austin Tighe

        Attorneys for Plaintiff on behalf of himself and all others similarly situated

COMPLAINT

EXHIBIT A

THIS IS TO CERTIFY THAT THIS
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL DOCUMENT
WELLS FARGO HOME MORTGAGE INC.

**NOTE**

Loan Number
FHA Case No.

493-7684524  703

MARCH 5, 2004    S.S.H.
[Date]

**ORIGINAL NOTE**

2619 SAILBOAT DRIVE, HOUSTON, TEXAS  77058 ✓
[Property Address]

**1.  PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means MORTGAGE RESOURCE GROUP, L.L.C. OF OK DBA CITY MORTGAGE GROUP LC and its successors and assigns.

**2.  BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of ONE HUNDRED NINE THOUSAND TWO HUNDRED SIXTY-FOUR AND 00/100ths Dollars (U.S.$109,264.00), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of FIVE AND ONE-HALF percent (5.500%) per year until the full amount of principal has been paid.

**3.  PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4.  MANNER OF PAYMENT**

(A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on MAY 1, 2004. Any principal and interest remaining on the first day of APRIL, 2019, will be due on that date, which is called the maturity date.

(B) Place

Payment shall be made at 2745 N. DALLAS PKWY, SUITE 420, PLANO, TEXAS  75093 or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $892.78. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box.]

☐ Graduated Payment Allonge          ☐ Other [Specify]

☐ Growing Equity Allonge

**5.  BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6.  BORROWER'S FAILURE TO PAY**

(A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR percent ( 4.000 %) of the overdue amount of each payment.

(B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorney's fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

## ORIGINAL NOTE

✓ CLIFFORD H. MCKENZIE      (Seal)
-Borrower

✓ JANET D. MCKENZIE      (Seal)
-Borrower

PAY TO THE ORDER OF

__WELLS FARGO HOME MORTGAGE, INC.__

WITHOUT RECOURSE

THIS _29th_ DAY OF _MARCH_ , _2004_

MORTGAGE RESOURCE GROUP, L.L.C. OF OK DBA CITY MORTGAGE GROUP LC

BY WELLS FARGO HOME MORTGAGE, INC.

ATTORNEY-IN-FACT

BY: _____

TITLE: _____

*Joyce Lockwood*
*Vice President*
*Loan Documentation*

Exhibit B

FILED BY
FIDELITY NATIONAL TITLE

**X498315**
03/31/04   100444790        $27.00

This Instrument Was Prepared By: Richard D. Hawn & Co. LC, 14850 Montfort Drive #197, Dallas, Texas 75254

Wells Fargo Home Mortgage, Inc.
3601 Minnesota Drive, Suite 200
Bloomington, MN 55435

FHA Case No.

493-7684524

Loan Number 0134402809

———————— [Space Above This Line For Recording Data] ————————

**Notice of confidentiality rights: If you are a natural person, you may remove or strike any of the following information from this instrument before it is filed for record in the public records: Your Social Security Number or Your Driver's License Number.**

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on MARCH 5, 2004. The grantor is CLIFFORD H. MCKENZIE AND WIFE, JANET D. MCKENZIE whose address is 2619 SAILBOAT DRIVE, HOUSTON, TEXAS 77058 ("Borrower"). The trustee is THOMAS E. BLACK, JR whose address is 132 WEST MAIN STREET, LEWISVILLE, TEXAS 75057 ("Trustee"). The beneficiary is MORTGAGE RESOURCE GROUP, L.L.C. OF OK DBA CITY MORTGAGE GROUP LC, which is organized and existing under the laws of THE STATE OF TEXAS, and whose address is 2745 N. DALLAS PKWY, SUITE 420, PLANO, TEXAS 75093 ("Lender"). Borrower owes Lender the principal sum of ONE HUNDRED NINE THOUSAND TWO HUNDRED SIXTY-FOUR AND 00/100ths Dollars (U.S.$109,264.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on APRIL 1, 2019. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in HARRIS County, Texas:

**Lot Thirty-one (31), in Block Five (5), of CORRECTION OF REPLAT OF THE SECTION TWO (2) REPLAT OF THE REPLAT OF A PORTION OF BAL HARBOUR COVE, an addition in Harris County, Texas, according to the map or plat thereof recorded in Volume 308, Page 64 of the Map Records of Harris County, Texas.**

which has the address of ___2619 SAILBOAT DRIVE_____ , ___HOUSTON_____ ,
                                                              [Street]                                    [City]

Texas ____77058____ ("Property Address");
          [Zip Code]

Page 1 of 7

FHA Texas Deed of Trust
6/96



TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which

FHA Texas Deed of Trust

Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

FHA Texas Deed of Trust

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within **60 days** from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **60 days** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

FHA Texas Deed of Trust

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

Page 5 of 7

FHA Texas Deed of Trust

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public vendue between the hours of 10 a.m. and 4 p.m. on the first Tuesday in the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this paragraph 18, Borrower or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee paid is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**20. Substitute Trustee.** Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

