1  Brian S. Kabateck, SBN 152054
   (bsk@kbklawyers.com)
2  Richard L. Kellner, SBN 171416
   (rlk@kbklawyers.com)
3  Evan M. Zucker, SBN 266702
   (ez@kbklawyers.com)
4  KABATECK BROWN KELLNER LLP
   644 South Figueroa Street
5  Los Angeles, California  90017
   Telephone: (213) 217-5000
6  Facsimile: (213) 217-5010

7  Attorneys for Plaintiffs, on behalf of themselves
8  and all others similarly situated

9             UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 11  CLIFFORD MCKENZIE, DANIEL BIDDIX, ROBIN BIDDIX, DAVID KIBILOSKI, AND VIRGINIA RYAN on behalf of themselves and all others similarly situated; <br><br> Plaintiff, <br><br> vs. <br><br> WELLS FARGO HOME MORTGAGE, INC., a California corporation; WELLS FARGO BANK, N.A., WELLS FARGO & COMPANY, WELLS FARGO INSURANCE, INC., and DOES 1 through 10 inclusive; <br><br> Defendants. | CASE NO.  4:11-CV-04965-DMR **Class Action** **SECOND AMENDED COMPLAINT FOR:** <br><br> 1. **Violation of Truth In Lending Laws 15 USC § 1601, et seq.;** <br> 2. **Breach of Contract;** <br> 3. **Violation of Real Estate Settlement Procedures Act;** <br> 4. **Unjust Enrichment;** <br> 5. **Breach of Fiduciary Duty;** <br> 6. **Conversion;** <br> 7. **Violation of the New Mexico Unfair Trade Practices Act** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Clifford McKenzie, Daniel and Robin Biddix, David Kibiloski and Virginia Ryan on behalf of themselves and all others similarly situated, allege as follows:

**NATURE OF ACTION**

1. Plaintiffs Clifford McKenzie, Daniel and Robin Biddix, David Kibiloski and Virginia Ryan ("Plaintiffs") bring this action for violation of the Truth in Lending Act ("TILA"), breach of contract, unjust enrichment, breach of fiduciary duty and conversion on their own behalf and on behalf of all similarly situated individuals or entities.  Plaintiffs David Kibiloski and Virginia Ryan also bring this action for violation of the New Mexico Unfair Trade Practices Act on behalf of themselves and all similarly situated individuals or entities with loans and lines of credit secured by property located in the state of New Mexico.  Plaintiffs and the putative classes' members were improperly and unlawfully forced to purchase flood insurance on their property by Wells Fargo Home Mortgage, Inc., Wells Fargo Bank, N.A., Wells Fargo & Company, and Wells Fargo Insurance, Inc.(collectively "Wells" or "Defendants").

2. Wells forced Plaintiffs to purchase flood insurance on their homes in excess of the requirements at law and in excess of the contracts governing their loans.  Additionally, Wells improperly represented and failed to disclose the true terms of the flood insurance requirements of Plaintiffs' loans.

3. Wells has a policy whereby they review insurance policies held by Plaintiffs and putative class members and if it is determined that the hazard insurance on a home has policy limits in excess of any flood insurance policy, Wells requires the borrower to purchase additional flood insurance.  Wells requires the borrower to purchase flood insurance even when the borrower sends proof of adequate flood insurance coverage.  If the borrower does not purchase the additional insurance on his/her own, Wells force-places this insurance though an affiliate carrier who charges excessive and exorbitant

rates for that insurance.  These rates are in excess of the value and cost of the insurance coverage in order to provide a kickback to Wells.

4.      Wells and their affiliates charge excessively high insurance premiums above what an independent insurance company would charge even though those insurance policies are, as described in Wells' letters to Plaintiffs, limited compared with independently written insurance policies.  The excess costs are due to the commissions and/or fees collected by Wells in connection with placing the policies.

5.      Wells charges the inflated force-placed flood insurance policy premium to borrowers escrow account, thereby adding it to the borrowers' loan balance and/or extracts the forced placed premium amounts from class members regular monthly payments, so that Wells can also charge late fees and reap potentially other fee income, such as fees from loan modifications and potentially, foreclosure.  Wells, as servicer of these loans (and not the Lender, *i.e.*, the current owner of the loans, typically Fannie Mae or Freddie Mac) is in a conflicted position.  Wells' flood insurance policy is designed to benefit only Wells' own self-interest in creating as much servicing income as it can, regardless of the effect that has on borrowers' ability to pay for the unnecessary insurance, nor the effect that increasing borrowers insurance obligations has on the current owners of the loans, *i.e.*, Fannie Mae or Freddie Mac.  Thus, by creating additional flood insurance obligations that contravene federal flood requirements, federal servicer requirements and the terms of the mortgage agreements, Wells is acting in its own self-interest to create additional fee income for itself from kickbacks, commissions, late fees, loan modification fees brought about in whole or in part by creating additional and unnecessary flood insurance obligations, and ultimately, perhaps reaping fees for foreclosing on properties where borrowers can no longer keep up with the

increasing payment obligations created by Wells' illegal flood insurance demands. Wells is engaging in this activity to the detriment of both the borrowers whose loans Wells services as well as the interests of the owners of those loans.

6.    Plaintiffs and putative class members have been damaged by Wells' conduct by being forced to pay excessive and inflated premiums for insurance coverage exceeding that required by law and their contractual agreements.

## THE PARTIES

7.    Plaintiff Clifford McKenzie is an individual who, during all relevant times, resided in Harris County, State of Texas and owns property there securing his mortgage serviced by Defendants.

8.    Plaintiffs Daniel and Robin Biddix are married residents of San Angelo, Texas and owned property there securing their mortgage serviced by Defendants.

9.    Plaintiffs David Kibiloski and Virginia Ryan are married residents of Arizona and own property in Las Cruces, New Mexico to secure their mortgage loan refinanced through and serviced by Defendants.

10.    Defendant Wells Fargo Home Mortgage, Inc., is a California corporation with its principal place of business in San Francisco, California. Wells conducts lending and home mortgage business throughout California and the United States, from its California headquarters.

