Exhibit A

THIS IS TO CERTIFY THAT THIS
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL DOCUMENT
WELLS FARGO HOME MORTGAGE INC.

# NOTE

Loan Number
FHA Case No.

493-7684524   703

MARCH 5, 2004   S.S.H.
[Date]

2619 SAILBOAT DRIVE, HOUSTON, TEXAS 77058 ✓

**ORIGINAL NOTE**

[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means MORTGAGE RESOURCE GROUP, L.L.C. OF OK DBA CITY MORTGAGE GROUP LC and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of ONE HUNDRED NINE THOUSAND TWO HUNDRED SIXTY-FOUR AND 00/100ths Dollars (U.S.$109,264.00), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of FIVE AND ONE-HALF percent (5.500%) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on MAY 1, 2004. Any principal and interest remaining on the first day of APRIL, 2019, will be due on that date, which is called the maturity date.

(B) Place

Payment shall be made at 2745 N. DALLAS PKWY, SUITE 420, PLANO, TEXAS 75093 or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $892.78. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box.]

☐ Graduated Payment Allonge          ☐ Other [Specify]

☐ Growing Equity Allonge

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

(A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR percent ( 4.000 %) of the overdue amount of each payment.

(B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

GMD 0040 (1095) Page 1 of 2                                                FHA Multistate Fixed Rate Note

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorney's fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

**ORIGINAL NOTE**

✓ CLIFFORD H. MCKENZIE _____ (Seal)
-Borrower

✓ JANET D. MCKENZIE _____ (Seal)
-Borrower

PAY TO THE ORDER OF

WELLS FARGO HOME MORTGAGE, INC.

WITHOUT RECOURSE

THIS 29ᵗʰ DAY OF MARCH, 2004

MORTGAGE RESOURCE GROUP, L.L.C. OF OK DBA CITY MORTGAGE GROUP LC

BY WELLS FARGO HOME MORTGAGE, INC.

ATTORNEY-IN-FACT

BY: _____

TITLE: _____

*Joyce Lockwood*
*Vice President*
*Loan Documentation*

FHA Multistate Fixed Rate Note

Exhibit B

FILED BY
FIDELITY NATIONAL TITLE

X498315
03/31/04 100444790 $27.00

This Instrument Was Prepared By: Richard D. Hawn & Co. LC, 14850 Montfort Drive #197, Dallas, Texas 75254

Wells Fargo Home Mortgage, Inc.
3601 Minnesota Drive, Suite 200
Bloomington, MN 55435

FHA Case No.

493-7684524

Loan Number 0134402809

———————————— [Space Above This Line For Recording Data] ————————————

**Notice of confidentiality rights: If you are a natural person, you may remove or strike any of the following information from this instrument before it is filed for record in the public records: Your Social Security Number or Your Driver's License Number.**

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on MARCH 5, 2004. The grantor is CLIFFORD H. MCKENZIE AND WIFE, JANET D. MCKENZIE whose address is 2619 SAILBOAT DRIVE, HOUSTON, TEXAS 77058 ("Borrower"). The trustee is THOMAS E. BLACK, JR whose address is 132 WEST MAIN STREET, LEWISVILLE, TEXAS 75057 ("Trustee"). The beneficiary is MORTGAGE RESOURCE GROUP, L.L.C. OF OK DBA CITY MORTGAGE GROUP LC, which is organized and existing under the laws of THE STATE OF TEXAS, and whose address is 2745 N. DALLAS PKWY, SUITE 420, PLANO, TEXAS 75093 ("Lender"). Borrower owes Lender the principal sum of ONE HUNDRED NINE THOUSAND TWO HUNDRED SIXTY-FOUR AND 00/100ths Dollars (U.S.$109,264.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on APRIL 1, 2019. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in HARRIS County, Texas:

**Lot Thirty-one (31), in Block Five (5), of CORRECTION OF REPLAT OF THE SECTION TWO (2) REPLAT OF THE REPLAT OF A PORTION OF BAL HARBOUR COVE, an addition in Harris County, Texas, according to the map or plat thereof recorded in Volume 308, Page 64 of the Map Records of Harris County, Texas.**

which has the address of ___2619 SAILBOAT DRIVE_____ , ___HOUSTON_____ ,
                                                    [Street]                                            [City]

Texas ____77058____ ("Property Address"):
              [Zip Code]

Page 1 of 7

FHA Texas Deed of Trust
6/96

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which

FHA Texas Deed of Trust

Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

FHA Texas Deed of Trust

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

　**(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

　　(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

　　(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

　**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

　　(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

　　(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

　**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

　**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

　**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within **60 days** from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **60 days** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

　**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

FHA Texas Deed of Trust

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

Page 5 of 7

FHA Texas Deed of Trust

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public vendue between the hours of 10 a.m. and 4 p.m. on the first Tuesday in the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this paragraph 18, Borrower or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee paid is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**20. Substitute Trustee.** Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

Page 6 of 7

FHA Texas Deed of Trust

**22. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**23. Purchase Money; Vendor's Lien; Renewal and Extension.** The Note secured hereby is in renewal and extension, but not in extinguishment, of that certain indebtedness described in the attached Renewal and Extension Information made a part hereof.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)]

☐ Condominium Rider ☐ Growing Equity Rider ☐ Adjustable Rate Rider

☒ Planned Unit Development Rider ☐ Graduated Payment Rider ☒ Other [Specify]
Renewal and Extension Addendum

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
CLIFFORD H. MCKENZIE          -Borrower

_____ (Seal)
JANET D. MCKENZIE          -Borrower

_____ (Seal)
          -Borrower

_____ (Seal)
          -Borrower

State of TEXAS                                    )
County of HARRIS                                 )
    This instrument was acknowledged before me on 05 March 2004 by CLIFFORD H. MCKENZIE AND WIFE, JANET D. MCKENZIE .
(Seal)

My commission expires:
06/23/07

Notary Public, State of TEXAS
Notary's typed or printed name:

Jeremy Scott Ware

JEREMY SCOTT WARE
MY COMMISSION EXPIRES
June 23, 2007

FHA Texas Deed of Trust

| Loan Number |
| FHA Case No. |
| 493-7684524 |

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **5TH** day of **MARCH** , **2004** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **MORTGAGE RESOURCE GROUP, L.L.C. OF OK DBA CITY MORTGAGE GROUP LC** ("Lender") of the same date and covering the Property described in the Security Instrument and located at:

**VE, HOUSTON, TEXAS 77058**
_____   _____
[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as

**BAL HARBOUR COVE, SECTION TWO**
_____
[Name of Planned Unit Development]

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.  So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

GMD 0053 (1095)

*(page 1 of 2 pages)*

C.  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them.  Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument.  Unless Borrower and Lender agree to other terms of payment,  these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)

**CLIFFORD H. MCKENZIE**                                           Borrower

_____ (Seal)

**JANET D. MCKENZIE**                                               Borrower

GMD 0053 (1095)                                                           *(page 2 of 2 pages)*

# RENEWAL AND EXTENSION ADDENDUM TO DEED OF TRUST

## DATED MARCH 5, 2004.

**EXECUTED BY: CLIFFORD H. MCKENZIE AND WIFE, JANET D. MCKENZIE**

**FOR THE BENEFIT OF: MORTGAGE RESOURCE GROUP, L.L.C. OF OK DBA CITY MORTGAGE GROUP LC**

This Note is given in renewal and extension of the following described promissory note(s) and all of the liens, rights, assignments and security interests securing them that are created, made or granted by the following described instruments, all upon and against the herein described real property, which said note(s) and lien(s) are hereby expressly acknowledged by Grantor to be valid and subsisting lien(s) against the property herein described; and it is expressly stipulated and agreed that said lien(s) are hereby renewed, extended and continued in full force and effect to secure the payment of the Note hereby secured and Beneficiary herein or its assigns are duly subrogated to all rights, powers and equities of the original holder of said Note.

**First Note**

| | |
|---|---|
| Date: | 06-16-98 |
| Original Amount: | $109,000.00 |
| Payee: | ACCUBANC MORTGAGE CORPORATION |

Note and Lien(s) are described in the instrument(s) recorded in the following Volumes and Pages of the Real Property Records of HARRIS County, Texas:

FILED ON JULY 23, 1998, IN THE OFFICE OF THE COUNTY CLERK OF HARRIS COUNTY, TEXAS, UNDER INSTRUMENT FILE NUMBER T159553; ADDITIONALLY SECURED BY VENDOR'S LIEN OF EVEN DATE, FILED OF RECORD ON JULY 23, 1998 IN THE OFFICE OF THE COUNTY CLERK OF HARRIS COUNTY, TEXAS, UNDER INSTRUMENT FILE NUMBER T159552.

