IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA


CLIFFORD McKENZIE, et al.,

         Plaintiffs,

v.

WELLS FARGO BANK, N.A., et al.,

         Defendants.

Case No.: C-11-04965 JCS

**ORDER GRANTING MOTION TO DISMISS EXCESSIVE INSURANCE CLAIMS**

## I.    INTRODUCTION

       This is a putative class action brought by Plaintiffs Clifford McKenzie, Daniel and Robin Biddix ("the Biddixes"), David Kibiloski ("Kibiloski"), and Virginia Ryan ("Ryan") ("Plaintiffs") against Wells Fargo Bank, N.A. ("WFBNA"), which at times does business as Wells Fargo Home Mortgage ("WFHM"), Wells Fargo Insurance, Inc. ("WFI") (WFBNA, WFHM, and WFI are referred to collectively as "Wells Fargo"), Assurant, Inc. ("Assurant"), American Security Insurance Company ("ASIC"), and QBE FIRST Insurance Agency Inc. ("QBE") (Assurant, ASIC, and QBE are referred to collectively as "Insurance Defendants") (collectively, "Defendants") for breach of contract, unjust enrichment, conversion, tortious interference with a business relationship, and violation of the New Mexico Unfair Trade Practices Act ("UPA").  Presently before the Court is Wells Fargo's Motion to Dismiss or Strike the Third Amended Complaint's Excessive Insurance Claims ("Motion").  A hearing on the Motion was held on March 8, 2013 at 9:30 a.m.  For the reasons stated below the Court construes Wells Fargo's Motion as a Motion to Dismiss and GRANTS Wells Fargo's Motion.[1]

//

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

United States District Court

Northern District of California

**II.     BACKGROUND**

    **A.     Third Amended Complaint**

Plaintiffs allege that Defendants force-placed borrowers with flood insurance policies.  Third Amended Complaint ("TAC"), ¶ 2.  Plaintiffs further allege that Wells Fargo forces buyers to pay for these policies by diverting monthly mortgage payments and/or debiting borrowers' escrow accounts after retaining a commission for itself.  *Id.* at ¶ 3.  The TAC raises two theories for recovery, each of which encapsulates several overlapping claims.  First, "Plaintiffs challenge Wells Fargo's practice of purchasing force-placed flood insurance from the Insurance Defendants pursuant to agreements with Insurance Defendants that return financial benefits to Wells Fargo that are unrelated to any *bona fide* interest in protecting the Lender's interest in the loan," resulting in unfairly inflated costs to borrowers for force-placed insurance in violation of law.  *Id.* at ¶ 10.  This theory, the "kickback theory," is not challenged in the present Motion.

Second, "Plaintiffs Daniel and Robin Biddix, David Kibiloski, and Virginia Ryan (the "GSE Plaintiffs") bring this action on behalf of all persons who have or had residential mortgage loans originated and/or serviced by WFBNA/WFHM but owned by Fannie Mae or Freddie Mac (the "Government Sponsored Entities" or "GSEs") and, in connection therewith, were required to purchase flood insurance coverage by WFBNA in excess of what is required by the owner of the mortgage note."  *Id.* at ¶¶ 11-12.  In addition, Plaintiffs allege that the increased coverage requirements had a deleterious effect on the borrower's ability to make their monthly mortgage payments.  *Id.* at ¶ 13.  Thus, Plaintiffs allege that the increased coverage was not in the interest of the GSEs or the borrowers.  *Id.*  This theory, the "excessive insurance theory," is at issue here.

Plaintiffs allege that the Biddixes own property in Texas subject to a mortgage that was originated by WFBNA and is now serviced by WFBNA, but at all relevant times was owned by Freddie Mac.  *Id.* at ¶ 23.  Plaintiffs allege that Kibiloski and Ryan own property in New Mexico subject to a mortgage that was originated by WFBNA and is now serviced by WFBNA, but at all relevant times was owned by Freddie Mac.  *Id.* at ¶ 24.

Plaintiffs allege that residential mortgage loans are broken into two parts, the note and the security instrument.  *Id.* at ¶ 33.  Plaintiffs allege that the property insurance provisions are contained

in the security instrument. *Id.* Plaintiffs allege that the "Standard Fannie Mae/Freddie Mac" security instrument ("Fannie/Freddie Form") refers only to the Lender, and not the Loan Servicer, in the property insurance provisions. *Id.* at ¶ 34 (citing Fannie/Freddie Form, ¶ 5). Plaintiffs allege that Lender is defined in the Fannie/Freddie Form as the owner of the note. *Id.* at ¶ 35 (citing Fannie/Freddie Form, "Definitions" ¶ (D)). Plaintiffs allege that a subsequent purchaser of the note and security instrument becomes the Lender pursuant to the Fannie/Freddie Form. *Id.* at 37. Plaintiffs allege that the Fannie/Freddie Form states the possibility that the Lender will change and recognizes the distinction between the Loan Servicer and the Lender. *Id.* at ¶ 36 (citing Fannie/Freddie Form, ¶ 20). That is, Plaintiffs allege, that the Lender funds the loan and is entitled to repayment of principal and interest whereas the Loan Servicer collections periodic payments due under the note and security instrument and performs other mortgage loan servicing obligations. *Id.* at ¶ 38 (citing Fannie/Freddie Form, ¶ 20). Plaintiffs allege that the Fannie/Freddie form does not define the term "other mortgage loan servicing obligations." *Id.* at ¶ 39. Plaintiffs allege that the term is defined by the Fannie Mae or Freddie Mac servicer guidelines ("GSE servicer guidelines"). *Id.* Plaintiffs allege that the neither the GSE servicer guidelines nor any other express or implied agreements permits Defendants to set or change flood insurance requirements. *Id.* at ¶ 40. Moreover, Plaintiffs allege that the Loan Servicer's interest in the mortgage is limited to its right to receive servicer fees. *Id.* at ¶ 45.

Plaintiffs allege that the National Flood Insurance Act ("NFIA") requires lenders to ensure that flood insurance coverage is maintained on any property securing a loan or line of credit that falls in a Special Flood Hazard Area. *Id.* at ¶ 53. Plaintiffs allege that the NFIA requires coverage in amount that must be equal to the lesser of: (1) the maximum insurance coverage available through the NFIP, which is $250,000 per unit; (2) the outstanding balance of the loan; or (3) the replacement cost of the property. *Id.* Plaintiffs allege that this establishes a coverage floor. *Id.* Plaintiffs allege that Fannie Mae and Freddie Mac each have specific flood insurance requirements that are identical to and coextensive with the NFIA floor. *Id.* at ¶ 54. Plaintiffs allege that the Loan Servicer has improperly conflated the requirements for placing hazard insurance with those for placing flood insurance. *Id.* at ¶ 55.