Page 6 of 7                                                                                         **FHA Texas Deed of Trust**

**22. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**23. Purchase Money; Vendor's Lien; Renewal and Extension.** The Note secured hereby is in renewal and extension, but not in extinguishment, of that certain indebtedness described in the attached Renewal and Extension Information made a part hereof.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)]

☐ Condominium Rider   ☐ Growing Equity Rider   ☐ Adjustable Rate Rider

☒ Planned Unit Development Rider   ☐ Graduated Payment Rider   ☒ Other [Specify]
                               Renewal and Extension Addendum

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____   _Clifford H. McKenzie_ (Seal)
                  CLIFFORD H. MCKENZIE     -Borrower

_____   _Janet D. McKenzie_ (Seal)
                  JANET D. MCKENZIE      -Borrower

_____ (Seal)   _____ (Seal)
            -Borrower                       -Borrower

State of TEXAS               )
County of HARRIS             )
  This instrument was acknowledged before me on _05 March 2002_ by CLIFFORD H. MCKENZIE AND WIFE, JANET D. MCKENZIE .
(Seal)

My commission expires:         Notary Public, State of TEXAS
_06/23/07_             Notary's typed or printed name:

          JEREMY SCOTT WARE
          MY COMMISSION EXPIRES
          June 23, 2007

                 _Jeremy Scott Ware_

Loan Number ████████
FHA Case No.

493-7684524

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **5TH** day of **MARCH** , **2004** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **MORTGAGE RESOURCE GROUP, L.L.C. OF OK DBA CITY MORTGAGE GROUP LC** ("Lender") of the same date and covering the Property described in the Security Instrument and located at:

**VE, HOUSTON, TEXAS 77058**
[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as

**BAL HARBOUR COVE, SECTION TWO**
[Name of Planned Unit Development]

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.  So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

GMD 0053 (1095)

*(page 1 of 2 pages)*

C.  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
CLIFFORD H. MCKENZIE                       Borrower

_____ (Seal)
JANET D. MCKENZIE                          Borrower

GMD 0053 (1095)                                    *(page 2 of 2 pages)*

# RENEWAL AND EXTENSION ADDENDUM TO DEED OF TRUST

### DATED MARCH 5, 2004.

**EXECUTED BY: CLIFFORD H. MCKENZIE AND WIFE, JANET D. MCKENZIE**

**FOR THE BENEFIT OF: MORTGAGE RESOURCE GROUP, L.L.C. OF OK DBA CITY MORTGAGE GROUP LC**

This Note is given in renewal and extension of the following described promissory note(s) and all of the liens, rights, assignments and security interests securing them that are created, made or granted by the following described instruments, all upon and against the herein described real property, which said note(s) and lien(s) are hereby expressly acknowledged by Grantor to be valid and subsisting lien(s) against the property herein described; and it is expressly stipulated and agreed that said lien(s) are hereby renewed, extended and continued in full force and effect to secure the payment of the Note hereby secured and Beneficiary herein or its assigns are duly subrogated to all rights, powers and equities of the original holder of said Note.

**First Note**

| | |
|---|---|
| Date: | 06-16-98 |
| Original Amount: | $109,000.00 |
| Payee: | ACCUBANC MORTGAGE CORPORATION |

Note and Lien(s) are described in the instrument(s) recorded in the following Volumes and Pages of the Real Property Records of HARRIS County, Texas:

FILED ON JULY 23, 1998, IN THE OFFICE OF THE COUNTY CLERK OF HARRIS COUNTY, TEXAS, UNDER INSTRUMENT FILE NUMBER T159553; ADDITIONALLY SECURED BY VENDOR'S LIEN OF EVEN DATE, FILED OF RECORD ON JULY 23, 1998 IN THE OFFICE OF THE COUNTY CLERK OF HARRIS COUNTY, TEXAS, UNDER INSTRUMENT FILE NUMBER T159552.

**First Note Assignment**

| | |
|---|---|
| Date: | 11-02-98 |
| Assigned to: | GMAC MORTGAGE CORPORATION, A PENNSYLVANIA CORPORATION |

Note and Lien(s) are described in the instrument(s) recorded in the following Volumes and Pages of the Real Property Records of HARRIS County, Texas:

MARCH 19, 1999, UNDER CLERK'S FILE NUMBER(S) T608338, OFFICIAL RECORDS OF HARRIS COUNTY, TEXAS.

SIGNED FOR IDENTIFICATION:

FILED
2004 MAR 31 AM 11: 27

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED in the Official Public Records of Real Property of Harris County, Texas on

MAR 3 1 2004

COUNTY CLERK
HARRIS COUNTY, TEXAS

Poor Quality Recording Info.

_____
CLIFFORD H. MCKENZIE

_____
JANET D. MCKENZIE