11.    Defendant Wells Fargo Bank N.A. is a national banking association legally chartered in Sioux Falls, South Dakota, with its principal place of business in San Francisco, California. Wells Fargo Bank, N.A. does business as Wells Fargo Home Mortgage, Inc., and Wells Fargo Home Mortgage, Inc. is a "division" of and a subsidiary of Wells Fargo Bank, N.A.

SECOND AMENDED COMPLAINT

1    12.    Defendant Wells Fargo & Company is a nationwide financial

2  services company incorporated in Delaware, with its principal place of

3  business in San Francisco, California.

4    13.    Wells Fargo Insurance, Inc. is an affiliate of Wells Fargo Home

5  Mortgage, Inc. and Wells Fargo Bank, N.A., and is headquartered in St. Louis

6  Park, Minnesota.

7    14.    Plaintiffs are currently ignorant of the true names and capacities,

8  whether individual, corporate, associate, or otherwise, of the Defendants sued

9  herein under the fictitious names Does 1 through 10, inclusive, and therefore,

10  sues such Defendants by such fictitious names.  Plaintiffs will amend this

11  second amended complaint to allege the true names and capacities of said

12  fictitiously named Defendants when their true names and capacities have been

13  ascertained.  Plaintiffs are informed and believe and thereon allege that each

14  of the fictitiously named Doe Defendants are legally responsible in some

15  manner for the events and occurrences alleged herein, and for the damages

16  suffered by Plaintiffs. As used herein, the term "Defendants" refers

17  collectively to all Defendants named herein.

18    15.    Plaintiffs are informed, believe, and thereon allege that all

19  Defendants, including the fictitious Doe Defendants, were at all relevant times

20  acting as actual agents, conspirators, ostensible agents, partners and/or joint

21  venturers and employees of all other Defendants, and that all acts alleged

22  herein occurred within the course and scope of said agency, employment,

23  partnership, joint venture, conspiracy and/or enterprise, and with the express

24  and/or implied permission, knowledge, consent, authorization and ratification

25  of their Co-Defendants; however, this allegation is pled as an "alternative"

26  theory wherever not doing so would result in a contradiction with other

27  allegations.

28

16.     As an alternative theory, Plaintiffs are informed and believe, and on that basis allege, that Defendants are alter egos of each other.  Plaintiffs are informed and believe, and on that basis allege, that there is common control over Defendants, and they operate pursuant to a common business plan. There is unity of interest among Defendants.

17.     The alternative alter-ego relationship among the Defendants should be recognized to prevent an injustice.  If the alter-ego relationship among Defendants is not recognized, an inequity will result because an entity responsible for wrongdoing will be shielded from liability.  Moreover, the Co-Defendant entities which make, in whole or in part, the decisions would escape liability, which is inequitable.  Furthermore, the alter ego relationship should be recognized to ensure effective injunctive and declaratory relief, so that the wrongful practices alleged herein are not relocated to an affiliated company.

18.     All allegations in this second amended complaint are based on information and belief and/or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.  Whenever allegations in this second amended complaint are contrary or inconsistent, such allegations shall be deemed alternative.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the Truth In Lending Act, 12 U.S.C. § 1601 *et seq.*  The Court also has original diversity jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  Plaintiffs are citizens of different states than Defendants.  The amount in controversy in this action exceeds $5,000,000 and there are more than 100 members in the proposed class.

SECOND AMENDED COMPLAINT

20.    This Court also has diversity jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332(a).  The matter in controversy is greater than $75,000 and this matter is between citizens of different states.  This Court also has supplemental or pendent jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

21.    Venue is proper in the United States District Court, pursuant to 28 U.S.C. §1391(c) because Defendants are corporations wherein they are subject to personal jurisdiction in the venue of this Court at the time the action was commenced with their headquarters and principal place of business located in San Francisco, California.

**FACTUAL ALLEGATIONS**

22.    The 1994 amendments to the National Flood Insurance Act of 1968, 42 U.S.C. § 4001, et seq. ("NFIA"), Congress required lenders to ensure that homeowners had flood insurance for property located in areas designated as Special Flood Hazard Areas by FEMA.  Lenders are required to ensure that properties in such areas pledged as security for loans have flood insurance equal to the lesser of: (1) the maximum insurance coverage available through the NFIP, which is $250,000; (2) the outstanding balance of the loan; or (3) the replacement cost of the property.

23.    If coverage is obtained that meets the statutory requirements there is no basis under the statute to force place insurance in excess of the statutorily required amount.  For example, if the NFIP requirement is met by flood insurance coverage on the property equal to the outstanding balance of the loan, there is no basis under federal law – and certainly no requirement imposed by federal law – to force placing additional flood insurance.

SECOND AMENDED COMPLAINT

**Clifford McKenzie**

24.     On March 5, 2004, Cliff McKenzie entered into a home loan with Mortgage Resource Group, LLC which was secured by a deed of trust on his home located at 2619 Sailboat Drive, Houston, Texas 77058.  Attached hereto as Exhibit A is a true and correct copy of Mr. McKenzie's redacted note. Attached hereto as Exhibit B is a true and correct copy of Mr. McKenzie's redacted Deed of Trust.

25.     Plaintiff's loan is now owned and/or serviced by Wells.

26.     Mr. McKenzie's home on Sailboat Drive had a market value of less than $200,000.  Mr. McKenzie carried a Flood insurance policy with coverage amount of $215,000.00 through the FEMA National Flood Insurance Program, policy #SF00520917.  A true and correct copy of Mr. McKenzie's Flood Dwelling Policy Endorsement declaration is attached hereto as Exhibit C.

27.     Mr. McKenzie is legally obligated to maintain flood insurance for no more than the amount of the principal and balance on his mortgage loan, which was originally $109,264.00.  Mr. McKenzie's FEMA flood insurance policy met this requirement.

28.     On June 2, 2011, Mr. McKenzie received a letter from Defendants titled "FLOOD INSURANCE COVERAGE DEFICIENCY NOTIFICATION".  The letter states that Wells' records indicate that that amount of coverage provided by Plaintiff's flood insurance carrier is less than the coverage required by Wells.  The letter also says if the additional coverage is not obtain in 45 days Wells is "required to secure additional flood insurance for you at your expense."  That is a false statement.  The letter was fraudulent, deceptive and misleading.  Neither Federal law nor Plaintiff's mortgage require him to maintain flood  insurance on his property in excess of his loan balance.  This letter also advised that the force-placed insurance coverage

would be purchased though an affiliate of Wells and would in almost all instances be more expensive that otherwise obtained insurance coverage.  A true and correct copy of that June 21, 2011 letter is attached hereto as Exhibit D.