**First Note Assignment**

| | |
|---|---|
| Date: | 11-02-98 |
| Assigned to: | GMAC MORTGAGE CORPORATION, A PENNSYLVANIA CORPORATION |

Note and Lien(s) are described in the instrument(s) recorded in the following Volumes and Pages of the Real Property Records of HARRIS County, Texas:

MARCH 19, 1999, UNDER CLERK'S FILE NUMBER(S) T608338, OFFICIAL RECORDS OF HARRIS COUNTY, TEXAS.

SIGNED FOR IDENTIFICATION:

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas on

MAR 3 1 2004

COUNTY CLERK
HARRIS COUNTY, TEXAS

FILED
2004 MAR 31 AM 11: 27
COUNTY CLERK
HARRIS COUNTY, TEXAS

Poor Quality Recording Info.

CLIFFORD H. MCKENZIE

JANET D. MCKENZIE

Exhibit C

 **FEMA**

National Flood Insurance Program
**U.S. Department of Homeland Security**
P.O. Box 2965
Shawnee Mission, KS 66201-1365
(800) 638-6620

| Policy Number |
|---|
| **SF00520917** |



## FLOOD DWELLING POLICY ENDORSEMENT DECLARATION

| Named Insured and Mailing Address: | Policy Period: **06/17/2011** to **06/17/2012** |
|---|---|
| | Policy Term: **One year** |
| **Cliff & Janet Mckenzie** | **EFFECTIVE DATE OF CHANGE: 06/17/2011** |
| **2619 Sailboat Dr** | |
| **Houston, TX 77058-4342** | **Mark Lamere Jr** |
| | **1303 Nasa Pkwy Ste 160** |
| | **Houston, TX 77058-3380** |
| Payor: **1st mortgagee** | Agent Phone: **281-333-4808** |

The building covered by this policy is located at the above mailing address unless otherwise stated below.

| RATING DESCRIPTION | |
|---|---|
| Property/Building | Contents Location |

**Single family**
**Three or more floors**
**Elevated with unfinished enclosure**
Date of construction or substantial improvement was on **06/01/1978**

### LOCATION INFORMATION

Community Name: **NASSAU BAY, CITY OF** No: **4854911090K**
Status: **Regular** CRS Class: **7** Flood Risk/Rated Zone: **AE** Current Flood Zone: **AE** Elevation Difference: **0**

### COVERAGE AND RATING INFORMATION

| Coverage Type | Coverage Limit | Deductible | Rate | Deductible Adjustment | Premium |
|---|---|---|---|---|---|
| Building | $ 215,700 | $ 1,000 | 00.82/00.10 | $ 0.00 | $ 648.00 |
| Contents | $ 0 | $ 0 | 00.00/00.00 | $ 0.00 | $ 0.00 |
| | | | | ICC PREMIUM | $ 5.00 |
| | | | | ANNUAL SUBTOTAL | $ 653.00 |
| | | | | CRS DISCOUNT | $ -98.00 |
| | | | | FEDERAL POLICY FEE | $ 40.00 |
| | | | | TOTAL PREMIUM | $ 595.00 |

### THIS IS NOT A BILL

Policy Changes:

**First Mortgagee Changed**

| FIRST MORTGAGEE | SECOND MORTGAGEE |
|---|---|
| **Wells Fargo Bank Na #708** | **GREEN TREE SERVICING LLC** |
| **Po Box 5708** | **PO BOX 979282** |
| **Springfield, OH 45501-5708** | **MIAMI, FL 33197-9282** |
| | **LOAN NUMBER: GTSL 0007 68088258** |

Issue Date: **07/08/2011**

**Insured Copy**

Exhibit D



June 02, 2011


Clifford H McKenzie
Janet D McKenzie
2619 Sailboat Drive
Houston TX 77058

        FLOOD INSURANCE COVERAGE DEFICIENCY NOTIFICATION
**********************************************************************
Notice Date: June 02, 2011 Loan Number: 0134402809, Client 708
Policy Number: SF00520917
**********************************************************************
Our records indicate that the amount of coverage provided by your
current flood insurance is less than the coverage required by
Wells Fargo Home Mortgage.

Please follow the steps below to obtain sufficient flood coverage and
send to Wells Fargo Home Mortgage within 45 days of the date on
this notice.

Obtaining Sufficient Flood Insurance
* Contact your insurance agent/company to review whether your current
  flood coverage meets the flood coverage required by
  Wells Fargo Home Mortgage.  Your flood insurance coverage should
  provide replacement cost coverage for your structure/improvements
  (as determined by you and your insurance agent).  The maximum amount
  of flood insurance you are required to secure is $250,000.

* Verify that your policy includes a Mortgagee Clause or Lenders Loss
  Payable Endorsement payable to:
        Wells Fargo Bank, N A, No. 708
        Its Successors and/or Assigns
        0134402809
        PO Box 5708
        Springfield OH  45501-5708

* Fax proof of the coverage within 45 days to (937) 525-4108 or mail
  to the address just above.

If your flood insurance premium is included in your escrow account, any
increased premium due to additional coverage will be added to your
escrow account.

FD260/RHQ



Page 2
Loan Number 0134402809

**Lender Placement if proof of coverage not received within 45 days**
If you do not provide us with evidence of the required coverage within
the 45 days specified above, Wells Fargo Home Mortgage is required
to secure additional flood insurance for you at your expense. If you have
an escrow account, the premium cost for this additional coverage will be
added to your escrow account. If you do not have an escrow account,
Wells Fargo Home Mortgage will advance the premium for this policy and
establish an escrow account for you.

The insurance we obtain will be provided by American Security Group
as arranged by Wells Fargo Insurance, Inc. Wells Fargo Insurance is an
affiliate of Wells Fargo Bank, N A. Wells Fargo Bank, N A
will be compensated by the insurance company in accordance with Federal
Flood Insurance guidelines.

In nearly all instances, the additional flood insurance coverage you
purchase from an agent or insurance company of your choice will be less
costly than the coverage purchased by Wells Fargo Home Mortgage.
The coverage that Wells Fargo Home Mortgage secures will only cover
your building or home but not your household contents. Coverage under
this policy will apply only if a loss exceeds the amount of coverage
provided by your voluntary flood insurance policy.

**Any Questions**
If you feel that your current coverage amount is adequate, please
provide us with a written statement from your insurance company detailing
the replacement value of your structure/improvements. We will then
update our records to reflect this information. Fax your information to
(937) 525-4108 or send it by mail to the address above.

If you have other questions about your flood insurance, please contact
one of our servicing representatives at (800) 862-4098, Monday through
Friday, 7 AM to 7 PM, Central Time.

Thank you for taking the time to help us resolve this matter.

FD260/RHQ/2OS1

**Fair Debt Collection Practices Act Disclosure**

This communication is an attempt to collect a debt and any information
obtained will be used for that purpose. However, if you have received
a discharge of this debt in bankruptcy or are currently in a bankruptcy
case, this notice is not intended as an attempt to collect a debt and,
this company has a security interest in the property and will only
exercise its rights as against the property.

Exhibit E

LOAN NO. 0018010819

# NOTE

DECEMBER 13, 2002        SAN ANGELO        TEXAS
[Date]        [City]        [State]

9333 EAST BRYANT LANE, SAN ANGELO, TEXAS  76904
[Property Address]

**1.   BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $44,650.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **WELLS FARGO HOME MORTGAGE, INC.**. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **6.62500%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.   PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **FEBRUARY 1, 2003.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **JANUARY 1, 2033,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  P.O. BOX 5137, DES MOINES, IOWA  50306-5137 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $285.80.

**4.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Initials:_____

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        FORM 3200 1/01  (page 1 of 2 pages)

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.   UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

Borrower(s)

_____
DANIEL J. BIDDIX

_____
ROBIN LYNN BIDDIX

Lender:   WELLS FARGO HOME MORTGAGE, INC.