3

United States District Court
Northern District of California

1    Turning to the Freddie Mac servicing guidelines, Plaintiffs allege that Freddie Mac requires

2    loan servicers that service its loan portfolio to obtain hazard insurance and flood insurance in two

3    distinct sections.  *Id*. at ¶¶ 56-59.  Plaintiffs allege that, pursuant to the guidelines, the Borrower's

4    flood insurance coverage must be at least equal to (1) the unpaid principal balance of the mortgage;

5    (2) the maximum amount of coverage currently sold under the NFIP; or (3) the replacement cost of

6    the insurable improvement.  *Id*. at ¶ 58 (citing Ex. 2).  Plaintiffs allege that the Freddie Mac servicer

7    guidelines provide that, as to flood insurance, if "[t]he Borrower does not maintain any of the

8    insurance coverages required of the Borrower in [the above described sections of the servicer

9    guidelines], [t]he [Loan] Servicer must follow up to verify that adequate coverage has been obtained

10   and remains in force.  If the Borrower does not or cannot obtain such coverage, the [Loan] Servicer

11   must do so."  *Id*. at ¶ 60 (quoting Freddie Mac Servicer Guide, Vol. 2, Chapter 58.9).  Plaintiffs allege

12   that this only allows the servicer to force-place insurance if the floor set out in the servicing guidelines

13   is not met.  *Id*. at ¶ 61.

14   Next, the TAC addresses the Fannie Mae servicing guidelines.  Plaintiffs allege that the Fannie

15   Mae servicing guidelines also distinguish between hazard insurance and flood insurance.  *Id*. at ¶¶ 62-

16   65.  Plaintiffs allege that the Fannie Mae servicing guidelines require a minimum amount of flood

17   insurance "for most first-lien mortgage loans [that] is the lower of:  [(1)] 100% of the replacement

18   cost of the insurable value of the improvements; [(2)] the maximum insurance available from the

19   NFIP, which is currently, $250,000 per dwelling; or [(3)] the UPB of the mortgage loan."  *Id*. at ¶ 65

20   (quoting Ex. 5).  Plaintiffs allege that the Fannie Mae servicing guidelines provide that part of a Loan

21   Servicer's "responsibility for protecting Fannie Mae's interest in the security property is to ensure that

22   hazard insurance (including flood insurance), under the terms specified in Fannie Mae's [Servicer

23   Guide], is in place at all times."  *Id*. at ¶ 66 (quoting Ex. 5).

24   Plaintiffs allege that, on September 16, 2011, Defendants sent the Biddixes a flood insurance

25   notification stating that Wells Fargo was "require[d]" by statute to impose replacement cost flood

26   insurance.  *Id*. at ¶ 86 (citing Ex. 14).  Plaintiffs allege that the Flood Insurance Notice was

27   inconsistent with statutory requirements under the NFIA and the requirements of the Lender, Freddie

28   Mac.  *Id*. at ¶¶ 89-91.  Plaintiffs further allege that the Biddixes received a second letter on November

16, 2011 informing them that a temporary replacement cost value insurance policy had been placed on their home, and that a policy would subsequently be placed with the assistance of WFI, an affiliate of WFBNA.  *Id*. at ¶¶ 92-93 (citing Exs. 15-16).  Plaintiffs allege that Defendants subsequently placed flood insurance that was excessive both in coverage and in unit cost, the cost of which was inflated by a tracking fee discount provided to WFBNA and a commission paid to WFI.  *Id*. at ¶¶ 94-95.

Plaintiffs allege that Kibiloski and Ryan received a number of letters from Defendants stating that their flood insurance was inadequate.  *Id*. at ¶ 103 (citing Ex. 20).  Plaintiffs allege that some of these letters stated that, if Kibiloski and Ryan did not obtain adequate flood insurance, Defendants would be "required" to secure flood insurance at their expense.  *Id*.  Plaintiffs assert that during this time period Kibiloski and Ryan obtained flood insurance for an amount greater than the unpaid principal balance of their mortgage loan.  *Id*. at ¶¶ 100-101.  Plaintiffs allege that the letters sent to Kibiloski and Ryan contained false, deceptive, and misleading statements as to their flood insurance obligations.  *Id*. at ¶ 108.

As pertinent to the present Motion, Plaintiffs allege the following causes of action:

(1)  <u>Breach of Contract by Plaintiffs and the Kickback Class</u>:  Plaintiffs allege that WFBNA is a party to their loan contracts as the Loan Servicer.  *Id*. at ¶ 161.  Plaintiffs allege that WFBNA breached the loan contract by force-placing flood insurance that levied exorbitant premiums on the borrowers.  *Id*. at ¶ 165.  Plaintiffs allege that these premiums were inflated by various improper benefits and improper backdating.  *Id*. at ¶¶ 165-166.  Plaintiffs allege that the GSE Plaintiffs bring their claims in the alternative to the breach of contract claims predicated on WFBNA's receipt of kickbacks and commissions.  *Id*. at ¶ 11 n.1.  Plaintiffs allege that, to the extent that WFBNA is not a party to the GSE Plaintiffs' mortgage agreements, they can state a claim for unjust enrichment, conversion, and tortious interference with a business relationship for both the amount of the kickbacks and commissions as well as excess coverage claims.  *Id*.

(2)  <u>Unjust Enrichment by the GSE Plaintiffs and GSE-Lender Class</u>:  Plaintiffs allege that Defendants, who are not a party to the contract, received a benefit from the GSE Plaintiffs in the form of excessive premiums on force-placed insurance policies.  *Id*. at ¶¶ 177-178.  Plaintiffs allege that the excessiveness of the rate was demonstrated by an extraordinarily low loss ratio.  *Id*. at ¶ 186.

1  Plaintiffs further allege that WFI received an 11% commission on each sale of force-placed flood

2  insurance.  *Id*.  Plaintiffs allege that WFBNA exceeded its authority to increase coverage requirements

3  to boost these commissions.  *Id*.  Plaintiffs allege that Wells Fargo and the Insurance Defendants were

4  therefore unjustly enriched at Plaintiffs' expense.  *Id*. at ¶ 187-188.

5        (3)  <u>Conversion</u>:  Plaintiffs allege a cause of action for conversion on several theories.  *Id*. at

6  ¶¶ 190-203.  Relevant here, Plaintiffs allege that, with regard to the GSE Plaintiffs and members of

7  the GSE-Lender Class, WFBNA wrongfully and intentionally collected flood insurance premiums

8  greater than those that were not required by the GSEs, the Lender and owner of the notes.  *Id*. at ¶

9  194.

10        (4)  <u>Tortious Interference with a Business Relationship by the GSE Plaintiffs and the GSE-</u>

11  <u>Lender Class</u>:  Plaintiffs allege that the GSE Plaintiffs and GSE-Lender Class have an advantageous

12  business relationship with their Lenders, the GSEs.  *Id*. at ¶ 205.  Plaintiffs allege that, pursuant to this

13  relationship, they have a contractual right not to have another entity change the flood insurance

14  requirements under their loan.  *Id*. at ¶ 206.  Plaintiffs allege that WFBNA, who is not a party to the

15  contract, intentionally interfered with that relationship, with knowledge of the relationship, by setting

16  and changing flood insurance requirements above the minimum set out by the GSE lenders in their

17  servicing guidelines.  *Id*. at ¶¶ 207-209.  Plaintiffs allege that this has a harmful effect on their ability

18  to keep up with their mortgage obligations, causing them harm.  *Id*. at ¶¶ 210-212.