29.     This letter was fraudulent, deceptive and misleading.  Mr. McKenzie has sufficient flood insurance and Wells was not required to secure additional flood insurance.

30.     The plain language of Plaintiff's mortgage does not require flood insurance in excess of his principal loan balance.  Nor does HUD, nor does the National Flood Insurance Act or its accompanying regulations.

31.     Wells owes Plaintiff a duty of good faith and fair dealing and Wells breached that duty by requiring force-placed flood insurance and providing deceptive, fraudulent, misleading and unfair disclosures and statements to Plaintiff and by purchasing this insurance coverage from an affiliate of Wells from whom they received a kickback.

32.     Plaintiff provided Wells with evidence of a flood insurance policy in excess of the required coverage with a policy limit of $215,700 (in excess of the outstanding balance of the loan and, in fact, the value of the property) with a yearly premium of $595.00 though FEMA National Flood Insurance Program.  Despite Plaintiff's response and proffer of evidence of sufficient flood insurance coverage, on July 22, 2011 Defendants force-purchased additional flood insurance on Mr. McKenzie's home at the expense of Mr. McKenzie for an additional $21,300.00, with an annual premium of $192.00.  This conduct was unfair and unlawful.

33.     Wells force-placed flood insurance on Plaintiff and putative class members homes at the expense of Plaintiff and the class while purchasing this insurance through an affiliate who they received a kickback from.  Wells added the additional premium to the balance of Plaintiff and class members'

loans thereby increasing interest received and expanding the possibility for recovering late fees.

34.    As a result of Defendants' conduct, as alleged herein, Plaintiff and class members have been damaged, including, but not limited to, payment of unnecessary and excessive insurance premiums.

### Daniel and Robin Biddix

35.    In December 2002, Plaintiffs Daniel Biddix and Robin Biddix obtained a mortgage loan in the amount of $44,650 through Defendant Wells Fargo Home Mortgage, Inc. on a residential property in San Angelo, Texas. Attached hereto as Exhibit E is a true and correct copy of Daniel and Robin Biddix's redacted note.  Attached hereto as Exhibit F is a true and correct copy of Daniel and Robin Biddix's redacted Deed of Trust.

36.    Flood insurance was not required by Wells as a condition of closing on the mortgage loan.  In fact, the Truth in Lending Disclosure statement specifically stated that flood insurance was not required.  Attached as Exhibit G is a true and correct copy of the Truth in Lending Disclosure.

37.    Plaintiffs were not provided with a Notice of Special Flood Hazards at closing to inform them of flood insurance  requirements.

38.    In 2011, Wells Fargo contacted Plaintiffs regarding an opportunity to refinance their 2002 mortgage.

39.    Under the refinancing proposal, Defendants stood to profit (and Plaintiffs to lose) more under this proposal than they would have under Plaintiffs' original mortgage, since Plaintiffs would have paid far more interest (and less principal) at the beginning of the loan term.

40.    That offer was presented in conjunction with documents indicating that Plaintiffs would be required to purchase flood insurance to

cover the replacement value of their property as part of the refinance agreement.

41.     Plaintiffs declined to refinance their mortgage to avoid the significant increase that flood insurance would impose on their monthly loan payments.

42.     Nevertheless, on September 16, Defendants sent Plaintiffs a Flood Insurance Notification stating:

> **YOU WILL NEED TO TAKE IMMEDIATE ACTION WITHIN THE NEXT 45 DAYS TO PROTECT YOUR HOME.**
>
> The National Flood Insurance Reform Act of 1994 requires Wells Fargo Home Mortgage and all other mortgage companies that service home loans to inform their customers about their obligation to buy flood insurance.  The flood maps published by the Federal Emergency Management Agency (FEMA) show that your property is within a required flood zone.  Therefore, you must have flood insurance that provides replacement cost coverage to protect your home. Attached as Exhibit G is a copy of this notification.

43.     In light of this notice, Plaintiffs – who had already expressed an unwillingness to pay for flood insurance despite the lower monthly rates available after refinancing – were now presented with the Hobson's choice between paying for flood insurance in addition to their current, higher monthly payments, or acceding to Defendant's refinancing proposal that required purchase of flood insurance; even if, under that proposal, Plaintiffs stand to lose (and Defendants stand to gain) more money over the life of the loan.

SECOND AMENDED COMPLAINT

44.    At the very least, irrespective of Plaintiffs choice as to whether to refinance or not, Defendants assured themselves, given the facts below, of profiting more from Plaintiffs' loan than they would have under the original, agreed upon terms of that loan.

45.    Importantly, the language in the September 16, 2011 letter is inconsistent with the NFIA.  The NFIA requires only that properties in flood zones with mortgage loans be insured by policies with coverage equal to the lesser of: (1) the outstanding principal balance of the loan; or (2) the maximum insurance available under the NFIP for participating communities, which is the lesser of $250,000 or the replacement value of the structure.

46.    Defendants' assertion in the September 16, 2011 letter that Plaintiffs "must have flood insurance that provides replacement cost coverage to protect your home" based on NFIA requirements was a material misstatement of fact because Plaintiffs were not required under the NFIA to have "replacement cost coverage" for their home.  Defendants ignore the primary alternative requirement, which only requires flood insurance equal to the outstanding principal balance of the loan.  Plaintiffs' mortgage balance was significantly lower than the $72,000 replacement value.  Wells deleted the outstanding loan balance prong as part of its scheme to force Plaintiffs and other borrowers to pay for more flood insurance than required by federal regulators and federal loan authorities (such as Fannie Mae and Freddie Mac) so that Wells could increase its own revenues, through commissions, kickback and other servicer related fees Wells charges (such as late fees, modification fees, etc.).

47.    Following that letter, on November 16, 2011, Defendants sent a Notice of Temporary Flood Insurance stating that the previous letter informed Plaintiffs of the requirement to secure flood insurance coverage to protect the property "per the terms of [Plaintiffs'] Mortgage Deed (or Deed of Trust)."