_____

Initials:_____

Exhibit F

After recording, return to:
Wells Fargo Home Mortgage, Inc.
P.O. Box 5137
Des Moines, Iowa 50306-5137

_____ [Space Above This Line For Recording Data] _____

LOAN NO. 0018010819

# PURCHASE MONEY
# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)   "Security Instrument" means this document, which is dated DECEMBER 13, 2002, together with all Riders to this document.
(B)   "Borrower" is DANIEL J. BIDDIX AND SPOUSE, ROBIN LYNN BIDDIX. Borrower is the grantor under this Security Instrument.
(C)   "Lender" is WELLS FARGO HOME MORTGAGE, INC.. Lender is a CORPORATION organized and existing under the laws of CALIFORNIA. Lender's address is P.O. BOX 5137, DES MOINES, IOWA 50306-5137. Lender is the beneficiary under this Security Instrument.
(D)   "Trustee" is DUDLEY BEADLES. Trustee's address is 3500 HULEN, FORT WORTH, TARRANT COUNTY, TEXAS 76107.
(E)   "Note" means the promissory note signed by Borrower and dated DECEMBER 13, 2002. The Note states that Borrower owes Lender FORTY-FOUR THOUSAND SIX HUNDRED FIFTY AND 00/100THS Dollars ( U.S. $44,650.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JANUARY 1, 2033.
(F)   "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G)   "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H)   "Riders" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider   ☐ Other(s) [specify] _____
☐ 1-4 Family Rider           ☐ Biweekly Payment Rider

(I)   "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J)   "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K)   "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L)   "Escrow Items" means those items that are described in Section 3.
(M)   "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N)   "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O)   "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P)   "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q)   "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Initials: _____

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of TOM GREEN:
(All or part of the purchase price of the Property is paid for with the money loaned.)

BEING THAT CERTAIN LOT, TRACT OR PARCEL OF LAND SITUATED IN TOM GREEN COUNTY, TEXAS, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES.

which currently has the address of 9333 EAST BRYANT LANE, SAN ANGELO, TEXAS 76904 ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.
2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.
If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.
Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.
3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum ( the "Funds" ) to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the

Initials:_____

phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be

Initials:_____

the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into

Initials:_____

agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has -- if any -- with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Initials:

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan

Initials:_____

Servicer. Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month, Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

Initials: _____

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25. Subrogation.** Any of the proceeds of the Note used to take out outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property.**
Check box as applicable:

☒    **Purchase Money.**
The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐    **Owelty of Partition.**
The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐    **Renewal and Extension of Liens Against Homestead Property.**
The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐    **Acknowledgment of Cash Advanced Against Non-Homestead Property.**
The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**28. Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Borrower(s)

_____
DANIEL J. BIDDIX

_____
ROBIN LYNN BIDDIX

Initials:_____

———————————— [ Space Below This Line For Acknowledgment ] ————————————

**STATE OF TEXAS**
**COUNTY OF** ——————————————

This instrument was acknowledged before me on the _____ day of ——————————— , ——————————, by DANIEL J. BIDDIX AND
SPOUSE, ROBIN LYNN BIDDIX.

——————————————————————————————
Notary Public in and or the State of Texas
Notary's printed name:—————————————————————
My commission expires:—————————————————————

Initials:——————————

Exhibit G

*Truth-In-Lending Disclosure*

Date:   12/13/02
Creditor: WELLS FARGO HOME MORTGAGE, INC.

Borrowers: DANIEL J. BIDDIX
          ROBIN LYNN BIDDIX

2208 HIGHWAY 121, SUITE 120
BEDFORD, TX  760210000

Property
Location:   9333 E BRYANT LANE
           SAN ANGELO, TX  76904

| Annual Percentage Rate | Finance Charge | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The Amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| 7.4667 % | $ 63171.03 | $ 43353.10 | $ 106524.13 |

(e) means estimate

Your payment schedule will be

| Number of Payments | Amount of Payments | When Payments are Due Monthly, Beginning |
|---|---|---|
| 120 | 314.92 | FEBRUARY   01   2003 |
| 16 | 293.34 | FEBRUARY   01   2013 |
| 223 | 285.90 | JUNE   01   2014 |
| 1 | 284.59 | JANUARY   01   2033 |

Insurance
Property insurance is required. Property insurance may be obtained through any person of your choice. If you choose to obtain property insurance through the creditor, the term of the policy will be  N/A  and the premium for that term will be $ N/A

Flood Insurance ☐ is ☒ is not required. If required, flood insurance may be obtained through any person of your choice. If you choose to obtain flood insurance through the creditor, the term of the policy will be  N/A  and the premium for that term will be $ N/A

Security:   You are giving security interest in property at 9333 E BRYANT LANE, SAN ANGELO, TX  76904

Late Charge:   If payment is late, you will be charged 5.000 % of the payment. In Massachusetts, the late charge is 3% of the principal and interest portion of the payment that is overdue.

Prepayment:   If you pay off early, you
☐ may ☒ will not have to pay a penalty.
☐ may ☒ will not be entitled to a refund of part of the finance charge.
☐ If you prepay your loan other than on the regular installment date you may be assessed interest charges until the end of the month.

Assumption:   Someone buying your home:
☐ may, subject to conditions, be allowed to assume the remainder of the mortgage on the original terms.
☒ cannot assume the remainder of the mortgage on the original terms.

Demand Feature: This obligation ☐ has ☒ does not have a demand feature.

Variable Rate:   Your loan ☐ does ☒ does not contain a variable-rate feature. Disclosures about the variable-rate feature have been provided to you earlier.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties. Included with this disclosure and made a part of it is the Good Faith Estimate of Settlement Services.

By signing below, I/we acknowledge that I/we received a copy of this disclosure on _____ .

Applicant _____

Applicant DANIEL J. BIDDIX

Applicant _____

Applicant ROBIN LYNN BIDDIX

Applicant _____

Applicant _____

Applicant _____

Applicant _____

FINAL PRINT 12/13/02 10:15

Exhibit H

9674968

Return To:
WELLS FARGO HOME MORTGAGE, INC.
3601 MINNESOTA DR. SUITE 200
BLOOMINGTON, MN 55435

Prepared By:
WELLS FARGO HOME MORTGAGE, INC.

1115 COMMERCE DRIVE, SUITE C, LAS CRUCES, NM 880110000

———————————————— [Space Above This Line For Recording Data] ————————————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated DECEMBER 18, 2001 ,
together with all Riders to this document.

(B) "Borrower" is DAVID LARRY KIBILOSKI AND VIRGINIA ANN RYAN , HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.

NEW MEXICO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3032 1/01

-6(NM) (0005)

Page 1 of 16          Initials: ___

VMP MORTGAGE FORMS - (800)521-7291



(C) "Lender" is WELLS FARGO HOME MORTGAGE, INC.

Lender is a CORPORATION
organized and existing under the laws of THE STATE OF CALIFORNIA
Lender's address is P.O. BOX 5137, DES MOINES, IA 503065137

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated DECEMBER 18, 2001
The Note states that Borrower owes Lender FIFTY FIVE THOUSAND AND 00/100

Dollars
(U.S. $*****55,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than JANUARY 01, 2032 . This Security
Instrument secures a maximum principal amount of up to 150% of the amount of the Note.
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| Adjustable Rate Rider | Condominium Rider | Second Home Rider |
| Balloon Rider | Planned Unit Development Rider [X] | 1-4 Family Rider |
| VA Rider | Biweekly Payment Rider | Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

-6(NM) (0005)                    Page 2 of 16              Initials: VR DZK    Form 3032 1/01

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the COUNTY of DONA ANA :

[Type of Recording Jurisdiction]    [Name of Recording Jurisdiction]

A TRACT OF LAND SITUATE IN LAS CRUCES, DONA ANA COUNTY, NEW MEXICO, AS PART OF LOT 2, 3 AND 16, NORTH ALAMEDA ACRES SUBDIVISION AS FILED JUNE 7, 1938, IN BOOK 5, PAGE 48, DONA ANA COUNTY RECORDS, AND BEING MORE PARTICULARLY DESCRIBED ON EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN:


TAX STATEMENTS SHOULD BE SENT TO: WELLS FARGO HOME MORTGAGE, INC., P.O. BOX 5137, DES MOINES, IA 503065137


Parcel ID Number:                                which currently has the address of
315 W KEATHLEY DRIVE                                                    [Street]
LAS CRUCES                               [City] , New Mexico  88005      [Zip Code]
("Property Address"):