19        (5)  <u>Violation of the UPA by Plaintiffs Kibiloski and Ryan and the New Mexico Class</u>:

20  Plaintiffs allege that Kibiloski and Ryan, like class members, received letters from Wells Fargo that

21  contained false and misleading statements in connection with their mortgage transaction and the

22  forced purchase of flood insurance.  *Id*. at ¶ 226.  Plaintiffs allege that the letters were misleading

23  because they asserted that WFBNA had the right to force-place flood insurance with a premium for

24  WFI and because the letters did not contain information regarding Wells Fargo's financial incentives

25  or kickbacks.  *Id*. at ¶ 228.  In addition, Plaintiffs allege that Defendants engaged in unlawful, unfair,

26  and/or fraudulent business practices in violation of the UPA.  *Id*. at ¶ 233.

27  //

28  //

6

**B.    The Court's October 30, 2012 Order**

In the Court's October 30, 2012 Order ("Order") the Court dismissed Plaintiffs' Second Amended Complaint ("SAC").  Dkt. No. 72 at 2.  The first claim the Court addressed in the Order was whether the security instruments limited Wells Fargo to requiring insurance only in the amount of the loan balance.  *Id*. at 19.  In the relevant portion of the Order, the Court concluded that the only reasonable interpretation of the contract was that it gives the lender the ability to require flood insurance above the minimum amount specified in the Notice of Special Flood Hazards ("NSFH") that accompanied Plaintiffs' deed of trust.  *Id*. at 24, 26, 28.  Therefore, the Court dismissed with prejudice Plaintiffs' claim that Wells Fargo breached the mortgage contract by requiring flood insurance above the minimum amount specified in the NFSH.  *Id*. at 28.

The Court separately addressed Plaintiffs theory that Wells Fargo breached its contracts by receiving kickbacks and commissions for force-placing excessively priced flood insurance.  *Id*. at 28-30.  The Court found that there was no factual support in the SAC for Plaintiffs' conclusion that the force-placed insurance policies were excessively priced and that Wells Fargo unnecessarily backdated force-placed insurance policies.  *Id*. at 29.  The Court dismissed Plaintiffs' breach of contract claim on this theory with leave to amend.  *Id*. at 29-30.  The court appended the following footnote ("Footnote 12") to its conclusion:

> Although not entirely clear, Plaintiffs appear to also argue that Wells breached the contract because as merely the loan servicer, it was not allowed to exercise the lender's discretion to require increased insurance under the contract.  This argument is incoherent.  The mortgage contract is between Lender and Borrower.  If Wells was acting as servicer, and not as Lender or Lender's agent, when it required increased insurance coverage, it could not be sued for breach of contract since it was not a party to the contract.  Notwithstanding this self-defeating argument, Plaintiffs maintain that "any claim by Wells Fargo that it was acting at the behest of [the Lender] is also subject to formal discovery."
>
> In response, Defendants assert that as the loan servicer they are also an agent of the loan's owner.  As agent, Defendants contend they can exercise the lender's right to specify the type and amount of insurance that the borrower must provide.  Moreover, Defendants argue that the notes and/or security instruments for Plaintiffs point to Wells as the lender.  Defendants contend that Plaintiffs do not adequately allege that Wells is no longer the lender.
>
> Given that interpreting the SAC to allege that Defendants are not even the Lender's agents would preclude Plaintiff's contract-related claims, the Court declines to make such an

United States District Court
Northern District of California

interpretation.  Plaintiffs, however, are free to amend their complaint to more clearly state their position on the matter.

*Id.* at 30 n.12 (citations omitted).  The Court also dismissed Plaintiffs' claims for unjust enrichment, conversion, and violation of the UPA with leave to amend to allege facts pertaining to the kickback scheme.  *Id.* at 32, 35.[2]

## C.    The Motion to Dismiss or to Strike the Excessive Insurance Claims

Wells Fargo contends that, in the October 30, 2012 Order, this Court dismissed with prejudice Plaintiffs' excessive insurance theory that Wells Fargo wronged Plaintiffs by requiring them to maintain replacement cost value flood insurance, as opposed to only principal balance coverage. Motion, 3 (citing Dkt. No. 72 at 19, 24, 28).  Wells Fargo states that the Court allowed Plaintiffs leave to amend their Complaint to allege facts concerning the kickback theory.  *Id.* (citing Dkt. No. 72 at 29, 38).  Wells Fargo argues that Plaintiffs exceeded the scope of their leave to amend by renewing their excessive insurance theory.  *Id.*  Wells Fargo states that excessive insurance claims and the allegations supporting them are unrelated to the kickback theory.  *Id.* at 3-4.[3]  For that reason, Wells Fargo asserts that the excessive insurance claims should be stricken or dismissed.  *Id.* at 4.  Wells Fargo states that there is some uncertainty as to whether a Rule 12(f) motion to strike or a Rule 12(b) motion to dismiss is appropriate in this context.  *Id.* (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974-975 (9th Cir. 2010)).

In addition, Wells Fargo argues that the renewed excessive insurance claims are unsound.  *Id.* at 4-15.  First, Wells Fargo asserts that the theory improperly relies on the GSE's servicing guidelines. *Id.* at 4-5.  Wells Fargo contends that borrowers have no standing to enforce the GSE's servicing guidelines because they are not third-party beneficiaries of those guidelines.  *Id.* at 4 (citing *Pennell v. Wells Fargo Bank, N.A.*, 2012 WL 2873882, at *8 (S.D. Miss. 2012); Fannie Mae Single Family 2012 Servicing Guide, pt. I, § 201, p. 102-2).

---

[2] Plaintiffs did not raise a cause of action for interference with an existing business relationship in their SAC.  The remaining causes of action addressed in the Order are not relevant to the present Motion.

[3] Wells Fargo states that the "excessive insurance claims include all or part of the TAC's third through seventh causes of action."  Motion to Dismiss, 3 n.2.  Wells Fargo states that the allegations supporting the excessive insurance theory appear at ¶¶ 11-13, 19-20, 23-24, 35-41, 45, 53-66, 89-95, 101, 103, 108, 147-148, 153, 177-178, 183, 186, 194, 205-212, 222, 226, 228, 233.  *Id.* at 3-4 n.3.

United States District Court
Northern District of California

1    Second, Wells Fargo argues that the GSE's servicing guidelines set only a floor, not a ceiling.

2    *Id.* at 5-9. Wells Fargo contends that the GSE's servicing guidelines mimic the National Flood

3    Insurance Act ("NFIA") and Department of Housing and Urban Development ("HUD") regulations

4    that this Court interpreted as setting a required minimum coverage but not barring a lender or loan

5    servicer from requiring a higher coverage amount. *Id.* at 6-7 (citing Dkt. No. 72 at 23 n.9). Wells

6    Fargo emphasizes that federal policy is in favor of more, not less, flood insurance. *Id.* at 8 (citing 42

7    U.S.C. §§ 4001(a), 4002(b), 4012(a); Dkt. No. 72 at 9, 20). In addition, Wells Fargo states that

8    Fannie Mae's servicing guideline sets the amount of hazard insurance required, showing that the

9    decision to set only a floor with respect to flood insurance allows loan servicers to require flood

10   insurance above the minimum. *Id.* at 7.