The letter explained that Wells Fargo had force-placed a temporary policy with Republic Lloyds.  The Notice stated that the force-placed policy insured Plaintiffs' house structure for replacement value.  The coverage provided by the policy was $72,000 – well in excess of the loan balance – with an annual premium of $648.

48.    The Notice further stated:

If we provide the [flood] insurance [policy], it will be obtained with the assistance of Wells Fargo Insurance, Inc., a licensed insurance agency and affiliate of Wells Fargo Bank, N.A. Wells Fargo Insurance acts as an agent for the insurance company and will receive a commission on the insurance we obtain.

49.    Wells Fargo Insurance, Inc. is a division of Wells Fargo Bank, that exists only to collect kickbacks or commissions related to the force-placed insurance policies.

50.    By forcing Plaintiffs to purchase flood insurance that exceeds Defendants' security interest in the property, Defendants have materially changed the terms of Plaintiffs' mortgage without good faith.  Defendants motive in force-placing insurance is not to protect Defendants' interest in the property, but rather to generate fees and commissions on policies placed.

51.    Wells Fargo engages in these practices in order to realize unfair financial gains from class members, including Plaintiffs.  By adding the cost of force-placed insurance (purchased through Wells' subsidiaries, generally costing 5 times and sometimes up to 10 times more than what a borrower could purchase a flood policy for) to borrowers' loan balances, Defendants earn additional interest on the amounts charged and cause borrowers to incur additional costs and fees.

1

**David Kibiloski and Virginia Ryan**

2      52.     In 1986, Plaintiffs David Kibilowski and Virginia Ryan

3   purchased a home located at 315 Keathley Drive, Las Cruces, NM 88005.

4      53.     On December 18, 2001, Kibiloski and Ryan refinanced their

5   initial mortgage with Defendants in the amount of $55,000 which was secured

6   by a mortgage on the Las Cruces property.  Attached as Exhibit H is a true

7   and correct copy of their Mortgage with Defendants.  As demonstrated therein

8   and as contained in the Notice of Special Flood Hazards executed by Plaintiffs

9   on December 18, 2001, Plaintiffs mortgage agreement clearly indicates that:

10

11      At a minimum, flood insurance must cover the lesser of:

12         1. the outstanding principal balance of the loan; or

13         2. the maximum amount of coverage allowed for the type of

14         property under the NFIP.

15

16      54.     Through various insurance companies at all relevant times,

17   Kibiloski and Ryan have maintained flood insurance on the property in an

18   amount in excess of that required by federal requirements and the mortgage

19   agreement, as quoted above, and equal to at least the depreciated value of the

20   property, approximately $89,000.  Concurrently, Kibiloski and Ryan maintain

21   a homeowners policy for the property in an amount of approximately

22   $118,000.

23      55.     Kibiloski and Ryan were legally obligated to maintain flood

24   insurance for no more than the amount of the outstanding principal balance on

25   their mortgage loan – *i.e.*, $55,000 at its highest point and currently

26   approximately $38,000.

27

28

SECOND AMENDED COMPLAINT

56.     Beginning in approximately 2005 and continuing through the present, Kibiloski and Ryan received various letters from Defendants concerning a purported lack of sufficient flood insurance.

57.     One version of these letters was titled "FLOOD INSURNACE COVERAGE DEFICIENCY NOTIFICATION."  The letters state that Defendants' records indicate that the amount of coverage provided by Plaintiffs' flood insurance carrier is less than the coverage required by Defendants.  The letters also state that if the additional coverage is not obtained within 45 days, Defendants are "required to secure additional flood insurance for you at your expense."  That statement is deceptive, misleading, and without merit.  Neither federal law nor Kibiloski and Ryan's mortgage contract require them to maintain flood insurance on their property in excess of their loan balance.  The letters also advised that the force-placed insurance coverage would be purchased through an affiliate of Defendants and would in almost all instances be more expensive than insurance obtained by Plaintiffs on their own.  A true and correct copy of the November 5, 2008, December 16, 2009, February 5, 2010, October 21, 2011 and January 27, 2012 letters are attached as Exhibit I.

58.     Prior to receiving the January 27, 2012 letter in Exhibit I, Kibiloski and Ryan received a letter dated January 17, 2012 with a header stating "Action required – important notice regarding your flood insurance." Attached as Exhibit J is a true and correct copy of January 17, 2012 letter. This letter stated that "[t]he National Flood Insurance Reform Act of 1994 requires Wells Fargo Home Mortgage … to inform customers about their obligation to purchase flood insurance.  Because your property lies in a 'Special Flood Hazard Area[,]' … we require that flood insurance must be maintained on all structures on the property for the entire term of the loan… **At a minimum we require that you maintain flood insurance that is equal**

**to 100% of the estimated replacement cost to rebuild your home and other improvements on your property**…." (emphasis in original)  The letter further stated that "[i]n the mortgage documents you signed, you agreed to maintain insurance at all times on your structure/improvements, in the form and amounts we require.  Failure to do so is a breach of the requirements of your loan."  Finally, the letter stated "[i]f we purchase insurance for you, … [Defendants] will receive a commission on the insurance we obtain."  This letter was false and misleading and violated the terms of the contract as well as federal flood requirements.

59.     Kibiloski and Ryan received a letter similar to the January 17, 2012 letter on March 26, 2012 stating that Defendants had force-placed a 90-day gap policy with $29,700 in coverage and a premium of $282.15 with QBE Insurance Corporation, which is an enterprise designed in part to force place flood insurance in amounts greater than required by federal regulators and mortgage agreements.  A true and correct copy of the March 26, 2012 letter is attached as Exhibit K.

60.     This most recent episode, however, was not an isolated incident.  In response to these letters received since 2005, Kibiloski and Ryan provided Defendants with evidence of flood insurance coverage of $89,000 – well in excess of the outstanding principal balance of the loan.  Despite Kibiloski and Ryan's annual response and proffer of evidence of sufficient flood insurance coverage, on multiple occasions, Defendants force-purchased additional flood insurance on Kibilowski and Ryan's property at their expense.  For example, in 2007, the additional flood insurance premium was $1,035, and in 2005, the additional flood insurance premium was $828.  This conduct was unfair and unlawful.  Each time Defendants force-placed Kibiloski and Ryan, the couple spent hours on the telephone with Defendants' representatives trying to prove their property was properly insured.  Some years Kibiloski and Ryan were

able to obtain refunds for the premiums they were unlawfully charged.  No refund has been issued for the 2012 policy.  Even for the years that Kibiloski and Ryan received refunds after countless hours of dealing with Defendants' representatives, Plaintiffs were only refunded the charged premium for the premiums which is not necessarily a full refund.