-6(NM) (0005)                    Page 3 of 16        Initials: VP/DdK      Form 3032  1/01

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

04/24/2012 TUE 13:38 [JOB NO. 7205] ☒005

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

-6(NM) (0005)     Page 6 of 16     Initials: VR     Form 3032 1/01

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance

proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for

enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to

-6(NM) (0009)     Page 9 of 16     Initials: ___     Form 3032 1/01

•

these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

-6(NM) (0008)  Page 12 of 16  Initials: ___  Form 3032  1/01

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to

Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies

provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Redemption Period.** If this Security Instrument is foreclosed, the redemption period after judicial sale shall be one month.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
DAVID LARRY KEBILOSKI                -Borrower

_____

_____ (Seal)
VIRGINIA ANN RYAN                    -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower                              -Borrower

 -6(NM) (0005)                Page 15 of 18                    Form 3032   1/01

STATE OF NEW MEXICO,                                    County ss:

This instrument was acknowledged before me on
by **DAVID LARRY KIBILOSKI AND VIRGINIA ANN RYAN**

My Commission Expires: 7-14-02

_____
Notary Public

-6(NM) (0006)                    Page 16 of 16                    Initials: _____
                                                                 Form 3032  1/01

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 18TH        day of DECEMBER, 2001        ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to WELLS FARGO HOME MORTGAGE, INC.

(the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:
315 W KEATHLEY DRIVE, LAS CRUCES, NM   88005

[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to
the Property described in the Security Instrument, the following items now or hereafter attached to the
Property to the extent they are fixtures are added to the Property description, and shall also constitute the
Property covered by the Security Instrument: building materials, appliances and goods of every nature
whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the
Property, including, but not limited to, those for the purposes of supplying or distributing heating,
cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and
access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves,
refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens,
blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the
Property covered by the Security Instrument. All of the foregoing together with the Property described in
the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to
in this 1-4 Family Rider and the Security Instrument as the "Property."

9674968

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Initials: _____
Page 1 of 4                                                                Form 3170 1/01

*VMP*®-57R (0008)                VMP MORTGAGE FORMS - (800)521-7291

•

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii)

Initials: _____          Form 3170 1/01

•

Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

Initials: VR / OZK    Form 3170 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)
DAVID  LARRY  KIBILOSKI        -Borrower

_____ (Seal)
VIRGINIA  ANN  RYAN            -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

57R (0008)                    Page 4 of 4                    Form 3170 1/01

9674968

# Notice of Special Flood Hazards

Date: 12/18/01

The building or mobile home securing the loan for which you have applied is or will be located in an area identified by the Director of the Federal Emergency Management Agency (FEMA) as a special flood hazard area. This area has at least a one percent (1%) chance of flood equal to or exceeding the base flood elevation (a 100-year flood) in any given year. During the life of a 30-year mortgage loan, the risk of a 100-year flood in a special flood hazard area is 26 percent (26%).

Federal law allows a lender and borrower jointly to request the Director of FEMA to review the determination of whether the property securing the loan is located in a special flood hazard area. If you would like to make such a request, please contact us for further information.

____ The community in which the property securing the loan is located participates in the National Flood Insurance Program (NFIP). Federal law will not allow us to make you the loan that you have applied for if you do not purchase flood insurance. The flood insurance must be maintained for the life of the loan. If you fail to purchase or renew flood insurance on the property, Federal law authorizes and requires us to purchase the flood insurance for you at your expense.

*Flood insurance coverage under the NFIP may be purchased through an insurance agent who will obtain the policy either directly through the NFIP or through an insurance company that participates in the NFIP. Flood insurance also may be available from private insurers that do not participate in the NFIP.

*At a minimum, flood insurance purchased must cover the lesser of:
   1. the outstanding principal balance of the loan; or
   2. the maximum amount of coverage allowed for the type of property under the NFIP.
The maximum deductible amount of this coverage is the greater of $1,000.00 or 1% of the face amount of the policy.

Flood insurance coverage under the NFIP is limited to the overall value of the property securing the loan minus the value of the land on which the property is located.

*Federal disaster relief assistance (usually in the form of a low-interest loan) may be available for damages incurred in excess of your flood insurance if your community's participation in the NFIP is in accordance with NFIP requirements.

____ Flood insurance coverage under the NFIP is not available for the property securing the loan because the community in which the property is located does not participate in the NFIP. In addition, if the non-participating community has been identified for at least one year as containing a special flood hazard area, properties located in the community will not be eligible for Federal disaster relief assistance in the event of a Federally-declared flood disaster.

Please sign the acknowledgment below and return it to us in the enclosed envelope as soon as possible. An additional copy is enclosed for your records. We must have the original signed acknowledgment prior to closing your loan.

Acknowledgment

I/We acknowledge receipt of this notice. I/We understand that the property I am/we are purchasing at
315 W KEATHLEY DRIVE, LAS CRUCES, NM   88005
is located in a designated flood hazard area and that the Lender must require proof of flood insurance coverage as a condition of my/our loan.

I/We understand this requirement is in accordance with the National Flood Insurance Act of 1968, as amended. I/We agree to maintain flood insurance coverage during the term of our mortgage loan.

| | | | |
|---|---|---|---|
| _signature_ | 12/18/01 | _signature_ | 12/18/01 |
| Borrower DAVID LARRY KIBILOSKI | Date | Borrower VIRGINIA ANN RYAN | Date |

| | | | |
|---|---|---|---|
| Borrower | Date | Borrower | Date |

NMFL # 0771 1/97

AFFIDAVIT

RE: 58496

STATE OF NEW MEXICO )
                     ) ss.
COUNTY OF DONA ANA   )

The undersigned, being first duly sworn on oath state(s):

That they are the owners of the following described property:

A tract of land situate in Las Cruces, Dona Ana County, New
Mexico as part of Lot 2,3 and 16, North Alameda Acres
Subdivision as filed June 7, 1938, in Book 5, Page 48, Dona Ana
County Records, and being more particularly described on Exhibit
"A" attached hereto and incorporated herein:

That there has been no work done or labor performed or materials
furnished in, on or about the above described premises during
the period of 120 days preceeding this date for which any
mechanic's or materialmen's lien(s) might be claimed or filed.

David Larry Kibiloski                    Virginia Ann Ryan

        The foregoing affidavit was acknowledged before me this
18th day of December, 2001, by David Larry Kibiloski and Virginia
Ann Ryan.

My Commission Expires: 7-14-02          NOTARY PUBLIC

**We strongly recommend that you increase your own flood insurance coverage.**

Your flood insurance agent should be able to answer any questions you may have about flood insurance, or you may visit the National Flood Insurance Program website at www.floodsmart.gov.

If you have any questions or believe that there is an error in our records, please call us at 1–800–472–9319, Monday through Friday from 7 am to 7 pm, central time and one of our customer service professionals will be happy to help you. Thank you for your assistance.

Fair Debt Collection Practices Act Disclosure

Wells Fargo Home Mortgage is required by the Fair Debt Collection Practices Act to inform you that, as your loan servicer, we are attempting to collect a debt, and any information obtained will be used for that purpose. However, if you have received a discharge from bankruptcy, and the loan was not reaffirmed in the bankruptcy case, Wells Fargo Home Mortgage will only exercise its rights against the property and is not attempting any act to collect the discharged debt from you personally.

With respect to those loans located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 am or after 9 pm. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.



Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.
© 2011 Wells Fargo Bank, N.A. All rights reserved. Member FDIC


Equal Housing
Lender

QBE Insurance Corporation
88 Pine Street, 16th Floor
New York, NY 10005
Home Office: c/o CT Corporation System
116 Pine Street, Suite 320
Harrisburg, PA 17101

Toll Free Customer Service: 1-800-472-9319
P O BOX 23000, JACKSONVILLE, FL 32241-3000

## 90-DAY BINDER

LOAN NUMBER: 9674968

NOTIFICATION DATE: 03/26/12

**ADDITIONAL NAMED INSURED**
DAVID L KIBILOSKI
VIRGINIA ANN RYAN
200 N MCLANE RD
PAYSON AZ 85541

**NAMED INSURED MORTGAGEE**
WELLS FARGO BANK, N.A. #472
ITS SUCCESSORS AND/OR ASSIGNS
P O BOX 23000
JACKSONVILLE, FL 32241-3000

| | Amount of Insurance | Premium |
|---|---|---|
| BINDER NUMBER BFG000074491 | Dwelling | $ 29,700 | $ 282.15 |
| POLICY TERM: | | | |
| FROM 03/17/12 TO 03/17/13 | Flood Deductible - per loss occurrence | | $ 750 |
| ☐NOON ☒12:01am | Located in CBRA or Non-Participating Community | | $ 750 |
| BINDER IS EFFECTIVE FOR 90 DAYS FROM THE EFFECTIVE DATE SHOWN ABOVE | | | |
| PROPERTY LOCATION<br>315 W KEATHLEY DRIVE<br>LAS CRUCES NM 88005 | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |
| | TOTAL CHARGES | | $ 282.15 |

We have not received a new/renewal insurance policy covering your mortgaged property. We do not believe this was your intention, but a lapse in coverage has occurred.

We have secured temporary coverage in the form of a 90-day binder through the Company shown above, and you will be charged for the policy premium. This binder covers the described property for risks of direct loss subject to the terms, conditions and limitations of the policy in current use by the company. If evidence of acceptable coverage is received during this binder period, you will be charged only for any lapse in coverage.

**The policy only covers dwellings. It does not cover your personal property.**

Please remember, it is your responsibility to maintain property insurance coverage on your property. If evidence of acceptable coverage is not received, a policy will be obtained through the Company shown above.

This coverage will be cancelled back to the original effective date, with no premium charge applying, if you provide coverage effective on or before the effective date of this binder.

**For Customer Service questions, please call our toll free Customer Service Number at: 1-800-472-9319**

To report a CLAIM, please contact our Claim Department at: 1-800-824-8562
or, you may report a new claim using our website at www.qbefirst.com

RF1301 0109

Page 1 of 1

0003-0007641 00:1726

Exhibit I



Wells Fargo Home Mortgage
P.O. Box 23000
Jacksonville, FL 32241-3000
800-472-9319

November 05, 2008

David L Kibiloski
Virginia Ann Ryan
3749 N Briarcliff Rd
Kansas MO 64116

FLOOD INSURANCE COVERAGE DEFICIENCY NOTIFICATION
*****************************************************************
Notice Date: November 05, 2008 Loan Number: 9674968, Client 472
Policy Number: 7701535984200Z
*****************************************************************

Your current flood insurance coverage provides less coverage than the
amount required by Wells Fargo Home Mortgage.

You are required to obtain and maintain flood insurance that provides
replacement cost coverage for your structure/improvements (as determined
by you and your insurance agent).  The maximum amount of flood insurance
you are required to secure is $250,000.

Please increase your flood insurance coverage at your next flood policy
renewal to provide adequate coverage.

Any Questions

If you feel that your current coverage amount is adequate, please
provide us with a written statement from your insurance company detailing
the replacement value of your structure/improvements.  We will then
update our records to reflect this information.  Fax your information to
(904) 732-7792 or send it by mail to the address above.

If you have other questions about your flood insurance, please contact
one of our servicing representatives at (800) 472-9319, Monday through
Friday, 7 AM to 7 PM, Central Time.

FD268/LNG

Wells Fargo Home Mortgage
is a division of Wells Fargo Bank, N.A.



Wells Fargo Home Mortgage
P.O. Box 23000
Jacksonville, FL 32241-3000
800-472-9319

December 16, 2009

David L Kibiloski
Virginia Ann Ryan
3749 N Briarcliff Rd
Kansas MO 64116

FLOOD INSURANCE COVERAGE DEFICIENCY NOTIFICATION
**********************************************************
Notice Date: December 16, 2009 Loan Number: 9674968, Client 472
Policy Number: 7701535842007
**********************************************************

Your current flood insurance coverage provides less coverage than the
amount required by Wells Fargo Home Mortgage.

You are required to obtain and maintain flood insurance that provides
replacement cost coverage for your structure/improvements (as determined
by you and your insurance agent).  The maximum amount of flood insurance
you are required to secure is $250,000.

Please increase your flood insurance coverage at your next flood policy
renewal to provide adequate coverage.

Any Questions

If you feel that your current coverage amount is adequate, please
provide us with a written statement from your insurance company detailing
the replacement value of your structure/improvements.  We will then
update our records to reflect this information.  Fax your information to
(904) 732-7792 or send it by mail to the address above.

If you have other questions about your flood insurance, please contact
one of our servicing representatives at (800) 472-9319, Monday through
Friday, 7 AM to 7 PM, Central Time.

FD268/LNG

Wells Fargo Home Mortgage
is a division of Wells Fargo Bank, N.A.



Wells Fargo Home Mortgage
P.O. Box 23000
Jacksonville, FL 32241-3000
800-472-9319

February 05, 2010

David L Kibiloski
Virginia Ann Ryan
3749 N Briarcliff Rd
Kansas MO 64116

FLOOD INSURANCE COVERAGE DEFICIENCY NOTIFICATION
************************************************************
Notice Date: February 05, 2010 Loan Number: 9674968,  Client 472
Policy Number: 87045717762010
************************************************************
Our records indicate that the amount of coverage provided by your
current flood insurance is less than the coverage required by
Wells Fargo Home Mortgage.

Please follow the steps below to obtain sufficient flood coverage and
send to Wells Fargo Home Mortgage within 45 days of the date on
this notice.

Obtaining Sufficient Flood Insurance
* Contact your insurance agent/company to review whether your current
  flood coverage meets the flood coverage required by
  Wells Fargo Home Mortgage.  Your flood insurance coverage should
  provide replacement cost coverage for your structure/improvements
  (as determined by you and your insurance agent).  The maximum amount
  of flood insurance you are required to secure is $250,000.

* Verify that your policy includes a Mortgagee Clause or Lenders Loss
  Payable Endorsement payable to:
        Wells Fargo Bank, N A No. 472
        Its Successors and/or Assigns
        PO Box 23000
        Jacksonville  FL  32241-3000

* Fax proof of the coverage within 45 days to (904) 732-7792 or mail
  to the address just above.

If your flood insurance premium is included in your escrow account, any
increased premium due to additional coverage will be added to your
escrow account.

FD260/LNG

Wells Fargo Home Mortgage
is a division of Wells Fargo Bank, N.A.



Wells Fargo Home Mortgage
P.O. Box 23000
Jacksonville, FL  32241-3000
800-472-9319

Page 2
Loan Number 9674968

Lender Placement if proof of coverage not received within 45 days
If you do not provide us with evidence of the required coverage within
the 45 days specified above, Wells Fargo Home Mortgage is required
to secure additional flood insurance for you at your expense. If you have
an escrow account, the premium cost for this additional coverage will be
added to your escrow account.  If you do not have an escrow account,
Wells Fargo Home Mortgage will advance the premium for this policy and
establish an escrow account for you.

The insurance we obtain will be provided by ZC Sterling Corporation as
arranged by Wells Fargo Insurance, Inc.  Wells Fargo Insurance is an
affiliate of Wells Fargo Bank, N.A.  Wells Fargo Bank, N.A
will be compensated by the insurance company in accordance with Federal
Flood Insurance guidelines.

In nearly all instances, the additional flood insurance coverage you
purchase from an agent or insurance company of your choice will be less
costly than the coverage purchased by Wells Fargo Home Mortgage.
The coverage that Wells Fargo Home Mortgage secures will only cover
your building or home but not your household contents.  Coverage under
this policy will apply only if a loss exceeds the amount of coverage
provided by your voluntary flood insurance policy.

Any Questions
If you feel that your current coverage amount is adequate, please
provide us with a written statement from your insurance company detailing
the replacement value of your structure/improvements.  We will then
update our records to reflect this information.  Fax your information to
(904) 732-7792 or send it by mail to the address above.

If you have other questions about your flood insurance, please contact
one of our servicing representatives at (800) 472-9319, Monday through
Friday, 7 AM to 7 PM, Central Time.

Thank you for taking the time to help us resolve this matter.

FD260/LNG/2

Fair Debt Collection Practices Act Disclosure

This communication is an attempt to collect a debt and any information
obtained will be used for that purpose. However, if you have received
a discharge of this debt in bankruptcy or are currently in a bankruptcy
case, this notice is not intended as an attempt to collect a debt and,
this company has a security interest in the property and will only
exercise its rights as against the property.