11   Third, Wells Fargo contends that Loan Servicers, not just Lenders, may set and change the

12   required insurance coverage. *Id.* at 9-11. Wells Fargo argues that because Fannie Mae and Freddie

13   Mac authored both the Fannie/Freddie Form and the GSE servicing guidelines, they would have

14   clearly stated any intent to retain for themselves the discretion to set the required types of hazard and

15   flood insurance on GSE-owned loans. *Id.* at 9. Wells Fargo notes that the initially promulgated

16   version of the Fannie/Freddie Form set an upper limit on the amount of coverage required. *Id.* In

17   addition, Wells Fargo argues that the term "Lender," as used in the Fannie/Freddie Form, generally

18   refers to the loan owner or to the loan servicer acting on the loan owner's behalf absent indication to

19   the contrary. *Id.* For example, Wells Fargo notes that the Fannie/Freddie Form states that the loan

20   servicer "collects Periodic Payments due under the Note and this Security Instrument" but also

21   provides that "all payments accepted and applied by Lender shall be applied in the following order"

22   and that "[i]f Lender receives a payment from Borrower for a delinquent Periodic Payment …" *Id.* at

23   9-10 (citing TAC, Exs. 9, 13, 17, §§ 2, 20). As these tasks are delegated to the loan servicer, Wells

24   Fargo concludes that the references to "Lender" must refer to the loan servicer acting on the Lender's

25   behalf. *Id.* at 10. Wells Fargo also notes that the portion of the Fannie/Freddie Form dealing with

26   escrow accounts references only "Lender" although the borrower pays escrow sums to the loan

27   servicer, which maintains the escrow accounts and pays insurance premiums and real property taxes

28   from those accounts. *Id.* (citing TAC, Exs. 9, 13, 17, § 3). Wells Fargo asserts that the term "Lender"

1  in section 5, dealing with flood insurance, similarly refers to both Lender and the loan servicer acting

2  on Lender's behalf.  *Id*.  Wells Fargo contends that loan servicers are required, by GSE servicing

3  guidelines and federal regulations, to ensure that flood insurance is at or above the minimum

4  requirements and must obtain flood insurance if the borrower does not do so.  *Id*. at 10-11 (citing

5  TAC ¶¶ 60, 63, 66; 12 C.F.R. §§ 22.3(a), 22.7).

6          Fourth, Wells Fargo contends that replacement cost value insurance is in Lender's interest, as

7  the Court determined in its October 30, 2012 Order.  *Id*. at 11-13 (citing Dkt. No. 72 at 27-28).

8          Fifth, Wells Fargo asserts that Plaintiffs' unjust enrichment claims fail because valid express

9  contracts govern the subject matter.  *Id*. at 13 (citing *Inglish v. Prudential Ins. Co.*, 928 S.W.2d 702,

10  706 (Tex. App. 1996); *Arena Resources, Inc. v. Obo, Inc.*, 148 N.M. 483, 488 (N.M. App. 2010)).

11          Sixth, Wells Fargo argues that Plaintiffs cannot establish a claim for tortious interference with

12  an existing business relationship because they cannot allege a breach of contract.  *Id*. at 14.

13          Seventh, Wells Fargo argues that there was no UPA violation because Wells Fargo acted

14  within their discretion when sending flood insurance notices stating that borrowers were required to

15  have replacement cost value flood insurance coverage.  *Id*. at 15.

16          **D.      Opposition**

17          Plaintiffs argue that the Court's October 30, 2012 Order did not preclude them from alleging

18  facts beyond their kickback theory.  Opposition to Defendants' Motion to Dismiss or Strike TAC's

19  Excessive Insurance Claims ("Opposition"), 7.  Plaintiffs assert that in Footnote 12 the Court allowed

20  them to amend their complaint to elucidate their position on the distinction between the Lender and

21  the Loan Servicer with respect to paragraph 5 of the Fannie/Freddie Form.  *Id*.  Plaintiffs contend that

22  this distinction was not addressed by the Court's prior Order.  *Id*. at 11.

23          Plaintiffs argue that they have pled a straightforward breach of contract claim against Wells

24  Fargo because it exceeded its role as Loan Servicer when it unilaterally changed Plaintiffs' flood

25  insurance requirements.  *Id*. at 7-19.  Plaintiffs emphasize that the Fannie/Freddie Form requires

26  insurance in the amounts and for the periods that Lender requires.  *Id*. at 8.  Plaintiffs contend that,

27  making all reasonable inferences in their favor, they have stated a plausible claim that force-placing

28  flood insurance was not required by the GSE lenders.  *Id*. at 8-10 (citing *Casey v. Citibank, N.A.*, __

F.Supp.2d __, 2013 WL 11901, at *5-*6 (N.D.N.Y. Jan. 2, 2013)).  Plaintiffs assert that they pled that their flood insurance met the minimum requirements promulgated by Freddie Mac.  *Id*. at 8.  Plaintiffs elaborate that they are not asserting third party beneficiary claims under the GSE servicing guidelines, but rely on those guidelines to demonstrate that the GSE's did not direct Wells Fargo to increase the flood insurance above the minimum requirements.  *Id*. at 10, 12-13.  Plaintiffs argue that Wells Fargo breached the contract when it increased the flood insurance requirements without authorization from the GSEs.  *Id*. at 13-16 (citing *Casey*, __ F.Supp.2d __, 2013 WL 11901 at *5-*6 (because "Lender" does not unambiguously mean "Loan Servicer" under the contract, the motion to dismiss must be denied)).

Plaintiffs assert that they have properly pled claims for unjust enrichment, interference with an existing business relationship, and violation of the UPA.  *Id*. at 19-21.  First, Plaintiffs state that they pled their claim for unjust enrichment in the alternative, in the event the Court determines that Wells Fargo as loan servicer was not a party to the contract it may still determine that Wells Fargo was unjustly enriched by force-placing insurance.  *Id*. at 19 (citing *City of Harker Heights, Tex. v. Sun Meadows Land, Ltd.*, 830 S.W.2d 313, 318 (Tex. App. 1992); *Starko, Inc. v. Presbyterian Health Plan, Inc.*, 276 P.3d 252, 278 (N.M. Ct. App. 2011)).

Second, Plaintiffs assert that they pled interference with an existing business relationship based on their mortgage contract with Freddie Mac.  *Id*. at 20 (citing *Ettenson v. Burke*, 130 N.M. 67, 73 (Ct. App. 2000); *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 856-857 (Tex. App. 2001)).  Plaintiffs contend that Wells Fargo intentionally placed excessive flood insurance with knowledge of the mortgage contract through their servicing responsibilities.  *Id*.  Plaintiffs argue that the force-placed insurance interfered with performance of the mortgage contracts, causing Plaintiffs substantial harm by requiring them to pay additional money under the threat of foreclosure.  *Id*.  Plaintiffs assert that they need not plead that the contract was breached, only that the rights or benefits under the contract are interfered with.  *Id*.

Third, Plaintiffs contend that they have established a cause of action under the UPA on the theory that Wells Fargo was not required to force place insurance as the loan servicer absent a directive from Lender.  *Id*. at 21.  Thus, Plaintiffs argue that Wells Fargo made a misleading statement

United States District Court
Northern District of California

1    when it stated that it was required to force place insurance.  *Id*.  In addition, Plaintiffs assert that Wells

2    Fargo engaged in unconscionable trade practices in violation of the UPA when it force placed

3    insurance policies in an amount greater than required by Lender.  *Id*. (citing N.M.S.A. 1978, § 57-12-

4    10).