61.     Moreover, the letters used by Defendants contain materially false, deceptive, and misleading statements as to Kibiloski and Ryan's obligation to maintain flood insurance.  Specifically, the statement that their mortgage contract requires flood insurance coverage equal to the replacement value is contradicted by Kibiloski and Ryan's NSFH and the prior course of dealing between the parties between 2001 and 2005 when Defendants first began demanding additional gap coverage.  Moreover, federal law only requires Kibiloski and Ryan to carry a minimum level of flood insurance which, in their case, was equal to the outstanding balance of the loan.  because Kibiloski and Ryan carried such coverage, they were compliant with federal law.

62.     Defendants force-placed flood insurance on Plaintiffs and putative class members' homes at the expense of Plaintiffs and the class while placing this insurance through an affiliate who they received a kickback from.  Defendants added the additional premium to the balance of Plaintiffs' and class members' loans thereby increasing interest received and expanding the possibility for recovering late fees.  Furthermore, Defendants collected commissions and/or kickbacks from the insurer who issued the policy at Defendants' command.

63.     As a result of Defendants' conduct, as alleged herein, Plaintiffs and class members have been damaged, including, but not limited to, payment of unnecessary and excessive insurance premiums, late fees, and other fees, as

well as harm to credit ratings and lost time and effort dealing with Wells to

prove that Plaintiffs have and always have carried adequate flood insurance.

## CLASS ALLEGATIONS

64.     Plaintiffs bring this action on their own behalf and on behalf of

all persons similarly situated pursuant to Federal Rule of Civil Procedure 23.

65.     Plaintiffs assert COUNT I (Truth In Lending), COUNT II

(Breach of Contract), COUNT III (RESPA), COUNT IV (Breach of Fiduciary

Duty), and COUNT V (Conversion) on behalf of the following class:

> All borrowers with loans secured by a one to four unit,
> owner occupied dwelling with a loan owned or serviced
> by Defendants, who were charged for a force-placed
> flood insurance policy procured through Defendants
> within the applicable statute of limitations.  (the
> "Nationwide Class").

66.     Plaintiffs Ryan and Kibiloski assert COUNT VI (Violation of the

New Mexico Unfair Trade Practices Act) on behalf of the following class:

> All borrowers with loans secured by a one to four unit,
> owner occupied dwelling in the state of New Mexico with
> a loan owned or serviced by Defendants, who were
> charged for a force-placed flood insurance policy
> procured through Defendants within the applicable statute
> of limitations.  (the "New Mexico Class"; together with
> the "Nationwide Class," the "Classes").

67.     Excluded from the Classes are governmental entities, Defendants,

any entity in which Defendants have a controlling interest, and Defendants'

officers, directors, affiliates, legal representatives, employees, co-conspirators,

successors, subsidiaries, and assigns.  Also excluded from the class is any

judge, justice, or judicial officer presiding over this matter and the members of

their immediate families and judicial staff.

68.     Plaintiffs' claims are typical of the claims of the class.  Plaintiffs

are members of the class they seek to represent.  Members of the class are

ascertainable from Plaintiffs' description of the class and/or Defendants' records and/or records of third parties accessible through discovery.

69.   The representative Plaintiffs will fairly and adequately represent the members of the class and have no interests which are antagonistic to the claims of the class.  The Plaintiffs' interests in this action are antagonistic to the interests of Defendants, and they will vigorously pursue the claims of the class.

70.   The representative Plaintiffs have retained counsel who are competent and experienced in class action litigation, and have successfully represented plaintiffs in complex class actions.

71.   Common questions of law and fact impact the rights of each member of the class and a common remedy by way of permissible damages, restitutionary disgorgement and/or injunctive relief is sought for the class.

72.   There are numerous and substantial questions of law and fact common to all members of the class which will predominate over any individual issues. These common questions of law and fact include, without limitation:

  a. Whether class members were charged for flood insurance not required by legal obligation;

  b. Whether Defendants misrepresented, failed to disclose or deceived Plaintiff;

  c. Whether Defendants' disclosures clearly and conspicuously disclose the amount of flood insurance required by legal obligation.

  d. Whether Defendants' disclosures violated TILA;

  e. Whether Defendants violated RESPA by accepting kickbacks, commissions, or other compensation in connection with force placing flood insurance;

SECOND AMENDED COMPLAINT

f.  Whether Defendants breached their contractual obligations;

g.  Whether Defendants owe a duty of good faith and fair dealing to refrain from force-placing flood insurance in excess of the borrowers legal obligation;

h.  Whether Defendants have been unjustly enriched;

i.  Whether Defendants have converted Plaintiffs funds;

j.  Whether Defendants owe a fiduciary duty to Plaintiffs;

k.  Whether Defendants have violated their fiduciary duty

l.  Whether Defendants should be required to provide restitutionary disgorgement to class members;

m.  Whether Defendants' conduct violated the New Mexico Unfair Trade Practices Act

n.  Whether class members have been damaged by Defendants' conduct;

o.  Whether class members are entitled to declaratory relief; and

p.  Whether Defendants' conduct should be enjoined.

73.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Trial of Plaintiffs' and the class members' claims is manageable.  Unless a class is certified, Defendants will be unjustly enriched at the expense of class members.

74.    There is no plain, speedy or adequate remedy other than by maintenance of this class action because Plaintiffs are informed and believe that damage to each member of the class is relatively small, making it economically unfeasible to pursue remedies other than by way of a class action.

75.    The persons in the class are so numerous that disposition of their claims in this case and as part of a single class action lawsuit, rather than

numerous individual lawsuits, will benefit the parties and greatly reduce the aggregate judicial resources that would be spent.

76.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation, which would preclude its maintenance of a class action.

77.    Defendants have acted on grounds generally applicable to the entire class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole.  Prosecution of separate actions by individual members of the class would create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the Defendants.