Wells Fargo Home Mortgage
is a division of Wells Fargo Bank, N.A.



Wells Fargo Home Mortgage
P.O. Box 23000
Jacksonville, FL 32241-3000
800-472-9319

October 21, 2011

David L Kibiloski
Virginia Ann Ryan
200 N Mclane Rd
Payson AZ 85541

FLOOD INSURANCE COVERAGE DEFICIENCY NOTIFICATION
**************************************************************
Notice Date: October 21, 2011 Loan Number: 9674968, Client 472
Policy Number: 87045717762011
**************************************************************
Our records indicate that the amount of coverage provided by your
current flood insurance is less than the coverage required by
Wells Fargo Home Mortgage.

Please follow the steps below to obtain sufficient flood coverage and
send to Wells Fargo Home Mortgage within 45 days of the date on
this notice.

Obtaining Sufficient Flood Insurance
* Contact your insurance agent/company to review whether your current
  flood coverage meets the flood coverage required by
  Wells Fargo Home Mortgage.  Your flood insurance coverage should
  provide replacement cost coverage for your structure/improvements
  (as determined by you and your insurance agent).  The maximum amount
  of flood insurance you are required to secure is $250,000.

* Verify that your policy includes a Mortgagee Clause or Lenders Loss
  Payable Endorsement payable to:
       Wells Fargo Bank, N. A.  No. 472
       Its Successors and/or Assigns
       PO Box 23000
       Jacksonville  FL  32241-3000

* Fax proof of the coverage within 45 days to (904) 732-7792 or mail
  to the address just above.

If your flood insurance premium is included in your escrow account, any
increased premium due to additional coverage will be added to your
escrow account.

FD260/M64



Wells Fargo Home Mortgage
P.O. Box 23000
Jacksonville, FL 32241-3000
800-472-9319

Page 2
Loan Number 9674968

Lender Placement if proof of coverage not received within 45 days
If you do not provide us with evidence of the required coverage within
the 45 days specified above, Wells Fargo Home Mortgage is required
to secure additional flood insurance for you at your expense. If you have
an escrow account, the premium cost for this additional coverage will be
added to your escrow account. If you do not have an escrow account,
Wells Fargo Home Mortgage will advance the premium for this policy and
establish an escrow account for you.

The insurance we obtain will be provided by ZC Sterling Corporation as
arranged by Wells Fargo Insurance, Inc. Wells Fargo Insurance is an
affiliate of Wells Fargo Bank, N. A. . Wells Fargo Bank, N. A.
will be compensated by the insurance company in accordance with Federal
Flood Insurance guidelines.

In nearly all instances, the additional flood insurance coverage you
purchase from an agent or insurance company of your choice will be less
costly than the coverage purchased by Wells Fargo Home Mortgage.
The coverage that Wells Fargo Home Mortgage secures will only cover
your building or home but not your household contents.   Coverage under
this policy will apply only if a loss exceeds the amount of coverage
provided by your voluntary flood insurance policy.

Any Questions
If you feel that your current coverage amount is adequate, please
provide us with a written statement from your insurance company detailing
the replacement value of your structure/improvements.  We will then
update our records to reflect this information.  Fax your information to
(904) 732-7792 or send it by mail to the address above.

If you have other questions about your flood insurance, please contact
one of our servicing representatives at (800) 472-9319, Monday through
Friday, 7 AM to 7 PM, Central Time.

Thank you for taking the time to help us resolve this matter.

FD260/M64/2

Fair Debt Collection Practices Act Disclosure

This communication is an attempt to collect a debt and any information
obtained will be used for that purpose. However, if you have received
a discharge of this debt in bankruptcy or are currently in a bankruptcy
case, this notice is not intended as an attempt to collect a debt and,
this company has a security interest in the property and will only
exercise its rights as against the property.

Wells Fargo Home Mortgage
is a division of Wells Fargo Bank, N.A.



Wells Fargo Home Mortgage
P.O. Box 23000
Jacksonville, FL 32241-3000
800-472-9319

January 27, 2012

David L Kibiloski
Virginia Ann Ryan
200 N Mclane Rd
Payson AZ 85541

        FLOOD INSURANCE COVERAGE DEFICIENCY NOTIFICATION
*************************************************************************
Notice Date: January 27, 2012 Loan Number: 9674968, Client 472
Policy Number: 87045717762012
*************************************************************************
Our records indicate that the amount of coverage provided by your
current flood insurance is less than the coverage required by
Wells Fargo Home Mortgage.

Please follow the steps below to obtain sufficient flood coverage and
send to Wells Fargo Home Mortgage within 45 days of the date on
this notice.

Obtaining Sufficient Flood Insurance
* Contact your insurance agent/company to review whether your current
  flood coverage meets the flood coverage required by
  Wells Fargo Home Mortgage.  Your flood insurance coverage should
  provide replacement cost coverage for your structure/improvements
  (as determined by you and your insurance agent).  The maximum amount
  of flood insurance you are required to secure is $250,000.

* Verify that your policy includes a Mortgagee Clause or Lenders Loss
  Payable Endorsement payable to:
        Wells Fargo Bank, N. A.  No. 472
        Its Successors and/or Assigns
        PO Box 23000
        Jacksonville  FL  32241-3000

* Fax proof of the coverage within 45 days to (904) 732-7792 or mail
  to the address just above.

If your flood insurance premium is included in your escrow account, any
increased premium due to additional coverage will be added to your
escrow account.

FD260/XNT

Wells Fargo Home Mortgage
is a division of Wells Fargo Bank, N.A.



Wells Fargo Home Mortgage
P.O. Box 23000
Jacksonville, FL 32241-3000
800-472-9319

Page 2
Loan Number 9674968

Lender Placement if proof of coverage not received within 45 days
If you do not provide us with evidence of the required coverage within
the 45 days specified above, Wells Fargo Home Mortgage is required
to secure additional flood insurance for you at your expense. If you have
an escrow account, the premium cost for this additional coverage will be
added to your escrow account. If you do not have an escrow account,
Wells Fargo Home Mortgage will advance the premium for this policy and
establish an escrow account for you.

The insurance we obtain will be provided by ZC Sterling Corporation as
arranged by Wells Fargo Insurance, Inc. Wells Fargo Insurance is an
affiliate of Wells Fargo Bank, N. A. . Wells Fargo Bank, N. A.
will be compensated by the insurance company in accordance with Federal
Flood Insurance guidelines.

In nearly all instances, the additional flood insurance coverage you
purchase from an agent or insurance company of your choice will be less
costly than the coverage purchased by Wells Fargo Home Mortgage.
The coverage that Wells Fargo Home Mortgage secures will only cover
your building or home but not your household contents. Coverage under
this policy will apply only if a loss exceeds the amount of coverage
provided by your voluntary flood insurance policy.

Any Questions
If you feel that your current coverage amount is adequate, please
provide us with a written statement from your insurance company detailing
the replacement value of your structure/improvements. We will then
update our records to reflect this information. Fax your information to
(904) 732-7792 or send it by mail to the address above.

If you have other questions about your flood insurance, please contact
one of our servicing representatives at (800) 472-9319, Monday through
Friday, 7 AM to 7 PM, Central Time.

Thank you for taking the time to help us resolve this matter.

FD260/XNT/2

Fair Debt Collection Practices Act Disclosure

This communication is an attempt to collect a debt and any information
obtained will be used for that purpose. However, if you have received
a discharge of this debt in bankruptcy or are currently in a bankruptcy
case, this notice is not intended as an attempt to collect a debt and,
this company has a security interest in the property and will only
exercise its rights as against the property.

Wells Fargo Home Mortgage
is a division of Wells Fargo Bank, N.A.