5         **E.**    **Reply**

6         Wells Fargo asserts that the loan servicer may set the required insurance coverage under the

7    terms of the Fannie/Freddie Form.  Reply in Support of Motion to Strike or Dismiss Excessive

8    Insurance Claims ("Reply"), 3-6.  Wells Fargo states that nothing in the Fannie/Freddie Form

9    prohibits the loan servicer from carrying out Lender's functions and exercising Lender's authority at

10   Lender's request or under its delegation.  *Id*. at 3.  Noting that several of the Fannie/Freddie Form's

11   operative sections refer only to Lender and never to Loan Servicer, Wells Fargo argues that Plaintiffs'

12   interpretation of the form would prevent loan servicers from exercising any authority.  *Id*. at 3-4.

13   Wells Fargo states that the GSEs are passive investors that require loan servicers to handle all of

14   Lender's functions.  *Id*. at 4.  Therefore, Wells Fargo argues that Plaintiffs' interpretation of the form

15   would throw the home loan industry into chaos.  *Id*.

16        Wells Fargo contends that the GSEs have not set the amount of required flood insurance, and

17   thus have not withdrawn or failed to delegate the authority to loan servicers to do so.  *Id*. at 5.  Wells

18   Fargo asserts that the GSE servicing guidelines are not binding, but only provide general guidance to

19   loan servicers regarding how they should exercise their discretion.  *Id*. at 5-6.  Moreover, Wells Fargo

20   argues that the GSE servicing guidelines cannot be read to set anything other than a floor.  *Id*. at 6-7.

21        Based on the foregoing, Wells Fargo argues that it cannot have breached the mortgage contract

22   by exercising Lender's delegated authority under the contract.  *Id*. at 7.  Even if it exceeded its

23   delegated authority, Wells Fargo argues that such an action would not amount to a breach of the

24   contract because there are no contractual provisions in which the loan servicer promises to do or

25   refrain from doing anything.  *Id*. at 7-9.

26        Wells Fargo asserts that Plaintiffs' cannot state a claim for unjust enrichment because they

27   consented to maintain replacement cost value flood insurance if so required by signing their

28   Fannie/Freddie Form mortgages.  *Id*. at 9.

1    Wells Fargo argues that Plaintiffs' cannot establish a cause of action for inducing a breach of

2    contract for two reasons.  *Id*. at 9-11.  First, Wells Fargo argues that Wells Fargo did nothing more

3    than induce Freddie Mac, the Lender, to take an action it had a right to do under the contract.  *Id*. at

4    10.  Second, Wells Fargo argues that its actions as Freddie Mac's agent or delegee are privileged.  *Id*.

5    at 10-11 (citing *Latch v. Gratty, Inc.*, 107 S.W.3d 543, 545 (Tex. 2003); *Ettenson*, 130 N.M. at 76).

6    Wells Fargo contends that Plaintiffs cannot state a claim under the UPA.  *Id*. at 11-12.  First,

7    Wells Fargo argue that its use of the word "required" was not material because it notified that it

8    would, as it did, force-place insurance if Plaintiffs failed to acquire it.  *Id*.  Second, Wells Fargo

9    argues that force-placing insurance is not actionable as an unconscionable trade practice because it

10   does not fall within the scope of the practices covered by the UPA and because it is not

11   unconscionable under the terms of the UPA.  *Id*. at 12 (citing N.M.S.A. § 57-12-2(E)).

12   **III.    ANALYSIS**

13   **A.    Legal Standard**

14   **1.    Appropriate Lens**

15   Wells Fargo moves the Court to strike from the TAC its excessive insurance claims and

16   supporting allegations pursuant to Rule 12(f).  Motion, 4.  In the alternative, Wells Fargo moves the

17   Court to dismiss the TAC's excessive insurance claims and allegations under Rule 12(b).  *Id*.  The

18   Court will treat the Motion as a motion to dismiss under Rule 12(b)(6).

19   Wells Fargo states that the Ninth Circuit's opinion in *Whittlestone* created uncertainty as to

20   which motion is the appropriate vehicle for seeking relief.  *Id*.  In *Whittlestone*, the Ninth Circuit

21   reviewed a district court decision striking a plaintiff's claim for lost profits and consequential

22   damages from plaintiff's complaint pursuant to Rule 12(f).  *Whittlestone*, 618 F.3d at 973.  The Ninth

23   Circuit concluded that the claim for lost profits and consequential damages was not properly the

24   subject of a motion to strike because the claim was not (1) an insufficient defense; (2) redundant; (3)

25   immaterial; (4) impertinent; or (5) scandalous.  *Id*. at 973-974.  The court went on to reject the

26   defendant's argument that the claim should be stricken from the complaint as precluded as a matter of

27   law.  *Id*. at 974.  The Ninth Circuit explained that an attempt to dismiss a portion of the plaintiff's

28   complaint was better suited to a 12(b)(6) motion.  *Id*.  If Rule 12(f) were allowed to be used to dismiss

1    some or all of a pleading, it would create redundancies with Rule 12(b)(6).  *Id.*  Therefore, the Ninth

2    Circuit held that Rule 12(f) does not authorize district courts to strike claims for damages on the

3    ground that such claims are precluded as a matter of law.  *Id.* at 974-975.

4         In the present case, Wells Fargo seeks dismissal of Plaintiffs' claims to the extent they are

5    predicated on an excessive insurance theory because those claims are barred as a matter of law.  Wells

6    Fargo's argument is based on the theory that the Court did not grant Plaintiffs leave to amend those

7    claims or that those claims are insufficient as a matter of law.  In light of *Whittlestone*, the Court will

8    treat the Motion as a motion to dismiss to the extent that it seeks dismissal of Plaintiffs' claims.  *See*

9    *Consumer Solutions REO, LLC v. Hillery*, 658 F.Supp.2d 1002, 1021 (N.D. Cal. 2009) (treating a

10   Rule 12(f) motion arguing that the Complaint contained insufficient allegations to justify an award for

11   punitive damages as a Rule 12(b)(6) motion).

### 2.    Rule 12(b)(6)

13        A complaint may be dismissed for failure to state a claim for which relief can be granted

14   under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(6).  "The purpose

15   of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint."  *N. Star*

16   *Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a plaintiff's burden at the

17   pleading stage is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that "[a]

18   pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the

19   claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

20        In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes

21   "all allegations of material fact as true and construe(s) them in the light most favorable to the non-

22   moving party."  *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal may

23   be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid

24   theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint must

25   "contain either direct or inferential allegations respecting all the material elements necessary to

26   sustain recovery under some viable legal theory."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562

27   (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  "A

28   pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

United States District Court
Northern District of California

14

1    action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at

2    555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

3    enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

4        The factual allegations must be definite enough to "raise a right to relief above the

5    speculative level." *Twombly*, 550 U.S. at 555. However, a complaint does not need detailed factual

6    allegations to survive dismissal. *Id.* Rather, a complaint need only include enough facts to state a

7    claim that is "plausible on its face." *Id.* at 570. That is, the pleadings must contain factual

8    allegations "plausibly suggesting (not merely consistent with)" a right to relief. *Id.* at 545 (noting

9    that this requirement is consistent with Fed. R. Civ. P. 8(a)(2), which requires that the pleadings

10    demonstrate that "the pleader is entitled to relief").