78.    Without a class action, Defendants will likely retain the benefit of their wrongdoing and will continue a course of action, which will result in further damages to Plaintiffs and the class.

## FIRST CAUSE OF ACTION

**Violations of Truth in Lending Laws, 15 U.S.C. §1601, et seq.**

**(By Plaintiffs and the Nationwide Class Against Defendants and Does 1 through 10)**

79.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

80.    Congress enacted the Truth in Lending Act to ensure meaningful disclosures of the terms of leases of personal property for personal, family, or household purposes.  Plaintiffs' loans were for personal property for personal, family or household purposes and qualify for the protections of TILA.

81.    12 C.F.R. §226.17 and 12 C.F.R. §226.5 require lenders to make full disclosures at the consummation of a loan.  These terms are required to be made clearly and conspicuously.  The disclosures are required to set forth the

terms and legal obligations between the parties.  A misleading disclosure is as much a violation of TILA as a failure to disclose at all.

82.     Regulation Z (12 C.F.R. Part 226) defining the implementation of TILA requires that lenders clearly and conspicuously disclose the terms of insurance requirements.

83.     Defendants failed to adequately disclose the terms of the insurance requirements.

84.     Defendants violated TILA by misrepresenting to Plaintiffs and Nationwide Class members that they were required to purchase flood insurance in amounts greater than necessary to secure the principal loan balance.

85.     Defendants' notices to Plaintiffs and the Nationwide Class members demanding additional flood insurance failed to disclose the terms of the flood insurance requirement in place or under law.

86.     Defendants' failed to provide proper disclosures regarding its amendment of the terms of the loan, including the alteration of the terms with regard to the amount of flood insurance required by borrower .  This conduct violates TILA and Regulation Z.

87.     Defendants did not, and cannot, identify any changes in Federal law, the mortgage documents, or the circumstances surrounding the loan that justified Defendants' representation that Plaintiffs' coverage was not adequate and that Wells was required to secure additional flood insurance.

88.     In addition, Defendants violated TILA by, *inter alia,* (i) adversely changing the terms of mortgage loans without consent and demanding more insurance than previously required in amounts greater than necessary to protect its interest in the property; and (ii) failing to provide proper notice that Wells was amending the terms of loans as described in the relevant mortgage documents.

SECOND AMENDED COMPLAINT

89.     Plaintiffs' claim is timely in that the failure to disclose happened within the statutory time period required by Plaintiffs to bring an action under TILA or could only be discovered within the applicable time period or was equitably tolled by the conduct of Defendants.

90.     Plaintiffs and Nationwide Class members have been damaged as the result of Defendants' violation of TILA, including, but not limited to, incurring excessive insurance premiums.

91.     As a result of Defendants' violations, Plaintiffs and Nationwide Class members are entitled to recover actual damages and a penalty of $500,000 or 1% of Defendants' net worth, as provided by 15 U.S.C. § 1640(a)(1)-(2), along with attorneys' fees and costs, as provided by 15 U.S.C. § 1640(a)(3).

## SECOND CAUSE OF ACTION

### Breach of Contract

### (By Plaintiffs and the Nationwide Class Against Defendants and Does 1 through 10)

92.     Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

93.     Plaintiffs are signatories to a mortgage agreements relating to the respective properties at issue.  These agreements are form documents that are substantially similar to those agreements of the members of the Nationwide Class.

94.     Defendants are responsible for the mortgage loan servicing obligations under the mortgage agreements.

95.     Plaintiffs performed all obligations under their contractual relationship except to the extent excused by the conduct of Defendants.

96.     As part of the mortgage agreements, the Notes and Deeds of Trust are industry standard form documents.  Industry practice does not allow

borrowers an opportunity to make changes to the Notes or Deeds of Trust. The Notes and Deeds of Trust are presented on a "take it or leave it" basis. Consistent with industry practice, Plaintiffs were not provided an opportunity to make any changes to their Notes or Deeds of Trust and were offered them on a "take it or leave it" basis.  Given the superior bargaining power of the industry and its lenders, the Notes and Deeds of Trust are contracts of adhesion.

97.     Defendants breached the terms of the mortgage agreements by force-placing flood insurance on Plaintiffs' loans and the loans of members of the Nationwide Class in excess of their principal loan balance and the amount of coverage required by the contractual relationship and despite in Mr. McKenzie's and Kibiloski and Ryan's cases, carrying adequate flood insurance.

98.     The mortgage agreements entered into by Plaintiffs and members of the Nationwide Class contain an implied covenant of good faith and fair dealing.  To the extent Defendants had discretion to change the flood insurance requirements, Defendants breached the covenant of good faith and fair dealing by force-placing flood insurance in excess of the necessary and required amount and charging Plaintiffs for the premium.  Defendants also breached the contract and the covenant by charging excessive premiums inflated by kickbacks for the force-placed insurance.

99.     Plaintiffs and Nationwide Class members have been damaged as the result of Defendants' breach of contract, including, but not limited to, incurring excessive insurance premiums.

SECOND AMENDED COMPLAINT

### THIRD CAUSE OF ACTION

### VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT

### (12 U.S.C. § 2601 *et seq.*)

### (By Plaintiffs and the Nationwide Class Against Defendants and Does 1 though 10)

100.   Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

101.   Plaintiffs' mortgage loans and the mortgage loans of the members of the Nationwide Class are federally-regulated mortgage loans subject to the requirements of RESPA, 12 U.S.C. § 2601 *et seq*.

102.   12 U.S.C. § 2607(a) provides: "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."

103.   12 U.S.C. § 2607(b) further provides:  "No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed."

104.   Wells violated the foregoing RESPA provisions by virtue of their conduct as set forth above in connection with lender-placed flood insurance.

105.   The "[p]rovision of services involving hazard, *flood*, or other casualty insurance" incident to a federally-regulated mortgage loan constitutes a "settlement service" for purposes of RESPA.  *See* 24 C.F.R. § 2500.2(b) (emphasis added).

106.   Wells has unlawfully accepted fees, kickbacks, commissions, or other things of value in connection with an agreement or understanding to

purchase lender-placed flood insurance from their lender-placed flood insurance carrier.