Exhibit J

Wells Fargo Home Mortgage #472
P.O. Box 23000, Jacksonville, FL 32241-3000
800-472-9319



0004767 01 MB 0.387 **AUTO   T5 0 0751 85541-433800 C1-1
DAVID L KIBILOSKI
VIRGINIA ANN RYAN
200 N MCLANE RD
PAYSON AZ 85541-4338

Notice date: 01/17/12
Loan number: 9674968-472

## Action required - important notice regarding your flood insurance

| Insurance expiration date: | Property address: |
|---|---|
| 01/13/12 | 315 W KEATHLEY DRIVE |
| | LAS CRUCES NM 88005 |

The National Flood Insurance Reform Act of 1994 requires Wells Fargo Home Mortgage and all other federally regulated lenders that service home loans to inform customers about their obligation to purchase flood insurance. Because your property lies in a "Special Flood Hazard Area" on flood maps produced by the Federal Emergency Management Agency ("FEMA"), we require that flood insurance must be maintained on all structures on the property for the entire term of the loan.

It has recently come to our attention that we have not received a copy of your flood insurance policy that shows coverage in force as of the insurance expiration date shown above.

As your mortgage servicer, we monitor your loan for continuous flood insurance coverage. At a minimum, we require that you maintain flood insurance that is equal to 100% of the estimated replacement cost to rebuild your home and other improvements on your property (as determined by you and your insurance agent). The maximum amount of flood insurance you are required to maintain on any one residential building is $250,000. Normally we would expect the amount of insurance for your structures/improvements on your flood policy to be equal to the amount of insurance for those same structures/improvements on your hazard insurance policy.

Continued on Back

WMWRNF01   10/07/11

0001-0004767-0010317

20120117-00005493

## To satisfy this requirement:

- Send a copy of your current flood insurance policy or declaration page to the address shown below, or
- Fax it to 1–904–732–7792, or
- Provide this information to us by visiting our website, www.updatemyinsurance.com/WM.

Please be sure your policy includes your loan number and a Mortgagee Clause or Lenders Loss Payable Endorsement made out to:

> WELLS FARGO BANK, N.A. #472
> ITS SUCCESSORS AND/OR ASSIGNS
> P O BOX 23000
> JACKSONVILLE, FL 32241–3000
> Loan number: 9674968–472

Once we have received the information, we will update our records. **It is very important that we receive this information in our office immediately.**

## For your information

In the mortgage documents you signed, you agreed to maintain insurance at all times on your structure/improvements, in the form and amounts we require. Failure to do so is a breach of the requirements of your loan. Please contact your insurance agent or company and arrange to renew your expired policy or obtain a new policy. Please ask your insurance agent or company to send a copy of the policy to us at the above address as soon as possible.

If the property that secures this loan is part of a condominium, your association may have flood insurance that will satisfy this requirement. Please ask your association to provide a copy of their flood insurance coverage to us.



**Please call us as soon as possible.**
Let us help you today.

## We can help

**If your flood insurance is not included within your monthly mortgage payment and you are currently unable to pay your flood insurance premium, please call us as soon as possible and ask us to set up an escrow account and advance the insurance premium for you.** If you choose this option, you would repay us for the advance in your future monthly payments. We will need the contact information for your insurance agent or company as well as the amount of the premium currently due. Insurance companies allow a very short time to reinstate policies that have expired and it is important that you call us immediately if you need our assistance. We cannot pay the insurance premium for flood coverage you obtain without your cooperation.

You should be able to obtain flood insurance coverage from most local insurance agents. If you are unable to obtain flood insurance coverage from your agent or company, please call us and ask that we connect you with Wells Fargo Insurance, Inc., a licensed insurance agency that represents insurance companies who provide flood insurance through the National Flood Insurance Program.



## Failure to provide proof of insurance

If you fail to provide evidence of insurance, your loan documents describe that we will purchase flood insurance coverage on your property at your expense. **If we do not receive proof of coverage within 45 days from the date of this notice, Wells Fargo Home Mortgage will secure coverage on your property as of the expiration date shown above.** The premium will be charged to your escrow account. If you do not have an escrow account, one will be established for you. Your monthly mortgage payment will be increased to include the cost of this policy.

## Your rights

If you disagree with the flood zone that we have determined for your property you have the right to challenge our determination under Section 524 of the National Flood Insurance Reform Act of 1994. You will need to provide written evidence from a community official, registered engineer, architect or surveyor, including an Elevation Certificate, stating the reason for your challenge. If you have documentation we will assist you in applying to FEMA for a Letter of Map Amendment. If you elect to challenge our determination you must maintain flood insurance on the property until FEMA approves the request for the Letter of Map Amendment.

You have the right to independently purchase flood insurance from the insurance agent or company of your choice and we urge you to do so. In nearly all instances, the flood insurance coverage we obtain will be far more expensive than a policy you could obtain from an agent or insurance company of your choice. The policy we obtain will only provide coverage for direct physical damage to the structure/improvements, and will not cover any personal property or liability. Wells Fargo Bank, N.A. may be the named insured. The amount of coverage we obtain may not be adequate to protect your interest.

The policy we obtain will supersede any lender coverage remaining in effect under any previous policy.

## Amount of insurance we will obtain

The amount of coverage we obtain will be based on the amount of coverage we require as described above. If you have information to verify that the amount should be different, please notify us. This request must be in writing and should be sent to the above address. Please include your loan number on the letter.

## When you provide proof of insurance

If we purchase insurance because we have not received proof of acceptable insurance from you, the insurance we obtain will remain in effect until you provide us with evidence of other acceptable coverage. You may cancel the insurance we obtain at any time by providing us evidence of other acceptable coverage. When you provide proof of acceptable coverage, the policy we obtain will be cancelled as of the effective date of your own insurance, and any unused premium, as calculated by the insurance company, will be refunded to your escrow account.

If we purchase the insurance for you, it will be obtained with the assistance of Wells Fargo Insurance, Inc., a licensed insurance agency and affiliate of Wells Fargo Bank, N.A. Wells Fargo Insurance will receive a commission on the insurance we obtain. No Wells Fargo entity has any other affiliation with the insurance carriers we use in this process. If you have any questions about the administration of this program by Wells Fargo Home Mortgage, Wells Fargo Insurance, Inc. or the insurance obtained through the third party insurance carrier, please contact us at the phone number below.

Continued on Back

We strongly recommend that you obtain your own insurance coverage.

Your flood insurance agent should be able to answer any questions you may have about flood insurance, or you may visit the National Flood Insurance Program website at www.floodsmart.gov.

If you have any questions or believe that there is an error in our records, please call us at 1-800-472-9319, Monday through Friday from 7 am to 7 pm, central time and one of our customer service professionals will be happy to help you. Thank you for your assistance.

Fair Debt Collection Practices Act Disclosure

Wells Fargo Home Mortgage is required by the Fair Debt Collection Practices Act to inform you that, as your loan servicer, we are attempting to collect a debt, and any information obtained will be used for that purpose. However, if you have received a discharge from bankruptcy, and the loan was not reaffirmed in the bankruptcy case, Wells Fargo Home Mortgage will only exercise its rights against the property and is not attempting any act to collect the discharged debt from you personally.

With respect to those loans located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 am or after 9 pm. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.
© 2011 Wells Fargo Bank, N.A. All rights reserved. Member FDIC

Equal Housing
Lender

0002-0004767-0000000

Exhibit K



Wells Fargo Home Mortgage #472
P.O. Box 23000, Jacksonville, FL 32241-3000
800-472-9319

0007641 01 AB 0.371  **ALT0   T7 3 0300 85541-433800 C1-1
DAVID L KIBILOSKI
VIRGINIA ANN RYAN
200 N MCLANE RD
PAYSON AZ 85541-4338

Notice date: 03/26/12
Loan number: 9674968-472

## Action required - important notice of temporary flood insurance due to deficient coverage

| Flood gap insurance effective date: 03/17/12 | Property address: 315 W KEATHLEY DRIVE LAS CRUCES NM 88005 |
| --- | --- |

The National Flood Insurance Reform Act of 1994 requires Wells Fargo Home Mortgage and all other federally regulated lenders that service home loans to inform customers about their obligation to purchase flood insurance. Because your property lies in a "Special Flood Hazard Area" on flood maps produced by the Federal Emergency Management Agency ("FEMA"), we require that adequate flood insurance must be maintained on all structures on the property for the entire term of the loan.

Previously we notified you that the amount of coverage provided by your current flood insurance policy is less than the amount of coverage required by Wells Fargo Bank, N.A. At a minimum, we require that you maintain flood insurance that is equal to 100% of the estimated replacement cost to rebuild your home and other improvements on your property (as determined by you and your insurance agent). The maximum amount of flood insurance you are required to maintain on any one residential building is $250,000. Normally we would expect the amount of insurance for your structures/improvements on your flood policy to be equal to the amount of insurance for those same structures/improvements on your hazard insurance policy.