11              **B.**      **Effect of the October 30, 2012 Order**

12        In its Order, this Court found that the only reasonable reading of the Fannie/Freddie Form was

13    to give Lender the authority to increase the required flood insurance above the minimum floor set out

14    in the NSFH. On that basis, the Court dismissed Plaintiffs' breach of contract claim against Wells

15    Fargo predicated on Wells Fargo requiring flood insurance above the floor required by the NSFH.

16        In discussing Plaintiffs' claim for breach of contract on the kickback theory, the Court granted

17    Plaintiffs leave to amend their complaint to clarify their position regarding whether Wells Fargo was

18    acting as Lender or Lender's agent when it allegedly force-placed insurance on Plaintiffs' property.

19    The Court also dismissed Plaintiffs claims for unjust enrichment, conversion, and violation of the

20    UPA with leave to amend to allege facts pertaining to the kickback theory. In its conclusion, the

21    Court afforded Plaintiffs "one chance to amend their complaint to allege facts concerning Defendants'

22    kickback scheme."

23        The challenged factual allegations in the TAC clarify Plaintiffs' position regarding whether

24    Wells Fargo was acting as a Lender or Lender's agent. Plaintiffs allege that Wells Fargo was acting

25    as the Loan Servicer, as defined in the contract. Plaintiffs allege that Wells Fargo was either a party

26    to the contract or, in the alternative, that it was not a party as the Loan Servicer and it exceeded the

27    Loan Servicer's authority as expressed in the contract and any authority delegated to the Loan

28    Servicer by the GSE servicing guidelines or otherwise.

1    Based on these factual allegations, Plaintiffs renew their argument that Wells Fargo breached

2    their mortgage contract by force-placing flood insurance in an amount above the unpaid principal

3    balance or, in the alternative, that Wells Fargo is not a party to the contract but is liable for unjust

4    enrichment, conversion, and violation of the UPA.  Plaintiffs also plead a new cause of action – that

5    Wells Fargo tortuously interfered with a business relation, based on the same factual allegations.  The

6    amended and new allegations, based on the excessive insurance theory, are clearly beyond the limited

7    scope of the leave to amend.  Leave to amend was granted on the kickback theory alone.  Plaintiffs

8    were permitted leave to amend their factual allegations to support that theory.  The excessive

9    insurance theory was dismissed with prejudice.  For that reason, the Motion to Dismiss the TAC is

10   granted.  Even so, the Court will examine the causes of action alleged in the TAC on the basis of the

11   excessive insurance theory.  The Court determines, for the reasons set forth below, that Plaintiffs

12   cannot state a claim for relief on the excessive insurance theory even considering the amended factual

13   allegations.

14   **C.      Breach of Contract**

15   The elements of a breach of contract claim under Texas law are: (1) the existence of a valid

16   contract; (2) plaintiff's performance of duties under the contract; (3) defendant's breach of the

17   contract; and (4) damages to the plaintiff resulting from the breach.  *Lewis v. Bank of Am. NA*, 343

18   F.3d 540, 544–45 (5th Cir. 2003) (citing *Palmer v. Espey Huston & Assocs.*, 84 S.W.3d 345, 353

19   (Tex. App. 2002)).  Under New Mexico law, a plaintiff must allege "the existence of a contract,

20   breach of the contract, causation, and damages."  *Abreu v. N.M. Children, Youth & Families Dep't*,

21   797 F.Supp.2d 1199, 1247 (D. N.M. 2011).  At issue here is whether Wells Fargo breached the

22   mortgage contracts on the properties owned by the Biddixes and by Kibiloski and Ryan by force-

23   placing flood insurance on those properties that provided coverage in an amount exceeding the unpaid

24   principal balance under the mortgage loan.[4]  The Court concludes, as a matter of law, that Wells Fargo

25   did not breach the mortgage contracts on that theory.

26   In its previous Order, the Court determined that "Lender," under the terms of their security

27   instruments, has authority to force-place flood insurance in an amount exceeding the unpaid principal

---

28   [4] Whether Wells Fargo breached the contract by participating in an arrangement whereby it received kickbacks and other benefits for force-placing insurance policies on Plaintiffs' property is not at issue in this Motion.

balance under the mortgage loan. The issue raised by Plaintiffs is whether Wells Fargo, as the "Loan Servicer," has that authority under the contract. As a matter of law, the Court concludes that Wells Fargo was exercising the Lender's delegated authority. Plaintiffs claim, on the excessive insurance theory, is once again dismissed with prejudice because Plaintiffs cannot plead that Wells Fargo acted beyond the scope of Lender's authority.

Plaintiffs allege in the TAC that Wells Fargo serviced the Biddixes and the Kibiloski/Ryan mortgage loans, which were owned by Freddie Mac. TAC, ¶¶ 23-24. The TAC contains a section entitled "Flood Insurance Required by GSEs to be Enforced by Loan Servicers." *Id*. at 19. In that section, Plaintiffs allege that Freddie Mac promulgates "mandatory written servicing guidelines that specifically delineate the Loan Servicers' rights and responsibilities." *Id*. at ¶ 56. Plaintiffs further allege that Freddie Mac requires that the Borrower's flood insurance coverage "must at least equal the lowest of the following: [(1)] [t]he unpaid principal balance of the mortgage[;] [(2)] [t]he maximum amount of coverage currently sold under the [NFIP; or] [(3)] [t]he replacement cost of the insurable improvements." *Id*. at ¶ 58 (quoting TAC, Ex. 2). In addition, Plaintiffs allege that "[i]f the Borrower does not or cannot obtain [any of the insurance coverages required of Borrower], the [Loan] Servicer must do so." *Id*. at ¶ 60 (quoting Freddie Mac Servicer Guide, Vol. 2, Chapter 58.9). Finally, Plaintiffs allege that "WFBNA is a party to Plaintiffs' loan contracts because it is hired by the Lender as the Loan Servicer to perform specific duties and responsibilities set forth in the contracts." *Id*. at ¶ 161.

The allegations in the TAC demonstrate that Lender hires the Loan Servicer as an agent to, among other things, maintain flood insurance on the subject property. The GSE servicing guidelines have been described as "a set of instructions from a lender-principal to a servicer-agent." *See Hinton v. Federal Nat'l Mortg. Ass'n*, 945 F.Supp. 1052, 1057 (S.D. Tex. 1996) (interpreting the Fannie Mae guide). Plaintiffs argue that the GSE servicing guidelines demonstrate that Wells Fargo was not delegated the authority to perform the specific transactions at issue in this case. The only coherent construction of that argument is that Wells Fargo exceeded its authority as set forth in the GSE servicing guidelines.[5] That argument must be rejected for two reasons. First, the Freddie Mac

---

[5] As discussed below, the argument that Wells Fargo exceeded its authority as set forth in the security instrument is incoherent.

United States District Court
Northern District of California

1   servicing guidelines, the only guidelines relevant to the Biddixes and Kibiloski/Ryan, clearly set out

2   only minimum requirements that the Loan Servicer "must" ensure are satisfied.  There is no limitation

3   on the Loan Servicer's discretion to maintain one of the other enumerated alternative coverage levels

4   where that minimum is met.  Second, the federal courts have uniformly concluded, to the extent that

5   the GSE servicing guidelines can be read as creating enforceable contractual duties, that borrowers are

6   neither parties nor third-party beneficiaries entitled to enforce the GSE servicing guidelines.  *See*

7   *Kariguddaiah v. Wells Fargo Bank, N.A.*, 2010 WL 2650492, at *4 n.4 (N.D. Cal. July 1, 2010);

8   *Wells Fargo Bank, N.A. v. Sinnott*, 2009 WL 3157380, at *11-*12 (D. Vt. Sept. 25, 2009) (collecting

9   cases); *Pennell*, 2012 WL 2873882 at *8 (collecting cases); *see also Hinton*, 945 F.Supp. at 1057

10  (servicing guidelines do not create a contract).