107.   Defendants and their affiliates have unlawfully accepted a portion, split, or percentage of the premiums charged for lender-placed flood insurance, without actually performing commensurate services.

108.   These RESPA violations are evidenced by, among other things, Defendants' own form letters, which admit to the unlawful commission and compensation arrangements in connection with lender-placed flood insurance.

109.   Plaintiffs and Nationwide Class members are entitled to statutory damages for Defendants' violations of 12 U.S.C. § 2607(a)-(b) in an amount equal to three times the amount of premiums they paid for lender-placed flood insurance.  *See* 12 U.S.C. § 2607(d)(2).

110.   Plaintiffs and Nationwide Class members are also entitled to recover their attorneys' fees and costs of this action pursuant to 12 U.S.C. § 2607(d)(5).

111.   In addition, Plaintiffs and Nationwide Class members are entitled to a declaration that Defendants' actions violate RESPA, and corresponding injunctive relief enjoining defendants from engaging in further such violations.

112.   Plaintiffs' RESPA claim is timely, as the RESPA violations set forth above occurred within one year of the commencement of this action. Alternatively, the limitations period on Plaintiffs' RESPA claim should be equitably tolled because Plaintiffs did not discover and did not have a reasonable opportunity to discover Defendants' unlawful conduct until less than one year prior to the date that this action was filed.

SECOND AMENDED COMPLAINT

## FOURTH CAUSE OF ACTION

## UNJUST ENRICHMENT

### (By Plaintiffs and the Nationwide Class Against Defendants and Does 1 though 10)

113.   Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

114.   Defendants received from Plaintiffs and members of the Nationwide Class benefits in the form of overcharges for force-placed insurance policies which are excessive and unreasonable, and are the result of overcharging and overreaching.

115.   Defendants earned commissions by placing the policies with affiliate insurance companies at excessive rates.

116.   The premiums Wells charged Plaintiffs and members of the Nationwide Class for forced place insurance was not the actual amount that Wells paid for the insurance because a substantial portion of the premiums are refunded to Wells through kickbacks and/or unwarranted commissions.

117.   The rates charged by Wells can be up to ten times what is charged in the open market.

118.   Defendants entered into an agreement whereby their affiliate or subsidiary would provide force-placed insurance policies to Plaintiffs and the Nationwide Class which were paid for by Plaintiffs and the Nationwide Class at prices that were far higher than the market rates for similar policies. Defendants knew that the charges for these policies were excessive and not the result of good faith practices, and Defendants profited from commissions and other compensation made possible by these overcharges.

119.   As a result, Plaintiffs and the proposed Nationwide Class have conferred a benefit on Defendants, and Defendants have knowledge of this

SECOND AMENDED COMPLAINT

benefit.  Defendants have voluntarily accepted and retained the benefit conferred on them.

120.   Defendants will be unjustly enriched if they are allowed to retain the benefit, and each class member is entitled to and demands an award against Defendants for the amount that they enriched Defendants and for which Defendants were unjustly enriched.

121.   Wherefore Plaintiffs and the Nationwide Class request relief as hereinafter provided.

## FIFTH CAUSE OF ACTION

## Breach of Fiduciary Duty

## (By Plaintiff and the Nationwide Class Against Defendants and Does 1 though 10)

122.   Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

123.   Defendants hold funds in escrow.  These funds are to be used for the purpose of paying insurance premiums when due, and any excess funds are to be returned to Plaintiffs and members of the Nationwide Classes under the terms of the mortgage agreements.

124.   Since the time that Defendants originated, acquired and/or began servicing Plaintiffs' mortgages and those of the Nationwide Class, Defendants have accepted monies for insurance premiums on a monthly basis and held them in escrow.

125.   Defendants were obliged to hold these escrow funds in trust, and owed Plaintiffs and members of the Nationwide Class the highest fiduciary duty with respect to the handling of such funds.

126.   Defendants breached their fiduciary duty to Plaintiffs and other members of the Nationwide Class by: (i) unilaterally using escrow funds to purchase force-placed flood insurance that Plaintiffs and other Class members

28

did not want and were not required to obtain; (ii) improperly purchasing insurance in amounts in excess of that which is required and at excessive rates; (iii) profiting from force-placed flood insurance policies that were purchased from escrow funds at the expense of Plaintiffs and other Class members; and (iv) unilaterally utilizing the escrow funds to pay for insurance in amounts in excess of that required to procure adequate insurance.

127.   These actions were undertaken by Defendants in bad faith for their own benefit and were not intended to benefit Plaintiffs or other Nationwide Class members.

128.   As a direct result of Defendants' actions and subversion of Plaintiffs' interest to Defendants' own interests in reaping extravagant and outrageous fees, Plaintiffs and the Nationwide Class have suffered injury in the form of unnecessary and excessive escrow charges and a loss of funds from their escrow accounts.

129.   Plaintiffs and the Nationwide Class are entitled to damages for Defendants' beach of their fiduciary obligations and misappropriation of escrow funds.  In addition, Plaintiffs and the Nationwide Class are entitled to punitive damages because Defendants acted in bad faith in deliberate and/or reckless disregard of their rights and their obligation to hold their escrow funds in trust.

## SIXTH CAUSE OF ACTION
## CONVERSION

**(By Plaintiffs and the Nationwide Class Against Defendants and Does 1 though 10)**

130.   Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

131.   Defendants had and continue to have a duty to maintain and preserve their customers' mortgage accounts, and mortgage escrow accounts,

and to prevent their diminishment or alteration through their own wrongful acts.

132. Defendants wrongfully and intentionally collected insurance premiums from their customers' mortgage escrow accounts or added such payments to their customers' escrow accounts.

133. Defendants collected these excessive premiums by wrongfully and intentionally taking specific and readily identifiable funds from their mortgage customers' escrow accounts or misappropriating funds paid to their customers' account balances.

134. Defendants have assumed and exercised the right of ownership over these funds without authorization to do so and in hostility to the rights of Plaintiffs and the Nationwide Class without legal justification.

135. Defendants have retained these funds unlawfully without the consent of Plaintiffs and the members of the Nationwide Class and have deprived them from exercising control over the funds.