The letter also explained that you must provide Wells Fargo Bank, N.A. with evidence of your increased flood coverage within 45 days of the date on that notice. In the mortgage documents you signed, you agreed to keep insurance on your structure/improvements at all times, in the form and the amounts we require. Failure to do so is a breach of those requirements. Our records indicate that we have not received evidence of adequate flood insurance coverage for your property. **Therefore, we have secured additional temporary flood insurance coverage effective as of the date shown above through QBE Insurance Corporation.** The enclosed binder will provide additional flood insurance coverage for your structure/improvements until you provide proof of acceptable insurance coverage or, if we do not receive proof that you have increased your flood insurance, until we purchase an annual flood insurance policy that will be effective as of the insurance effective date shown above. This binder covers your structure/improvements for direct loss or damage subject to the terms of the policy and will only apply if a loss to your structure/improvements exceeds the amount of coverage provided by your current flood insurance policy. It does not provide any coverage for personal property, nor does it protect you from liability against accidents that occur on your property.

## Amount of insurance we will obtain

The amount of coverage we obtain will be based on the shortage in coverage between the amount of flood insurance we require (as described above) and your current flood insurance policy, limited to a maximum amount of $250,000. If you have information from your insurance provider to verify that the amount should be different, please notify us. This request must be in writing and should be sent to the address shown below. Please include your loan number on the letter.

## To satisfy this requirement:

Please contact your insurance agent/company to increase your flood insurance to the amount we require as described above.

- Request proof of coverage for the amount we require and send it to us at the address shown below, or
- Fax it to 1-904-732-7792, or
- Provide this information to us by visiting our website, www.updatemyinsurance.com/WM.

Please be sure your policy includes your loan number and a Mortgagee Clause or Lenders Loss Payable Endorsement made out to:

WELLS FARGO BANK, N.A. #472
ITS SUCCESSORS AND/OR ASSIGNS
P O BOX 23000
JACKSONVILLE, FL 32241-3000
Loan number: 9674968-472

Upon receipt of your amended policy showing increased coverage, this binder will be cancelled. You will be charged only for the days between the effective date of our binder and the date your increased coverage becomes effective.



0001-9997041-0000000

 Please call us as soon as possible.
Let us help you today.

## We can help

**If your flood insurance is not included within your monthly mortgage payment and you have not increased your coverage because you are currently unable to pay the additional flood insurance premium, please call us as soon as possible and ask us to set up an escrow account and advance the insurance premium for you.** If you choose this option, you would repay us for the advance in your future monthly payments. We will need the contact information for your insurance agent or company as well as the amount of the premium currently due. It is important that you call us immediately if you need our assistance. We cannot pay the insurance premium for flood coverage you obtain without your cooperation.

## Failure to provide proof of adequate insurance

If we do not receive proof of your increased flood coverage, we will purchase a one year policy. The premium for this policy is shown on the attached binder. This premium will be charged to your escrow account at the end of the binder period. If you do not have an escrow account, one will be established for you. Your monthly mortgage payment will be increased to include the cost of this policy. You may cancel the insurance we obtain at any time by giving us proof that you have increased your flood insurance coverage to the amount we require. When you provide proof of acceptable coverage, the additional flood policy we have obtained will be cancelled and you will be charged only for the days this policy was in force. Any unused premium will be refunded to your escrow account.

## Your rights

You have the right to independently purchase flood insurance from the insurance agent or company of your choice and we urge you to do so. In nearly all instances, the additional flood insurance coverage we obtain will be far more expensive than the cost to increase the coverage on your current flood insurance policy from the agent or insurance company of your choice. The policy we obtain will only provide coverage for direct physical damage to your structure/improvements and will not cover any personal property or liability. The coverage under the policy we obtain will only apply if a loss to your structure/improvements exceeds the amount of coverage provided by your current flood insurance policy. Wells Fargo Bank, N.A. may be the named insured. The amount of coverage we obtain may not be adequate to protect your interest.

If we purchase the insurance for you, it will be obtained with the assistance of Wells Fargo Insurance, Inc., a licensed insurance agency and affiliate of Wells Fargo Bank, N.A. Wells Fargo Insurance will receive a commission on the insurance we obtain. QBE Insurance Corporation is subject to the applicable insurance laws and regulations in your state. No Wells Fargo entity has any other affiliation with the insurance carriers we use in this process. If you have any questions about the administration of this program by Wells Fargo Home Mortgage, Wells Fargo Insurance, Inc. or the insurance obtained through the third party insurance carrier, please contact us at the phone number below.

Continued on Back

0002-0007641 0011725

**We strongly recommend that you increase your own flood insurance coverage.**

Your flood insurance agent should be able to answer any questions you may have about flood insurance, or you may visit the National Flood Insurance Program website at www.floodsmart.gov.

If you have any questions or believe that there is an error in our records, please call us at 1–800–472–9319, Monday through Friday from 7 am to 7 pm, central time and one of our customer service professionals will be happy to help you. Thank you for your assistance.

Fair Debt Collection Practices Act Disclosure

Wells Fargo Home Mortgage is required by the Fair Debt Collection Practices Act to inform you that, as your loan servicer, we are attempting to collect a debt, and any information obtained will be used for that purpose. However, if you have received a discharge from bankruptcy, and the loan was not reaffirmed in the bankruptcy case, Wells Fargo Home Mortgage will only exercise its rights against the property and is not attempting any act to collect the discharged debt from you personally.

With respect to those loans located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 am or after 9 pm. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.



Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.
© 2011 Wells Fargo Bank, N.A. All rights reserved. Member FDIC

Equal Housing
Lender

QBE Insurance Corporation
88 Pine Street, 16th Floor
New York, NY 10005
Home Office: c/o CT Corporation System
   116 Pine Street, Suite 320
   Harrisburg, PA 17101

Toll Free Customer Service: 1-800-472-9319
P O BOX 23000, JACKSONVILLE, FL 32241-3000

## 90-DAY BINDER

LOAN NUMBER:  9674968

NOTIFICATION DATE:  03/26/12

**ADDITIONAL NAMED INSURED**
DAVID L KIBILOSKI
VIRGINIA ANN RYAN
200 N MCLANE RD
PAYSON AZ 85541

**NAMED INSURED MORTGAGEE**
WELLS FARGO BANK, N.A. #472
ITS SUCCESSORS AND/OR ASSIGNS
P O BOX 23000
JACKSONVILLE, FL 32241-3000

| | | Amount of Insurance | Premium |
|---|---|---|---|
| BINDER NUMBER  BFG000074491 | Dwelling | $          29,700 | $        282.15 |
| POLICY TERM: | | | |
| FROM 03/17/12       TO 03/17/13 | Flood Deductible - per loss occurrence | | $          750 |
| ☐ NOON      ☒ 12:01am | Located in CBRA or Non-Participating Community | | $          750 |
| BINDER IS EFFECTIVE FOR 90 DAYS FROM THE EFFECTIVE DATE SHOWN ABOVE | | | |
| PROPERTY LOCATION
315 W KEATHLEY DRIVE
LAS CRUCES NM 88005 | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |
| | TOTAL CHARGES | | $        282.15 |

We have not received a new/renewal insurance policy covering your mortgaged property. We do not believe this was your intention, but a lapse in coverage has occurred.

We have secured temporary coverage in the form of a 90-day binder through the Company shown above, and you will be charged for the policy premium. This binder covers the described property for risks of direct loss subject to the terms, conditions and limitations of the policy in current use by the company. If evidence of acceptable coverage is received during this binder period, you will be charged only for any lapse in coverage.

**The policy only covers dwellings. It does not cover your personal property.**

Please remember, it is your responsibility to maintain property insurance coverage on your property. If evidence of acceptable coverage is not received, a policy will be obtained through the Company shown above.

This coverage will be cancelled back to the original effective date, with no premium charge applying, if you provide coverage effective on or before the effective date of this binder.

For Customer Service questions, please call our toll free Customer Service Number at: 1-800-472-9319

To report a CLAIM, please contact our Claim Department at: 1-800-824-8562
or, you may report a new claim using our website at www.qbefirst.com

RF1301 0109

Page 1 of 1

0003-0007641 0011726