11      Whether or not Wells Fargo was a party to the contract, two things are true as a matter of law:

12  (1) as servicer, they were authorized to require flood insurance above the minimum; and (2) doing so

13  exceeded neither Wells Fargo's authority nor the authority of the lenders.

14      Plaintiffs rely on *Casey* as persuasive authority supporting their argument that Wells Fargo

15  breached the contract contained in the security instrument by exercising authority reserved to Lender.

16  In that case, Duane Skinner owned a property subject to a mortgage that was owned by Fannie Mae

17  and serviced by CitiMortgage.  *Casey*, __ F.Supp.2d __, 2013 WL 11901 at *5.  The security

18  instrument in that case was substantially the same as the security instrument in this case.  *Id*. at *2, *5.

19  The court found that it was reasonable to infer from the contract language that Fannie Mae, not

20  CitiMortgage, was the only "Lender" with discretion to set and change the amount of flood insurance.

21  *Id*. at *6.  Therefore, the court in *Casey* held that Skinner stated a plausible claim that the

22  CitiMortgage breached the contract by force-placing insurance that was not required by Fannie Mae.

23  *Id*.  The court in *Casey* did not consider whether CitiMortgage, as loan servicer, exercised Fannie

24  Mae's authority as a Lender under the contract.  Instead, the court in *Casey* rejected the argument that

25  the GSE servicing guidelines made CitiMortgage a "Lender" under the contract because Skinner was

26  unaware of those guidelines.  *Id*. at *5.  Therefore, the decision in *Casey* does not effect this Court's

27  conclusion that Wells Fargo was acting within the scope of the Lender's delegated authority.

28  //

**D.     Unjust Enrichment**

     **1.     Background Law**

Under Texas law, unjust enrichment is not itself an independent cause of action but rather "characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances that give rise to an implied or quasi-contractual obligation to repay." *Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex. App. 2006).  Thus, a party may recover based on a theory of unjust enrichment "when one person has obtained a benefit of another by fraud, duress, or the taking of an undue advantage."  *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).  The unjust enrichment doctrine applies principles of restitution to disputes where there is no actual contract.  *In re Guardianship of Fortenberry*, 261 S.W.3d 904, 915 (Tex. App. 2008).  Texas courts have also described unjust enrichment is an element of an action for restitution.  *Barnett v. Coppell No. Tex. Court, Ltd.*, 123 S.W.3d 804, 816 (Tex. App. 2003).  To recover on a cause of action for restitution, a party "must show not only that the party from whom he is seeking restitution was unjustly enriched, but also that that party had wrongfully secured a benefit or had passively received one which it would be unconscionable for him to retain."  *Oxford Finance Cos., Inc. v. Velez*, 807 S.W.2d 460, 465 (Tex. App. 1991) (quotations omitted).[6]

New Mexico law recognizes actions for unjust enrichment.  *Ontiveros Insulation Co., Inc. v. Sanchez*, 129 N.M. 200, 203 (Ct. App. 2000).  To prevail on such a claim, "one must show that:  (1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain a benefit would be unjust."  *Id.*  "The theory has evolved largely to provide relief where, in the absence of privity, a party cannot claim relief in contract and instead must seek refuge in equity."  *Id.*

---

[6] In addition, under Texas law quantum meruit is an equitable theory of recovery founded in the principle of unjust enrichment based on an implied agreement to pay for benefits received.  *Barnett*, 123 S.W.3d at 817 (citing *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990)).  "To recover under the doctrine of quantum meruit, a party must establish:  (i) valuable services and/or materials were furnished, (ii) to the party sought to be charged, (iii) which were accepted by the party sought to be charged, and (iv) under such circumstances as reasonably notified recipient as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient."  *Id.* (citing *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)).  Plaintiffs do not plead a theory under quantum meruit.  That is, they do not plead that they provided services or materials under circumstances demonstrating that they would expect compensation, but that Wells Fargo wrongfully demanded payments from them that inured to Wells Fargo's benefit.

United States District Court
Northern District of California

1    In California, a claim for unjust enrichment is understood as one for restitution.  *Nordberg v.*

2    *Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1100 (N.D. Cal. 2006).  To state a claim for restitution, a

3    plaintiff "must plead 'receipt of a benefit and the unjust retention of the benefit at the expense of

4    another.'"  *Walters v. Fid. Mortg. of Cal.*, 2010 WL 1493131, at *12 (E.D. Cal. Apr. 14, 2010)

5    (quoting *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000)).

6    ## 2.    Application to Facts

7    The narrow question raised by this Motion is whether Plaintiffs stated a cause of action against

8    Defendants for unjust enrichment based solely on the force-placement of flood insurance providing

9    coverage greater than the unpaid principal balance on Plaintiffs' mortgage loans.[7]  The Court

10   concludes that, apart from kickback allegations pertaining to the commissions and benefits Wells

11   Fargo obtained by force-placing insurance, Plaintiffs have failed to allege facts showing that Wells

12   Fargo was enriched in any other way.[8]  Moreover, there is no indication that Insurance Defendants

13   engaged in any wrongful conduct aside from allegedly offering insurance with premiums inflated by

14   kickbacks.  Indeed, as discussed above, Wells Fargo, Lender's agent, acted within the bounds of

15   Lender's authority insofar as the excessive insurance theory is concerned.  To the very limited extent

16   that the TAC can be read to assert an independent cause of action for unjust enrichment based solely

17   on the force-placement of flood insurance with coverage greater than the unpaid principal balance, the

18   Motion to Dismiss is granted with prejudice.[9]

19   ## E.    Conversion

20   To the extent that Plaintiffs' cause of action for conversion is supported by the theory that

21   Wells Fargo required insurance in excess of Plaintiffs' outstanding principal loan balance it falls

22   within the scope of the present Motion.  Neither party provides any argument as to the viability of this

23   portion of the conversion claim.  For the reasons discussed below, the Motion is granted as to the

24   conversion claim on this theory.

25   //

---

[7] Defendants attack only one of Plaintiffs unjust enrichment causes of action, that raised by the GSE Plaintiffs in the third cause of action in the TAC.

[8] Plaintiffs allege that a loan servicer may collect late fees, attorney fees, and foreclosure fees if the borrower falls behind in payments as a result of the increased premiums.  Plaintiffs do not allege that any of that occurred in this instance.

[9] The Court does not reach Wells Fargo's argument that the presence of a contract bars Plaintiffs from recovery on this theory.

### 1.     Background Law

Texas and New Mexico law appear uniform with respect to the elements of conversion. *Edlund v. Bounds*, 842 S.W.2d 719, 727 (Tex. App. 1992) ("Conversion is the wrongful exercise of dominion and control over another's property in denial of or inconsistent with the property owner's rights."); *Sec. Pac. Fin. Servs., Inc. v. Signfilled Corp.*, 125 N.M. 38, 44 (Ct. App. 1998) ("Conversion is the unlawful exercise of dominion and control over property belonging to another in defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made.").  In their argument to the Court preceding its prior Order, Plaintiffs also suggested that California applies.  Under California law, a claim for conversion has three elements:  (1) ownership or right to possession of property; (2) wrongful disposition of the property right of another; and (3) damages.  *See G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992).