136. Defendants intend to permanently deprive Plaintiffs and the Nationwide Class of these funds.

137. Plaintiffs and the Nationwide Class properly own these funds, not Defendants, who now claim that they are entitled to their ownership contrary to the rights of Plaintiffs and the Nationwide Class.

138. Plaintiffs and the Nationwide Class are entitled to the immediate possession of these funds.

139. Defendants have converted these funds intentional, malicious and/or oppressive conduct.

140. Defendants' wrongful conduct is of a continuing nature.

141. As a direct and proximate result of Defendants' wrongful conversion, Plaintiff and the Nationwide Class have suffered and continue to suffer damages. Plaintiffs and the Nationwide Class are entitled to recover

from Defendants all damages and costs permitted, including all amounts that Defendants have wrongfully converted, which are specific and readily identifiable.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT ("UTPA")

**(By Plaintiffs Kibiloski and Ryan and the New Mexico Class Against Defendants and Does 1 though 10)**

142.   Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

143.   Plaintiffs Kibiloski and Ryan and members of the New Mexico Class are "persons" under the UTPA.

144.   New Mexico's Unfair Trade Practices Act, N.M.S.A. § 57-12-3, makes unfair, deceptive, and unconscionable trade practices in the conduct of any trade or commerce unlawful.

145.   Under the UTPA, it is an "unfair or deceptive trade practice" to make "a false or misleading oral or written statement … knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of the person's trade or commerce …." N.M.S.A. § 57-12-2.

146.   Defendants' letters  to Kibiloski and Ryan as well as members of the New Mexico class as discussed above contained false and misleading statements knowingly made in connection with their mortgage transaction and/or the forced purchase of flood insurance.

147.   Defendants' letters further stated that Defendants "are attempting to collect a debt…" *See* Exhibits I and J.

148.   The UTPA further enumerates a non-exhaustive list of specific acts that are declared unlawful.  One such act is "stating that a transaction

involves rights, remedies or obligations that it does not involve." N.M.S.A. § 57-12-2(D)(15).

149.   Defendants' letters to Kibiloski and Ryan as well as members of the New Mexico class as discussed above stated that the mortgage contract gave Defendants the right to require the insurance demanded.  However, Defendants did not have such a right.  This false statement violates the UTPA.

150.   The UTPA also prohibits "unconscionable trade practices," meaning "an act or practice in connection with the sale, lease, rental or loan … of any goods or services …, or in the extension of credit or in the collection of debts that to a person's detriment … results in a gross disparity between the value received by a person and the price paid."

151.   The flood insurance policies force-placed by Defendants on Plaintiffs Kibiloski and Ryan as well as members of the New Mexico Class are excessively priced creating a gross disparity between the price paid by Plaintiffs and the New Mexico Class and the value received.  When those force-placed policies are back-dated, this disparity is even more egregious and constitutes an even more unconscionable trade practice.

152.   Defendants willfully engaged in the conduct that violated the UTPA.

153.   Plaintiffs Kibiloski and Ryan and members of the New Mexico Class have sustained damages as a result of Defendants' violations of the New Mexico UTPA in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

1.     Certification of the proposed class and notice thereto to be paid by Defendants;

1    2.    For general, special, compensatory and incidental damages in an

2  amount to be determined at trial, prejudgment interest and other damages

3  according to proof;

4    3.    For reasonable attorneys' fees and costs;

5    4.    For restitutionary disgorgement of all profits Defendants obtained

6  as a result of their unfair and/or fraudulent business practices;

7    5.    For punitive damages;

8    6.    For appropriate injunctive and declaratory relief;

9    7.    For costs of suit herein; and

10   8.    For such further relief as the Court may deem just and proper.

11 Dated:  April 25, 2012              KABATECK BROWN KELLNER LLP

12

13                                    By: _____

14                                        Richard L. Kellner
                                          Evan M. Zucker
15

16                                    FEAZELL & TIGHE, LLP
                                      Austin Tighe
17

                                      BERGER & MONTAGUE, P.C.
18

19                                        Shanon J. Carson (pro hac vice
                                          application forthcoming)
20                                        Patrick F. Madden (pro hac vice
                                          application forthcoming)
21                                        1622 Locust Street
                                          Philadelphia, PA  19103
22                                        Telephone: (215) 875-4656
                                          Facsimile: (215) 875-4604
23                                        Email: scarson@bm.net
                                                 pmadden@bm.net
24                                    TAUS, CEBULASH & LANDAU, LLP

25                                        Brett Cebulash (pro hac vice
                                          application forthcoming)
26                                        Kevin S. Landau (pro hac vice
                                          application forthcoming)
27                                        80 Maiden Lane, Suite 1204
                                          New York, NY 10038
28

---

33

SECOND AMENDED COMPLAINT

Telephone: (212) 931-0704
Facsimile: (212) 931-0703
Email: bcebulash@tcllaw.com
          klandau@tcllaw.com

Attorneys for Plaintiffs on behalf of
himself and all others similarly
situated

SECOND AMENDED COMPLAINT

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demand a trial by jury of all claims and causes of action in this lawsuit.

Dated:  April 25, 2012

KABATECK BROWN KELLNER LLP

By: _____
   Richard L. Kellner
   Evan M. Zucker

FEAZELL & TIGHE, LLP
   Austin Tighe
   6618 Sitio Del Rio Boulevard
   Building C-101
   Austin, Texas 78730
   Tel: (512) 372-8100
   Fax: (512) 372-8140
   austin@feazell-tighe.com


BERGER & MONTAGUE, P.C.

   Shanon J. Carson (pro hac vice
   application forthcoming)
   Patrick F. Madden (pro hac vice
   application forthcoming)
   1622 Locust Street
   Philadelphia, PA  19103
   Telephone: (215) 875-4656
   Facsimile: (215) 875-4604
   Email: scarson@bm.net
          pmadden@bm.net

TAUS, CEBULASH & LANDAU, LLP

   Brett Cebulash (pro hac vice
   application forthcoming)
   Kevin S. Landau (pro hac vice
   application forthcoming)
   80 Maiden Lane, Suite 1204
   New York, NY 10038
   Telephone: (212) 931-0704
   Facsimile: (212) 931-0703
   Email: bcebulash@tcllaw.com
          klandau@tcllaw.com

   Attorneys for Plaintiffs on behalf of
   himself and all others similarly
   situated