### 2.     Application to Facts

The broad question presented by the Motion is whether Plaintiffs sufficiently pled that WFBNA, acting as Loan Servicer, converted Plaintiffs' funds, in the form of monthly mortgage payments or funds held in escrow accounts, by using them to pay premiums on flood insurance policies, force-placed by Wells Fargo, that provided coverage in excess of the outstanding principal balance on Plaintiffs' mortgages.  The narrower question, and the only issue that was briefed prior to the Court's previous Order, is whether WFBNA was authorized to remove funds from Plaintiffs' escrow accounts to pay the premiums on the force-placed policies.

Plaintiffs have alleged that the security instrument cannot be read as granting WFBNA, the Loan Servicer, authority to force-place insurance.  The contract provisions governing escrow and the placement of insurance refer only to Lender and Borrower.  *See* TAC, Exs. 13 at 2 and 6-7, 17 at 5-6 and 13.  As explained above, the allegations in the TAC demonstrate that Wells Fargo, acting as Loan Servicer, was Lender's agent.  As held in the previous Order, Wells Fargo did not act beyond the scope of Lender's authority under the security instrument with regard to the allegations raised in the excessive insurance theory.  Plaintiffs rely on the GSE servicing guidelines to demonstrate that Wells Fargo was not delegated authority to force-place flood insurance above the minimum coverage levels

1  set forth therein.  However, those guidelines clearly set a minimum level of flood insurance, but do

2  not set a maximum, and do not limit Wells Fargo's discretion to set a higher level of coverage in

3  servicing the loan.  Moreover, as discussed above, Plaintiffs lack standing to enforce the servicing

4  guidelines because they are neither party nor third-party beneficiary thereto.  Therefore, the Motion to

5  Dismiss must be granted.

### F.    Tortious Interference with Business Relations

#### 1.    Background Law

8      Plaintiffs clarify in their Opposition that they are relying on a theory of tortious interference

9  with a contract.  Under New Mexico law, to prove intentional interference with a contract, a plaintiff

10  must establish that defendant, "without justification or privilege to do so, induces a third person not to

11  perform a contract with another."  *Deflon v. Sawyers*, 139 N.M. 637, 643 (2006).  That is, a plaintiff

12  must prove (1) that the defendant had knowledge of the contract; (2) that performance of the contract

13  was refused; (3) that the defendant played an active and substantial part in causing the plaintiff to lose

14  the benefits of the contract; (4) that damages flowed from the breached contract; and (5) that the

15  defendant induced the breach without justification or privilege to do so.  *Ettenson*, 130 N.M. at 73.

16  "Not every interference leading to a breach of contract amounts to an unlawful act or a civil action;

17  tort liability attaches only when the interference is without justification or privilege."  *Id.* (internal

18  quotation marks and citation omitted).  The plaintiff must show that the defendant acted with either

19  "an improper motive or by use of improper means."  *Id.*

20      Under Texas law, "[t]he elements of tortious interference with a contract are:  (1) the existence

21  of a contract subject to interference; (2) the occurrence of an act of interference that was willful and

22  intentional; (3) the act was a proximate cause of the claimant's damage; and (4) actual damage or loss

23  occurred."  *Baty*, 63 S.W.3d at 856-857.  "[I]nducing a contract obligor to do what it has a right to do

24  is not actionable interference."  *Id.* (citing *ACS Invs., Inc. v. McLaughlin*, 943 S.W.2d 426, 431 (Tex.

25  1997) ("the severance here cannot be a breach of contract, and ACS cannot be held liable for inducing

26  First Texas to do what it had a right to do under the McLaughlin Agreement")).

27  //

28  //

United States District Court
Northern District of California

22

### 2.    Application to Facts

Plaintiffs' claim for tortious interference with a business relation fails, under both New Mexico and Texas law, because, on the theory addressed in this Motion, they have not alleged that Lender, Freddie Mac, engaged in any conduct beyond the scope of its contractual rights.  As discussed in the previous Order, Lender had authority to force place flood insurance in an amount greater than the unpaid principal balance on the mortgage loan.  Plaintiffs have alleged, at most, that Wells Fargo induced Lender to exercise its rights under the contract.  Plaintiffs have amended their complaint three times, and it is clear that they cannot allege Lender breached the contract.  Plaintiffs' cause of action for tortious interference with a business relation, on this theory, is dismissed with prejudice.

### G.    UPA

### 1.    Background Law

New Mexico's UPA provides individual and class action remedies for unfair, deceptive, or unconscionable trade practices.  *See Truong v. Allstate Ins. Co.*, 147 N.M. 583, 590 (2010).  "Generally speaking, the [UPA] is designed to provide a remedy against misleading identification and false or deceptive advertising."  *Lohman v. Daimley-Chrysler Corp.*, 142 N.M. 437, 442 (Ct. App. 2007).  To state a claim under the UPA for an unfair or deceptive trade practice, a complaint must allege:

> (1) the defendants made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services in the regular course of defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person.

*Id.* at 439; *see also* N.M.S.A. 1978, § 57-12-2(D).

The UPA also forbids "unconscionable trade practices," which it defines as "an act or practice in connection with the sale, lease, rental or loan, of any goods or services … that to a person's detriment:  (1) takes advantage of a lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid."  N.M.S.A. 1978, § 57-12-2(E).

//

23

**2.      Application of Law to Facts**

At issue is whether letters sent by Wells Fargo to Kibiloski and Ryan representing that it was required to place additional insurance on their property was false or misleading, was made in connection with the sale of goods or services in the regular course of defendant's business, and was of the type that may, tends to, or does mislead any person.[10]  In its previous Order, the Court dismissed identical allegations because Wells Fargo had the discretion, under the security instrument, to require such additional insurance as the Lender.  Plaintiffs argue that the use of the word "required" is misleading under the new factual allegations because Wells Fargo was not required to force-place insurance in the absence of a directive from Lender.  However, the conclusion that Wells Fargo "may have required [Replacement Cost Value] insurance" applies equally now as it did in the previous Order.  *See* Dkt. No. 72, 35.  As discussed above, the allegations in the TAC demonstrate that Wells Fargo was servicing the loan as Lender's agent.  Therefore, for the same reasons set forth in the previous Order, the UPA claim on the excessive insurance theory is dismissed with prejudice.

**H.      Motion to Strike**

To the extent Wells Fargo brings a Motion to Strike, it is denied as moot in light of the Court's ruling on the Motion to Dismiss.

**IV.     CONCLUSION**

For the foregoing reasons, the Motion to Dismiss the TAC's excessive insurance claims is granted and the relevant claims are dismissed with prejudice.

IT IS SO ORDERED.

Dated: March 14, 2013

_____
JOSEPH C. SPERO
United States Magistrate Judge

United States District Court
Northern District of California

---

[10] To the extent that Plaintiffs allege unconscionable practices, those are on the basis of the kickback theory and are beyond the scope of the present Motion.  In addition, the allegations of misleading statements premised on the kickback theory are beyond the scope of this Motion.