Richard K. Kellner, SBN 171416
(rlk@kbklawyers.com)
Evan Zucker, SBN 266072
(ez@kbklawyers.com)
KABATECK BROWN KELLNER LLP
644 South Figueroa Street
Los Angeles, California 90017
Telephone: (213) 217-5000
Facsimile: (213) 217-5010

Kai Richter, MN State Bar No. 296545*
(krichter@nka.com)
*Admitted pro hac vice
NICHOLS KASTER, PLLP
4600 IDS Center
80 South 8th Street
Minneapolis, MN  55402
Telephone: (612) 256-3200
Facsimile: (612) 215-6870

Shanon J. Carson, PA Bar No. 85957*
(scarson@bm.net)
*Admitted pro hac vice
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-4656
Facsimile: (215) 875-4604

*Attorneys for Plaintiffs*

[Additional counsel appear on signature page.]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFFORD MCKENZIE, *et al.,* on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>     vs.<br><br>WELLS FARGO BANK, N.A., *et al.,*<br><br>                    Defendants. | Case No. 3:11-CV-04965-JCS<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF  MOTION FOR CLASS CERTIFICATION**<br><br>Date:          September 13, 2013<br>Time:          9:30am PST<br>Crtrm:        G, 15th Floor<br>Judge:        Hon. Joseph C. Spero |

1

## TABLE OF CONTENTS

2   INTRODUCTION ................................................................................................. 1

3   ARGUMENT ...................................................................................................... 3

4   I.    STATE LAW DIFFERENCES DO NOT PRECLUDE CERTIFICATION OF A NATIONAL CLASS ...... 3

5         A.    The Federal Mortgage Forms At Issue Contain Uniform Covenants That Are

6               Meant to Be Uniformly Interpreted Nationwide Under Federal Law.................... 4

7         B.    To The Extent That State Law Applies, Any Differences In State Law Are Not

8               Significant And Can Be Managed Through A Special Jury Verdict Form............. 4

9               1.    Breach of Contract ...................................................................... 5

10              2.    Implied Covenant of Good Faith and Fair Dealing................................... 7

11              3.    Unjust Enrichment ...................................................................... 8

12              4.    Conversion ................................................................................. 9

13  II.   WELLS FARGO'S PURPORTED AFFIRMATIVE DEFENSES DO NOT RENDER CLASS

14        CERTIFICATION INAPPROPRIATE........................................................................ 10

15  III.  PROOF OF DAMAGES IS NOT AN OBSTACLE TO CLASS CERTIFICATION ........................... 13

16  IV.   THE NAMED PLAINTIFFS ARE TYPICAL OF OTHER CLASS MEMBERS AND ADEQUATE ...... 14

17  V.    THE TEXAS CLASS ALSO SHOULD BE CERTIFIED................................................. 15

18  CONCLUSION.................................................................................................. 15

19

20

21

22

23

24

25

26

27

28

1

<b><u>TABLE OF AUTHORITIES</u></b>

2

**<u>Cases</u>**

3   *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273 (S.D. Fla. 2009) ......................... 13

4   *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426 (Tex. 1997)................................................ 15

5   *AICCO, Inc. v. Tradestar Const. Servs., Inc.*, 2009 WL 3836827 (S.D. Tex. Nov. 11, 2009)....... 7

6   *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691 (D.N.J. 2011) ..................................... 8

7   *Avilez v. Pinkerton Gov't Servs.*, 286 F.R.D. 450 (C.D. Cal. 2012) ............................................ 10

8   *Barkwell v. Sprint Commc'ns Co. L.P.*, 2010 WL 5069912 (M.D. Ga. Dec. 6, 2010).................. 7

9   *Bear, Stearns Funding, Inc. v. Interface Grp. Nev., Inc.*, 361 F. Supp. 2d 283 (S.D.N.Y. 2005) .. 6

10  *Berrien v. New Raintree Resorts, Int'l, LLC*, 276 F.R.D. 355 (N.D. Cal. 2011) .......................... 11

11  *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975)........................................................................ 13

12  *Cameron v. E. M. Adams & Co.*, 547 F.2d 473 (9th Cir. 1976) .................................................. 12

13  *Cannon v. Wells Fargo Bank, N.A.*, 917 F. Supp. 2d 1025 (N.D. Cal. 2013).............................. 11

14  *Carrier v. Am. Bankers Life Assur. Co. of Fla*, 2008 WL 312657 (D.N.H.) Feb. 1, 2008)............ 7

15  *Castillo v. Hernandez*, 2011 WL 2489910 (W.D. Tex. June 17, 2011)....................................... 10

16  *Chartis Specialty Ins. Co. v. Tesoro Corp.*, 2013 WL 944254 (W.D. Tex. Mar. 11, 2013) ........... 7

17  *In re Checking Account Overdraft Litig.*, 281 F.R.D. 667 (S.D. Fla. 2012).................................. 7

18  *Christiana Mortg. Corp. v. Del. Mortg. Bankers Ass'n*, 136 F.R.D. 372 (D. Del. 1991)............. 15

19  *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013) ..................................................................... 13

20  *Consol. Companies, Inc. v. Lexington Ins. Co.*, 616 F.3d 422 (5th Cir. 2010)............................. 7

21  *In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521 (N.D. Cal.2010)

22  .................................................................................................................. 1, 4, 5, 6, 12

23  *Cowit v. CitiMortgage, Inc.*, 2013 WL 940466 (S.D. Ohio Mar. 8, 2013).................................... 5

24  *Cozadd v. Healy*, 338 Mich. 157 (1953) ...................................................................................... 9

25  *Cummins v. Bickel & Brewer*, 2001 WL 930788 (N.D. Ill. Aug. 16, 2001).................................. 8

26  *Dawson v. U.S.*, 203 F.2d 201 (5th Cir. 1953) ........................................................................... 10

27  *In re Deasy*, 275 B.R. 490 (Bankr. N.D. Tex. 2002) ................................................................... 10

28  *Donabedian v. Mercury Ins. Co.*, 116 Cal. App. 4th 968 (2004)................................................ 12

ii

*Dopp v. Pritzker*, 38 F.3d 1239 (1st Cir. 1994)......................................................... 6

*Easterling v. Connecticut Dep't of Correction*, 278 F.R.D. 41 (D. Conn. 2011) ......................... 11

*Edgington v. R.G. Dickinson & Co.*, 139 F.R.D. 183 (D. Kan. 1991) .......................................... 15

*Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063 (N.D. Cal. 2012)................................... 11, 12

*Empire Indem. Ins. Co. v. N/S Corp.*, 2012 WL 7761421 (E.D. Tex. Dec. 5, 2012).................... 7

*Enfield v. Old Life Line Ins. Co. of Am.*, 136 N.M. 398 (2004) ...................................... 5

*F. Garofalo Elec. Co., Inc. v. New York Univ.*, 754 N.Y.S.2d 227 (2002).................................. 6

*FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300 (7th Cir. 1990) .......................................... 9

*Forcellati v. Hyland's, Inc.* 876 F. Supp. 2d 1155 (C.D. Cal. 2012)................................... 8

*Gillis v. Benefit Trust Life Ins. Co.*, 601 So. 2d 951 (Ala. 1992)................................... 9

*Hanlon v. Crysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)................................................ 5

*Hanover Exch. v. Metro Equity Grp. LLC*, 2009 WL 2143866 (E.D. Mich. July 14, 2009).......... 9

*Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666 (N.D. Cal. 2011).......................................... 12

*Holmes v. Bank of America, N.A.*, 2013 WL 1693709, (W.D.N.C. Apr. 16, 2013) ...................... 9

*James D. Hinson Elec. Contracting Co., Inc. v. Bell South Tel.,* 275 F.R.D. 638 (M.D. Fla. 2011) ................................................................................................... 11

*Keilholtz v Lennox Hearth Product Inc.*, 268 F.R.D. 330 (N.D. Cal. 2010)................................. 8

*Kelly v. City & County of San Francisco*, 2005 WL 3113065 (N.D. Cal. Nov. 21, 2005)........... 10

*Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581 (W.D. Tex. 2002) ............................................. 14-15

*Lane v. Wells Fargo Bank, N.A.*, 2013 WL 3187410 (N.D. Cal. June 21, 2013) ................. *passim*

*Lang v. Harwood*, 145 S.W.2d 945 (Tex. Civ. App. 1940) ......................................... 10

*Lattimore Materials Co., L.P. v. Sedgwick Claims Mgmt. Servs., Inc.*, 2009 WL 1351099 (E.D. Tex. May 12, 2009).......................................................................... 7

*Lee v. ITT Corp.*, 275 F.R.D. 318 (W.D. Wash. 2011) ............................................... 12

*Leghorn v. Wells Fargo Bank, N.A.*, 2013 WL 3064548 (N.D. Cal. June 19, 2013)............... 7, 12

*Leyva v. Medline Indus., Inc.*, 716 F.3d 510 (9th Cir. 2013) ...................................... 3, 13

*Liberty Life Ins. Co. v. Myers*, 2013 WL 530317 (D. Ariz. Feb. 12, 2013)................................. 10

*Mathews v. PHH Mortgage Corp.*, 283 Va. 723 (2012) ............................................... 6

*Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012) ......................................... 8, 9

*McCall v. Chesapeake Energy Corp.*, 817 F. Supp. 2d 307 (S.D.N.Y. 2011) ............................... 7

*In re McWeeney,* 255 B.R. 3 (Bankr. S.D. Ohio 2000) ................................................................ 10

*Morris v. Wells Fargo Bank, N.A.*, 2012 WL 3929805 (W.D. Pa. Sept. 7, 2012) ..................... 7, 8

*Opperman v. Allstate N.J. Ins. Co.*, 2009 WL 3818063 (D.N.J. Nov. 13, 2009) ......................... 15

*Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14 (D. Mass. 2010) ................................................... 8, 9

*P.M.F. Services, Inc. v. Grady*, 703 F. Supp. 742 (N.D. Ill. 1989) ............................................... 9

*Paramount Pictures Corp. v. Johnson Broad. Inc.*, 2006 WL 367874 (S.D. Tex. Feb. 15, 2006). 7

*Passantino-Miller v. Wells Fargo Bank, N.A.*, 2013 WL 57024 (E.D. Cal. Jan 3, 2013) .............. 6

*Pfeifer v. Countrywide Home Loans, Inc.*, 211 Cal. App. 4th 1250 (2013) ................................... 6

*In re Prudential Ins. Co. Am. Sales Prac. Litig.*, 148 F.3d 283 (3d Cir. 1998) ............................ 5

*R.J. Wildner Contracting Co., Inc. v. Ohio Tpk. Comm'n*, 913 F. Supp. 1031 (N.D. Ohio 1996) . 9

*Red Roof Franchising, LLC v. AA Hospitality Northshore, LLC*, 877 F. Supp. 2d 140 (D.N.J.
     2012) ........................................................................................................................................... 7

*Rodriguez v. ACL Farms, Inc.*, 2010 WL 4683771 (W.D. Wash. Nov. 12, 2010) ...................... 10

*Robinson v. Old World Indus., Inc.*, 2010 WL 1838733 (S.D. Tex. May 6, 2010) ........................ 7

*Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32 (1st Cir. 2003) ........................ 10

*Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67 (E.D.N.Y. 2004) .................................. 5, 12

*Stan Lee Trading, Inc. v. Holtz*, 649 F. Supp. 577 (C.D. Cal. 1986) ........................................... 10

*Texas Motor Coach L.C. v. Blue Bird Body Co.*, 2005 WL 3132482 (E.D. Tex. Nov. 22, 2005).. 7

*Tex. Sales & Mktg., Inc. v. Distinctive Appliances, Inc.*, 2007 WL 399292 (S.D. Tex. Jan. 31,
     2007) ........................................................................................................................................... 7

*Total Air, Inc. v. Conn. Natural Gas Corp.*, 738 A. 2d 1167 (Conn. 1999) ............................... 15

*Tremont LLC v. Halliburton Energy Servs., Inc.*, 696 F. Supp. 2d 741 (S.D.Tex. 2010) .............. 7

*TSI Energy, Inc. v. Stewart & Stevenson Operations, Inc.,* 1998 WL 903629 (N.D.N.Y. Dec. 23,
     1998) ........................................................................................................................................... 7

*Union Pac. Res. Grp., Inc. v. Rhone-Poulenc, Inc.*, 45 F. Supp. 2d 544 (N.D. Tex. 1999) .......... 10

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) ............................ 11

iv

*Verizon Directories Corp. v. Ostad*, 2008 WL 2783358 (E.D.N.Y. July 15, 2008)........................ 7

*Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000) ...................................... 12

*Williams v. Wells Fargo Bank, N.A.*, 2011 WL 4368980 (S.D. Fla. Sept. 19, 2011) .................... 9

*Williams v. Wells Fargo Bank, N.A.,* 280 F.R.D. 665 (S.D. Fla. 2012)...................... 1, 2, 3, 10, 11

*Won Kyung Hwang v. Ohso Clean, Inc.*, 2013 WL 1632697 (N.D. Cal. Apr. 16, 2013).............. 8

*Zinser v. Accuflix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ......................................... 5

**Rules & Statutes**

Fed. R. Civ. P. 26(b)(3).............................................................................................................. 10

**Other Authorities**

7A Federal Practice and Procedure § 1778 (3d ed. 2005)........................................................... 10

1

## **INTRODUCTION**

2          Wells Fargo's Opposition to Plaintiffs' Motion for Class Certification is meritless.  This

3   case involves Wells Fargo's common kickback scheme, ███████████████████████

4   ███████████████████████████████████████████████████████████████████.  All

5   of the evidence regarding the existence and implementation of this scheme is necessarily common

6   to all Class members.  Thus, it is not surprising that two federal courts have certified classes of

7   borrowers to pursue claims against Wells Fargo arising from the same or similar conduct.[1]

8          Instead of focusing on whether a class should be certified, Wells Fargo principally

9   challenges the ***scope*** of the proposed Classes in this case, and implores the Court not to certify a

10  nationwide class because of alleged variations in state law.  *Opp. at 1, 6-18.*  This plea fails

11  because any differences in state law can be easily managed.  *See In re Conseco Life Ins. Co.*

12  *LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 529 (N.D. Cal. 2010) ("*Conseco*").  Indeed,

13  this is precisely the type of case that can and should be adjudicated on a nationwide class basis:

14  •   Wells Fargo operated its force-placed flood insurance program in a uniform manner

15      nationwide, with no distinction as to borrowers in different states;

16  •   The contract provisions at issue are uniform covenants in two standard mortgage forms

17      (the FHA Model Form and the Fannie Mae/Freddie Mac Uniform Instrument) that are

18      used throughout the country;

19  •   The U.S. Department of Housing and Urban Development ("HUD"), which promulgated

20      the uniform covenants in the FHA Model Form, has stated that they should be given a

21      uniform interpretation nationwide based on federal law (*see infra* at 4);

22  •   To the extent that state law applies to the uniform covenants, the claims at issue are

23      common law claims that do not vary significantly from state-to-state;

24  •   Any purportedly material differences in state law can be easily managed through a Special

25      Jury Verdict Form, *see Second Declaration of Kai Richter* ("*2d Richter Decl.*"), *Ex. 1*; and

26

---

27  [1] *See Lane v. Wells Fargo Bank, N.A.*, 2013 WL 3187410 (N.D. Cal. June 21, 2013); *Williams v.*

28  *Wells Fargo Bank, N.A.*, 280 F.R.D. 665 (S.D. Fla. 2012).  Plaintiffs hereby amend the proposed McKenzie Nationwide Kickback Class to exclude any persons who are members of the certified class in *Lane*.  The *Lane* class does not overlap with Plaintiffs' other proposed classes in any way.

1

- Wells Fargo has not shown that it would be "superior" to repeatedly litigate the same common issues on a state-by-state basis in various forums throughout the country.[2]

Notably, Wells Fargo does not dispute the accuracy of Plaintiffs' state law summary (*First Richter Decl., Ex. 48*) or submit a state law summary of its own. Whatever nuances it has identified with respect to the law in particular states on particular claims, it has not shown that Texas law is unique such that it bears no resemblance to the law of ***any*** state. Indeed, numerous courts have ruled that Texas law is consistent with the law of other states as to breach of contract (*see infra* at 7 n.10), unjust enrichment (*infra* at 8 n.13), and conversion (*infra* at 10 n.16).[3]

Wells Fargo points to the fact that the classes in *Williams* and *Lane* were certified as single-state classes, but largely ignores the courts' rulings actually certifying the matters as class actions. Regarding *Williams*, the plaintiffs in that case self-limited their proposed class to Florida borrowers, so the single-state class distinction is of no moment. *See Williams*, 280 F.R.D. at 669. Regarding *Lane*, the single-state class that was certified is directly attributable to the inadequacy of the *Lane* plaintiffs' counsel (including their failure to conduct ***any*** analysis of state law in their initial motion papers), and the Court's desire to craft a class in *Lane* that would not interfere with or overlap with other first-filed force-placed insurance ("FPI") cases against Wells Fargo, including the instant *McKenzie* action. *See Lane*, 2013 WL 3187410, at *4, *13-14.[4] Based upon Plaintiffs' comprehensive submissions here, which distinguish this case from the others, and the narrowly-tailored class definitions that include only those borrowers with the same uniform mortgage forms, a national class is appropriate.

Wells Fargo's remaining arguments fail. <u>First</u>, Plaintiffs have presented a common methodology for calculating damages on a class-wide basis. Although Wells Fargo takes issue

---

[2] To the contrary, such serial litigation (which already has manifested itself in *Williams*, *Lane*, the present action, and other related actions) imposes undue burdens on the judiciary and requires an exponentially greater expenditure of resources, to the detriment of everyone concerned.

[3] The Court should grant Plaintiffs leave to join additional plaintiffs to the extent that class representatives from additional states are deemed necessary to account for any differences in state law.

[4] The *Lane* opinion expressly states that "this Court's ruling denying certification of a nationwide class [does not] 'impair or impede' [the *McKenzie* Plaintiffs'] ability to litigate their own action[]. They are free to pursue class certification in their own lawsuit[]." *Id.* at *13.

1    with Plaintiffs' methodology, this merely presents another class-wide issue for resolution. Even

2    if Wells Fargo's criticisms had merit – and they do not – it would not be proper to "den[y] class

3    certification on the grounds that damages calculations would be individual." *See Leyva v.*

4    *Medline Indus., Inc.*, 716 F.3d 510. 516 (9th Cir. 2013).

5         <u>Second</u>, courts are reluctant to deny class action status simply because affirmative

6    defenses may be available against individual members. In fact, the courts in both *Lane* and

7    *Williams* rejected Wells Fargo's efforts to defeat class certification based on the same affirmative

8    defenses that it asserts here. *See Lane*, 2013 WL 3187410, at \*8; *Williams*, 280 F.R.D. at 674-75.

9         <u>Third</u>, Wells Fargo's attacks on the named Plaintiffs, including Mr. McKenzie's health,

10    fail to provide a basis to deny class certification. Both proposed representatives are typical in that

11    they were force-placed by Wells Fargo through Assurant or its affiliates (e.g., ASIC), and ███

12    ████████████████████████████████. Both also have shown they are ready, willing and

13    able to represent the Classes by appearing for depositions and responding to discovery.

14         <u>Finally</u>, Wells Fargo fails to offer any *bona fide* reason for denying certification of the

15    proposed Texas Class. Although it argues that claims relating to Texas residents should be

16    litigated in Texas, its prior motion to transfer this case (which sought venue in Minnesota and

17    disregarded the Plaintiffs' states of residence) was denied. *See ECF No. 72 at 37-38.* There is no

18    reason to revisit these venue issues again. Accordingly, Plaintiffs respectfully request that the

19    Court grant their Motion for Class Certification and certify the proposed Classes.

20                                    **<u>ARGUMENT</u>**

21   **I.**       **STATE LAW DIFFERENCES DO NOT PRECLUDE CERTIFICATION OF A NATIONAL CLASS**

22         Wells Fargo's principal argument is that "no national class should be certified because of

23    differences in state law." *Opp. at 6.* However, this argument should be rejected for at least three

24    reasons: (1) the contracts at issue are federal mortgage forms with uniform covenants that are

25    meant to be interpreted in a uniform manner nationwide; (2) to the extent that state law variations

26    are relevant to the interpretation of these federal mortgage forms, those variations (if any) are

27    limited; and (3) Plaintiffs have accounted for any differences in state law, and have proposed a

28    workable plan for addressing them through the use of a Special Jury Verdict Form.

3

**A.** **The Federal Mortgage Forms At Issue Contain Uniform Covenants That Are Meant To Be Uniformly Interpreted Nationwide Under Federal Law**

The first flaw in Wells Fargo's argument is that it presupposes that state law differences are relevant to the interpretation of federal mortgage forms (*i.e.*, the FHA Model Form and the Fannie Mae/Freddie Mac Uniform Instrument). Although Wells Fargo states that these mortgage forms incorporate the applicable law of the state in which the property is located (*Opp. at 9*), this is a half truth at best. The actual mortgage forms state: "This Security Instrument shall be governed by **Federal law** and the law of the jurisdiction in which the Property is located." *McKenzie Decl., Ex. 1 at ¶ 14; Biddix Decl., Ex. 1 at ¶ 16* (emphasis added). According to HUD, which is responsible for promulgating the uniform covenants in the FHA Model Form, this choice of law provision operates such that federal law applies to the uniform covenants in the mortgage (such as the covenant to maintain flood insurance), and state law applies to any non-uniform covenants for particular states that appear at the end of the mortgage (which are not at issue here):

> **[T]he interpretation of Paragraph 4 [of the FHA Model Mortgage Form] is properly a matter of federal law**. The mortgage's choice-of-law clause provides that the contract is "governed by federal law and the law of the jurisdiction in which the Property is located." State law may govern the portions of the standard FHA mortgage contract that vary from state to state, but **it would make little sense for the meaning of a uniform provision prescribed by a federal agency as a nationwide condition of participation in a federal program to depend on the content of state law**.

*2d Richter Decl., Ex. 2 at 13-14 n.3* (emphasis added).[5] Thus, state law is not a barrier to certification of a nationwide class because the uniform covenants in the FHA Model Form, as well as the Fannie Mae/Freddie Mac Uniform Instrument (which contains the same choice of law provision), are meant to be interpreted in a uniform manner nationwide under federal law.

**B.** **To The Extent That State Law Applies, Any Differences In State Law Are Not Significant And Can Be Managed Through A Special Jury Verdict Form**

Even if state law differences were relevant to the interpretation of the uniform covenants in these federal mortgage forms (which they are not), Wells Fargo "overstates the extent of any variations." *Conseco*, 270 F.R.D. at 529, 535 (certifying nationwide class). In a word, Plaintiffs' common law claims are "common" between the states. To the extent that any differences exist, they can be addressed through a Special Jury Verdict Form. *See 2d Richter Decl., Ex. 1.*

---

[5] In *Morris v. Wells Fargo Bank, N.A.*, No. 2:11-cv-00474 (W.D. Pa.), Wells Fargo relied upon and submitted as an exhibit the *amicus* brief that contains the above-quoted passage.

Although Wells Fargo cherry picks a few purported differences in state law as to each common law claim (while conveniently omitting to include its own comprehensive state law summary which would show the overall uniformity in state law), the relevant question is not whether there are *any* differences in state law, but rather whether such differences **predominate**. They do not. "At best, [Wells Fargo] has pointed to isolated and relatively minor variations that may be handled at trial 'by grouping similar state laws together and applying them as a unit.'" *Conseco*, 270 F.R.D. at 529 (quoting *In re Prudential Ins. Co. Am. Sales Prac. Litig.,* 148 F.3d 283, 315 (3d Cir.1998)). Accordingly, the purported state law differences "are not sufficiently anomalous to deny class certification." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998); *see also Pls' Memo at 21* (citing additional authorities).[6]

### 1.  **Breach of Contract**

As Plaintiffs noted in their opening brief, contract law does not materially vary between the states. *See Pls' Memo at 21* (citing authorities).[7] Accordingly, "claims arising from the interpretation of a form contract are particularly suited for class treatment, and breach of contract cases are routinely certified as such." *Cowit v. CitiMortgage, Inc.*, 2013 WL 940466, at *6 (S.D. Ohio Mar. 8, 2013) (allowing a nationwide breach of contract claim) (citations omitted).

The distinctions Wells Fargo attempts to manufacture regarding state contract law hardly predominate over the commonalities. For example, Wells Fargo places great emphasis on the fact that some states "require a plaintiff to prove that he performed" or "apply the defense of 'first

---

[6] Notably, Wells Fargo does not assert that differences in state law are a *per se* bar to certification of a nationwide class – nor could it. Rather, it merely asserts that "Plaintiffs seeking a multistate class action must present 'a suitable and realistic plan for trial of the class claims,' addressing how they propose to address individualized issues and variances in state law.'" *Opp. at 6* (quoting *Zinser v. Accuflix Research Inst., Inc.*, 253 F.3d 1180, 1189-90 (9th Cir. 2001)). Plaintiffs have done so here. For this reason, the Ninth Circuit's decision in *Zinser* and Judge Alsup's decision in *Lane* are distinguishable. *See Zinser*, 253 F.3d at 1189 ("[T]here was no manageable trial plan adequate to deal with individualized issues and variances in state law."); *Lane*, 2013 WL 3187410, at *4 ("Plaintiffs' initial motion did not even address the issue of state-law variances."). To the extent *Kunzelmann* held that differences in state law constitute an absolute bar to class certification, it is inconsistent with applicable Ninth Circuit authority, and should not be followed here. *See Conseco*, 270 F.R.D. at 529 (even "significant differences" in state law do not defeat certification of a nationwide class if there is a suitable and realistic plan for addressing such differences (citing *Zinser*, 253 F.3d at 1189.))

[7] *Accord Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 75 (E.D.N.Y. 2004); *Enfield v. Old Line Life Ins. Co. of Am.*, 136 N.M. 398, 402 (2004).

material breach.'"  *Opp. at 8, 11*.  However, even in states that impose such a performance requirement on the plaintiff (like California and Virginia), a borrower may sue for breach of contract where the lender/servicer oversteps its authority under the remedy provisions of the mortgage in the event of a breach.  *See, e.g., Pfeifer v. Countrywide Home Loans, Inc.*, 211 Cal. App. 4th 1250, 1279 (2013); *Mathews v. PHH Mortgage Corp.*, 283 Va. 723, 729-33 (2012).  To apply the doctrine of first material breach in this context would "defy common sense" because it would render the remedy provisions of the mortgage meaningless and grant the lender *carte blanche* to take whatever measures it wanted (however abusive) in the event of a breach by the borrower.  *Mathews*, 283 Va. at 732.[8]

The other distinctions Wells Fargo attempts to make also do not defeat certification:

- The fact that some states "require a breach to be 'material'" (*Opp. at 9*) is a red herring. Wells Fargo cannot argue that a breach of the insurance terms by Plaintiffs is "material" (*Opp. at 11*), but a breach by Wells Fargo is not.  It is a two-way street.[9]

- Wells Fargo also points to alleged state law differences regarding the use of extrinsic evidence in contract cases.  *Opp. at 9 n.5*.  However, the *Conseco* court expressly rejected this as a basis for denying nationwide class certification.  *See Conseco*, 270 F.R.D. at 529;

- Finally, for the reasons discussed below, Wells Fargo's asserted affirmative defenses are not a reason to deny certification of the proposed nationwide class.  *See infra* at 10-13.

Even if any of these purported differences in state law were significant (and they are not) the proper way to address them is a Special Verdict Form.  *See 2d Richter Decl., Ex. 1*. Moreover, even if a Special Verdict Form were not adequate to address such differences (which it is), this Court should, at the very least, certify a multi-state class as to those states which apply

---

[8] The court's decision in *Passantino-Miller v. Wells Fargo Bank, N.A.*, 2013 WL 57024 (E.D. Cal. Jan. 3, 2013) is not to the contrary, as it did not involve allegations of unlawful kickbacks or commissions.  The plaintiffs challenged Wells Fargo's flood insurance coverage requirement, but did "not allege that they undertook any efforts to obtain flood insurance in any amount." *Id.* at *5.

[9] It is also disingenuous for Wells Fargo to assert that materiality is a question of fact in Florida but a question of law in New York.  *See Opp. at 9*.  In New York, materiality is also a question of fact where it is legitimately in dispute.  *See Bear, Stearns Funding, Inc. v. Interface Grp.-Nev., Inc.*, 361 F. Supp. 2d 283, 295-96 (S.D.N.Y. 2005) ("[C]ourts and commentators have long recognized that materiality is primarily a question of fact, the resolution of which is necessarily a function of context and circumstances." (quoting *Dopp v. Pritzker*, 38 F.3d 1239, 1244 (1st Cir. 1994))); *F. Garofalo Elec. Co., Inc. v. New York Univ.*, 754 N.Y.S.2d 227, 230 (2002).

1    their contract law in the same manner or a substantially similar manner as Texas.[10]

2                    **2.    Implied Covenant of Good Faith and Fair Dealing**

3            State law is also "relatively uniform" as to the implied covenant of good faith and fair

4    dealing.  *See In re Checking Account Overdraft Litig.*, 281 F.R.D. 667, 680 n.12, 681 (S.D. Fla.

5    2012).  The distinctions that Wells Fargo draws are not significant.  Whether states recognize an

6    "independent claim" for breach of the implied covenant is a matter of semantics, not substance.[11]

7    Although Wells Fargo argues that states disagree about whether the implied covenant constrains

8    discretion "clearly conferred by the contract's express terms," the contracts at issue do not clearly

9    confer the right to receive kickbacks in connection with FPI.[12]  Finally, to the extent that states

10   differ as to whether good faith is measured by a subjective or objective standard, the Special

11

12   ―――――――――――
     [10] Other courts have specifically noted that Texas contract law is similar to contract law in other
13   states, including California.  *See, e.g.*, *Carrier v. Am. Bankers Life Assur. Co. of Fla.*, 2008 WL
     312657, at *1, 12 (D.N.H. Feb. 1, 2008) (noting that although states have "different rules for
14   considering ambiguous provisions" in contracts, the differences "appear to be minor" and
     plaintiffs "have demonstrated that the laws of [*Iowa, Idaho, Kansas, Maine, Michigan, Montana,
     North Dakota, New Hampshire, New Jersey, Ohio, Oregon, Rhode Island,* and *Texas*] are similar
15   … in all material respects"); *Robinson v. Old World Indus., Inc.*, 2010 WL 1838733, at *2 n.1
     (S.D. Tex. May 6, 2010) (*Texas* and *Illinois*); *Chartis Specialty Ins. Co. v. Tesoro Corp.*, 2013
16   WL 944254, at *9 (W.D. Tex. Mar. 11, 2013) (*California* and *Texas*); *Tremont LLC v.
     Halliburton Energy Servs., Inc.*, 696 F. Supp. 2d 741, 840 (S.D. Tex. 2010) (*Texas* and
17   *Delaware*); *Lattimore Materials Co., L.P. v. Sedgwick Claims Mgmt. Servs., Inc.*, 2009 WL
     1351099, at *5 (E.D. Tex. May 12, 2009) (*Texas* and *Tennessee*); *Tex. Sales & Mktg., Inc. v.
18   Distinctive Appliances, Inc.*, 2007 WL 399292, *4 n.5 (S.D. Tex. Jan. 31, 2007) (*California* and
     *Texas*); *TSI Energy, Inc. v. Stewart & Stevenson Operations, Inc.*, 1998 WL 903629, at *4
19   (N.D.N.Y. Dec. 23, 1998) (*Texas* and *New York*); *Red Roof Franchising, LLC v. AA Hospitality
     Northshore, LLC*, 877 F. Supp. 2d 140, 148-49, 149 n.4 (D.N.J. 2012) (*Texas, Minnesota,* and
20   *New Jersey*); *McCall v. Chesapeake Energy Corp.*, 817 F. Supp. 2d 307, 316 n.10 (S.D.N.Y.
     2011) (*Texas* and *Oklahoma*), *aff'd*, 509 F. App'x 62 (2d Cir. 2013); *Barkwell v. Sprint Commc'ns
21   Co. L.P.*, 2010 WL 5069912, at *4 (M.D. Ga. Dec. 6, 2010) (*Texas* and *Georgia*); *AICCO, Inc. v.
     Tradestar Const. Servs., Inc.*, 2009 WL 3836827, at *3 (S.D. Tex. Nov. 11, 2009) (*Texas* and
22   *New Mexico*); *Verizon Directories Corp. v. Ostad*, 2008 WL 2783358, at *3 n.3 (E.D.N.Y. July
     15, 2008) (*Texas* and *New York*); *Paramount Pictures Corp. v. Johnson Broad. Inc.*, 2006 WL
23   367874, at *5 n.6 (S.D. Tex. Feb. 15, 2006) (*California* and *Texas*); *Texas Motor Coach, L.C. v.
     Blue Bird Body Co.*, 2005 WL 3132482, at *4 n.1 (E.D. Tex. Nov. 22, 2005) (*Texas* and
24   *Georgia*); *Empire Indem. Ins. Co. v. N/S Corp.*, 2012 WL 7761421, at *3-4 n.4-5 (E.D. Tex. Dec.
     5, 2012) (*Texas* and *California*); *Consol. Cos., Inc. v. Lexington Ins. Co.*, 616 F.3d 422, 432 (5th
25   Cir. 2010) (*Texas, Mississippi,* and *Louisiana*).

26   [11] *See Morris v. Wells Fargo Bank, N.A.*, 2012 WL 3929805, at *8 (W.D. Pa. Sept. 7, 2012)
     (noting that Pennsylvania does not recognize an "independent cause of action" for breach of the
27   covenant of good faith and fair dealing, but further holding that plaintiff's allegations regarding
     breach of the implied covenant "augmented" her breach of contract claim and could be pursued as
28   part of that claim).

     [12] *See Leghorn v. Wells Fargo Bank, N.A.*, 2013 WL 3064548 at *23 (N.D. Cal. June 19, 2013).

                                              7
     ―――――――――――――――――――――――――――――――――――――――――

1   Verdict Form can easily ask the jury to make separate determinations under both standards.

2           **3.    <u>Unjust Enrichment</u>**

3           Federal courts have noted the similarities in state law as to unjust enrichment.  *See Pls'*

4   *Memo at 22* (citing authorities).  Although Wells Fargo relies on *Mazza v. Am. Honda Motor Co.,*

5   *Inc.*, 666 F.3d 581 (9th Cir. 2012) for the proposition that unjust enrichment claims "vary

6   materially from state to state*"* (*Opp.* at 12), *Mazza* primarily dealt with the extraterritorial

7   application of California statutory claims to other states and did not include a thorough analysis of

8   state law as to unjust enrichment.   For example, the court did not identify any particular

9   differences in state law as to unjust enrichment.   Nor did it consider whether Texas law is

10  consistent with other states with regard to unjust enrichment claims.[13]  Thus, *Mazza* "did not

11  establish a bright-line rule that no nationwide class may be certified" in a case like this.  *Won*

12  *Kyung Hwang v. Ohso Clean, Inc.*, 2013 WL 1632697, at *21 (N.D. Cal. Apr. 16, 2013) (Spero,

13  J.).   To the contrary, *Mazza's* "holding was cabined to 'the facts and circumstances of th[at]

14  case.'"  *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1161 (C.D. Cal. 2012).

15          The mere fact that unjust enrichment law may "vary from state to state" does not mean

16  that any differences in state law "outweigh the similarities."  *Keilholtz v. Lennox Hearth Products*

17  *Inc.*, 268 F.R.D. 330, 341 (N.D. Cal. 2010).   "Here, the variations among some states' unjust

18  enrichment laws are not material because they do not significantly alter the central issue or the

19  manner of proof in this case. Common to all class members and provable on a class-wide basis is

20  whether Defendants unjustly profited from the sale of [FPI]."  *Id. (internal citations omitted).*[14]

21  _____

22  [13]  *See Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14, 20 (D. Mass. 2010) (certifying class finding
    that unjust enrichment laws of *Alabama, Arizona, Arkansas, California, Colorado, Connecticut,*
23  *District of Columbia, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland,*
    *Massachusetts, Michigan, Minnesota, Missouri, Nevada, New Jersey, New Mexico, New York,*
24  *North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, Tennessee, Texas, Utah,*
    *Virginia*, and *Washington* are "substantially common, and the differences between them are
25  manageable"); *Arlandson v. Hartz Mountain Corp.*, 792 F.Supp.2d 691, 696, 710 (D.N.J. 2011)
    (*Arizona, California, Florida, Georgia, Illinois, Louisiana, Maryland, Minnesota, New Jersey,*
26  *New York, North Carolina, Oregon, Pennsylvania, Tennessee, Texas* and *Virginia*); *Cummins v.*
    *Bickel & Brewer*, 2001 WL 930788, at *2 (N.D. Ill. Aug. 16, 2001) (*Texas* and *Illinois*).
27  [14]  The differences in state law referenced in *Kunzelmann* (*Opp. at 13*) are not a proper basis for
    denying certification of a nationwide class here.   The *Kunzelmann* court wrongly held that
28  Pennsylvania applies a "direct benefit" test, *see Morris*, 2012 WL 3929805, at *9, and even in
    states that do have a "direct benefit" requirement (such as Florida), that requirement has been
    found to not bar claims against WFI and other FPI defendants.  *See Williams v Wells Fargo Bank*

8

Moreover, to the extent that any material differences do exist, the *Mazza* court recognized that they may be reconciled by using "different jury instruction[s] for materially different bodies of state law." *Mazza*, 666 F.3d at 594.  Thus, *Mazza* and the case law cited by Plaintiffs are in harmony.  *See Overka*, 265 F.R.D. at 21 ("In sum, the Court can charge the jury as to the base claim of unjust enrichment, …. [and] then go on and ask several special questions …. The Court considers this to be a manageable way to address the claim for unjust enrichment.").

### 4.    Conversion

Finally, Wells Fargo overstates differences in state law as to Plaintiffs' conversion claim. As the Seventh Circuit has stated:

> We believe that the particular choice of law is not crucial in this case....  The same result would be reached under the conversion and replevin laws of most states.  As one district court recently noted, "[t]he principles of what conduct constitutes conversion are universal."  *P.M.F. Services, Inc. v. Grady*, 703 F. Supp. 742, 743 n.1 (N.D. Ill. 1989).  Indeed, the claims of trover and conversion have been around, in much the same form, for centuries.

*FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300, 302 n.2 (7th Cir. 1990).

To the extent there are any variations in state law as to conversion, they are not relevant to this case.  First, even if some states do not recognize conversion claims in relation to ordinary account funds, it is well-established that misappropriation of ***escrow*** funds (such as Class members' mortgage escrow accounts) supports a claim for conversion.[15]  Second, even if some states require proof of intent for conversion, Wells Fargo cannot reasonably dispute that it intended to exert dominion over Class members' funds.  Finally, the fact that Texas has a

---

*N.A.*, 2011 WL 4368980, at *9 (S.D. Fla. Sept. 19, 2011) ("[J]ust because the benefit conferred by Plaintiffs on Defendants did not pass directly from Plaintiffs to Defendants – but instead passed through a third party – does not preclude an unjust-enrichment claim."); *Holmes v. Bank of America, N.A.*, 2013 WL 1693709, at *4 (W.D.N.C. April 16, 2013) (applying Florida law), *aff'd and adopted*, 2013 WL 2317722 (W.D.N.C. May 28, 2013).  Moreover, the fact that some states "require that there be no adequate legal remedy at law" (*Opp. at 13*) is irrelevant because Plaintiffs limit their unjust enrichment claim to WFI precisely because they have a contract law remedy against the bank.  Further, Wells Fargo's arguments regarding whether it was "paid" for the FPI charges fails to recognize that the premium for each and every policy was taken from Class members' mortgage escrow accounts and added to their outstanding loan obligation. Finally, to the extent that Alabama courts find unjust enrichment claims "unsuitable for class treatment" (*Opp. at 13*), the Court may exclude Alabama residents from the class, if necessary, with respect to this claim; that is certainly not a reason to deny certification nationwide.

[15] *See, e.g.*, *Gillis v. Benefit Trust Life Ins. Co.*, 601 So. 2d 951, 952 (Ala. 1992); *Hanover Exch. v. Metro Equity Grp. LLC*, 2009 WL 2143866, at *2 (E.D. Mich. July 14, 2009) (citing *Cozadd v. Healy*, 338 Mich. 157, 160 (1953)); *R.J. Wildner Contracting Co., Inc. v. Ohio Tpk. Comm'n*, 913 F. Supp. 1031, 1043-44 (N.D. Ohio 1996).

9

"demand and refusal" requirement and other states do not is irrelevant because this requirement does not apply where such a demand would have been futile. *See Dawson v. U.S.*, 203 F.2d 201, 203 (5th Cir. 1953); *Lang v. Harwood*, 145 S.W.2d 945, 949 (Tex. Civ. App. 1940).[16]

## II. WELLS FARGO'S PURPORTED AFFIRMATIVE DEFENSES DO NOT RENDER CLASS CERTIFICATION INAPPROPRIATE

Wells Fargo's purported affirmative defenses do not defeat class certification. "Courts have traditionally been reluctant to deny class action status as failing the predominance requirement of Rule 23(b)(3) simply because affirmative defenses may be available against individual members." *Avilez v. Pinkerton Gov't Servs.*, 286 F.R.D. 450, 466-67 (C.D. Cal. 2012) (internal quotation marks and citation omitted).[17] Indeed, Wells Fargo's affirmative defense challenges to predominance have been rejected in other FPI cases. *See Lane*, 2013 WL 3187410, at *8; *Williams*, 280 F.R.D. at 674-75. As Judge Alsup stated in *Lane*:

> Defendant contends that defenses of waiver, estoppel, and laches may apply, or that the voluntary payment doctrine may bar individual claims. Defendant does not contest, however, that it applied the same policies and procedures for force-placing flood and hazard insurance to all loans it serviced.… The success or failure of the potential defenses is susceptible to common methods of proof. The basic facts are common to the class: class members had similar contracts and received the same form notice of lapsed insurance; they failed to act in response to receiving multiple

---

[16] To the extent that there are any material differences in state law that cannot be addressed through the use of a Special Jury Verdict Form, the Court should (at a minimum) certify a multi-state class composed of Texas and other states that do not materially differ with respect to conversion claims. *See* ECF No. 72 at 32 ("*Texas* and *New Mexico* law appear uniform with respect to the elements of conversion.") (emphasis added); *Castillo v. Hernandez*, 2011 WL 2489910 (W.D. Tex. June 17, 2011) (*New Mexico* and *Texas*); *Liberty Life Ins. Co. v. Myers*, 2013 WL 530317 (D. Ariz. Feb. 12, 2013) (noting that Texas law shaped the law for conversion in Arizona); *In re Deasy*, 275 B.R. 490, 497 (Bankr. N.D. Tex. 2002) *aff'd sub nom.*, *Cotten v. Deasy*, 2002 WL 31114061 (N.D. Tex. Sept. 23, 2002) ("In *Texas* the standards for tortious conversion of money is very similar to that in *Ohio*" (citing *In re McWeeney*, 255 B.R. 3, 8 n.4 (Bankr. S.D. Ohio 2000))) (emphasis added), *aff'd sub nom.*, *In re Deasy*, 66 F. App'x 526 (5th Cir. 2003); *Union Pac. Res. Grp., Inc. v. Rhone-Poulenc, Inc.*, 45 F. Supp. 2d 544, 551 (N.D. Tex. 1999) *(Texas, Delaware* and *New York)*, *aff'd in part, rev'd in part*, 247 F.3d 574 (5th Cir. 2001); *Stan Lee Trading, Inc. v. Holtz*, 649 F. Supp. 577, 580 (C.D. Cal. 1986) (*Texas* and *California)*.

[17] *Accord*, *Rodriguez v. ACL Farms, Inc.*, 2010 WL 4683771, at *2 (W.D. Wash. Nov. 12, 2010) ("[T]he fact [that] affirmative defenses may be available against certain prospective class members does not defeat class certification." (citing *Smilow v. Southwestern Bell Mobile Sys. Inc.*, 323 F.3d 32, 39 (1st Cir. 2003))); *Kelly v. City & County of San Francisco*, 2005 WL 3113065 (N.D. Cal. Nov. 21, 2005) ("Unique affirmative defenses that require some individualized inquiry do not present a per se bar to certification."); 7A FEDERAL PRACTICE & PROCEDURE § 1778 (3d ed. 2005) ("[T]he action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.").

10

notices; defendant eventually force-placed insurance … on class members' properties; defendant then charged class members an allegedly inflated premium for the insurance and received a percent of the premium as a commission or kickback …. Whether and to what extent class members were adequately warned of the commissions, could have avoided the force-placement of insurance (and payment of the commission), or accepted the benefits of the force-placed insurance is a matter for trial, or summary judgment, based on common methods of proof.

*Lane*, 2013 WL 3187410, at *8. The same reasoning applies here.

**Voluntary Payment Doctrine**: The "voluntary payment doctrine" was addressed in *Lane* and does not defeat class certification here. *Id*. at *8. Further, numerous courts have rejected this "voluntariness" defense on the merits.[18]

**Waiver, Estoppel, Consent, and Mitigation:** Wells Fargo's waiver, estoppel, consent, and mitigation defenses are simply relabeled versions of its "voluntary payment" defense, and are based on the same meritless theories. Once again, these defenses were expressly addressed (and rejected as a basis for opposing class certification) in *Lane*. *See Lane*, 2013 WL 3187410, at *8.[19]

**Setoff and Recoupment**: Wells Fargo's set-off and recoupment defenses also do not defeat class certification.[20] In *Williams,* the court emphatically rejected Wells Fargo's threat of asserting counterclaims against class members as a basis for denying certification. *See Williams*, 280 F.R.D. at 674-75. This Court should as well.[21]

**Statute of Limitations:** It is well-established that statutes of limitation do not defeat

---

[18] *See, e.g., Cannon v. Wells Fargo Bank, N.A.*, 917 F.Supp.2d 1025, 1053 (N.D. Cal. 2013) ("[E]ven if the force-placed insurance was procured because Plaintiffs failed to pay for their flood insurance, that does not mean that Defendants could do whatever they wanted with respect to the force-placed insurance.... That the force-placed insurance was triggered by Plaintiff's conduct does not negate allegedly inequitable conduct by Defendants."); *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1083 (N.D. Cal. 2012); *Williams*, 2011 WL 4368980, at *10.

[19] *Accord Easterling v. Connecticut Dep't of Correction*, 278 F.R.D. 41, 50 (D. Conn. 2011) ("individual mitigation issues" do not defeat predominance because they "are less substantial than the issues that will be subject to generalized proof"); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001) (same).

[20] *See, e.g., Berrien v. New Raintree Resorts, Int'l, LLC*, 276 F.R.D. 355, 364 (N.D. Cal. 2011) ("Assuming that such a defense applies here, it pertains to the amount each class member may receive as damages. The potential existence of individualized damages assessments, however, does not detract from the action's suitability for class certification.") (internal quotation marks and citation omitted); *James D. Hinson Elec. Contracting Co., Inc. v. Bell S. Tel.*, 275 F.R.D. 638, 647-48 (M.D. Fla. 2011) ("BellSouth's set-off rights … do not defeat certification.").

[21] Even if it were problematic to include within a class certain borrowers who "have defaulted on their loans" (*Opp. at 21*), the solution to this alleged problem would not be to deny certification altogether. Rather, the Court may narrow the class definitions to exclude such borrowers, if necessary. *See Lane*, 2013 WL 3187410, at *9-10; *Williams*, 280 F.R.D. at 675.

predominance.[22]   Whether this defense applies can be determined mechanically for each Class member by comparing their date of force-placement against the relevant limitations period.

**Filed Rate Doctrine**:  Finally, Wells Fargo's arguments regarding the filed-rate doctrine miss the mark because Plaintiffs are challenging Wells Fargo's kickbacks, not ASIC's premiums. *See, e.g., Leghorn*, 2013 WL 3064548, at *20 ("Because Plaintiffs are not challenging [the] rate in making their claim against Wells Fargo, the filed-rate doctrine and … California Insurance Code are inapplicable."); *Ellsworth*, 908 F. Supp. 2d at 1081-83.[23]   The filed-rate doctrine is also inapplicable because the rate that is approved in each state is the rate charged by the insurer **to the bank**, not the amount that is passed on to the borrower.[24]   *Birnbaum Report at 7,¶ 17(d)*.

---

[22] *See, e.g.*, *Conseco*, 270 F.R.D. at 530 n.8 (citing *Cameron v. E. M. Adams & Co.*, 547 F.2d 473, 477-48 (9th Cir. 1976)); *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000)); *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 681 (N.D. Cal. 2011); *Lee v. ITT Corp.*, 275 F.R.D. 318, 324 (W.D. Wash. 2011); *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 78 (E.D.N.Y. 2004).

[23] Wells Fargo's arguments concerning whether the commissions and discounted tracking services it received were "inappropriate" (*Opp. at 10*) merely serve to illustrate two of the class-wide issues in this case.  In any event, the "authority" that it cites does not support its position. The fact that commission amounts are referenced in a rate filing is a red herring because it is the rate, not the commission, that is approved.  *See Donabedian v. Mercury Ins. Co.*, 116 Cal. App. 4th 968, 990 (2004) (filed-rate doctrine "cannot immunize insurers from civil liability for illegal procedures that are creatively stowed away in a voluminous regulatory filing").  This is especially so, given that commissions are properly paid to an insurance company's agent or broker, not the agent or affiliate of a bank.  As noted in Plaintiffs' opening brief, the Federal Housing Finance Agency has issued a rule that prohibits payment of commissions and other compensation to lenders/servicers and their affiliates **nationwide** in connection with FPI.  *See Pls' Memo at 9.* Moreover, the rate filings that Wells Fargo cites were QBE's rate filings, not ASIC's, and therefore are irrelevant here because the proposed Classes are limited to borrowers who were force-placed through Assurant or its affiliates (including ASIC).  *See Opp. at 17 n.36* (citing QBE rate filings in Florida and Mississippi).  Indeed, QBE's Florida rate filing is particularly irrelevant because it was submitted in December 2012, **after** Wells Fargo already had stopped accepting commissions in connection with FPI.  It is even more curious that Wells Fargo cites the settlement between the New York Department of Financial Services ("NYDFS") and Assurant. *See Opp. at 17 n.37*.  That Consent Order forbids Assurant and its affiliates from paying "commissions to a servicer or a person or entity affiliated with a servicer on force-placed insurance policies obtained by the servicer."  *First Richter Decl., Ex. 46 at 9, ¶ 7*.  The Consent Order further provides that Assurant and its affiliates "shall not provide free or below-cost outsourced services to servicers, lenders, or their affiliates."  *Id. at 10, ¶ 10*.  Although "outsourced services do not include expenses associated with tracking functions that [Assurant and its affiliates] incur **for their own benefit**," *id.* (emphasis added).  This exception has no application here because the tracking that ASIC performs for Wells Fargo is performed for Wells Fargo's benefit.  *See 2d Richter Decl., Ex. 3 (Birnbaum Report) at 5, ¶ 15*.  Wells Fargo's contracts with ASIC expressly provide that such tracking services are provided "*to Wells Fargo*" and are not performed for ASIC's own benefit.  *First Richter Decl., Ex. 25 at 2, ¶ 8* (emphasis added); *First Richter Decl., Ex. 28 at 1, ¶ 8* (emphasis added).

[24] This distinction is significant.  There is no reason to be concerned about whether kickbacks to a

12

1   Regardless, the filed-rate defense only applies to insurance carriers and is not available to Wells

2   Fargo.  *See Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1277 (S.D. Fla. 2009)

3   ("Plaintiffs argue that Defendant is a bank, not an insurance company, and therefore the filed rate

4   doctrine does not apply to it…. The Court finds that Plaintiffs have the better argument.").

5   **III.   PROOF OF DAMAGES IS NOT AN OBSTACLE TO CLASS CERTIFICATION**

6          This Court also should reject Wells Fargo's argument that "individual factual issues on

7   damages" preclude certification.  *Opp. at 18.*  Although Wells Fargo relies on *Comcast Corp. v.*

8   *Behrend*, 133 S.Ct. 1426 (2013) (an antitrust case), that case is distinguishable and does not

9   support its arguments.  Indeed, post-*Comcast*, the Ninth Circuit has reiterated that "[t]he amount

10  of damages is invariably an individual question and does not defeat class action treatment."

11  *Leyva*, 716 F.3d at 514 (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)).[25]

12         Plaintiffs have presented a class-wide damages methodology tied to their kickback claims.

13  Their methodology for calculating "commissions damages" is: (1) consistent with the

14  methodology approved in *Hofstetter v. J.P. Morgan Chase Bank, N.A.*, No. 10-1313-WHA (N.D.

15  Cal.), *see Olsen Decl. (ECF No. 142),* ¶ 5; and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[26]  Wells Fargo's criticisms of

17  this methodology simply present another class-wide issue, and are unfounded in any event.[27]

18         Although Wells Fargo complains that Plaintiffs have not presented a methodology for

19  calculating damages due to discounted flood insurance tracking services (*see Pls' Memo at 10-*

20  *11*), the percentage of the premium attributable to these improper subsidies to Wells Fargo also

21  can be easily quantified, and may simply be added to the commission percentage to determine the

22  _____

23  mortgage servicer (or its affiliate) impact the premiums ***charged to the servicer***.  The problem arises when the borrower is expected to pick up the tab.

24  [25] The only situation in which damages present an obstacle to class certification is if the plaintiffs' damages methodology is entirely disconnected from their liability theory.  *See Leyva*, 716 F.3d at 514 (discussing *Comcast*, 133 S.Ct. at 1431-35).  That is clearly not the situation here.

25  [26] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26  ▮▮▮▮▮▮▮▮▮▮▮

27  [27] Contrary to Wells Fargo's position, "a borrower may assert a claim for damages or restitution where he or she was charged for unauthorized or improper expenses associated with force-placed

28  insurance, … [e]ven if the borrower has not yet paid the charges."  *See Lane*, 2013 WL 3187410, at *9.  Regardless, Wells Fargo obviously keeps a record of who paid and who did not.

13

overall damage to each Class member.  *See Birnbaum Report at 3, ¶ 8.*  Plaintiffs' insurance

expert, Birny Birnbaum, presented a similar analysis in *Lane*, which Judge Alsup deemed

sufficient for purposes of certifying the class:

> Birnbaum defines "unreasonable expenses" as those included in the premium charged to borrowers that were not actually "associated with the provision of" force-placed insurance. According to Birnbaum, such expenses would include an unearned commission or kickback. They would also include expenses related to servicing the entire portfolio of mortgages, as those expenses would be incurred by Wells Fargo regardless of whether any particular mortgage required force-placed insurance. Plaintiffs have a class-wide method for trying to prove damages.

*Lane*, 2013 WL 3187410, at *9 (internal citations omitted).  This Court should find the same.[28]

## IV.   THE NAMED PLAINTIFFS ARE TYPICAL OF OTHER CLASS MEMBERS AND ADEQUATE

Wells Fargo's attacks on the named Plaintiffs (*Opp. at 23-24*) are not a reason to deny

certification.  Wells Fargo suggests that Plaintiff Biddix is "atypical" because he is allegedly

subject to "defenses[] such as the voluntary payment doctrine, waiver, consent, and laches."  *Opp.*

*at 23.*  Yet, these are the same purported defenses that Wells Fargo seeks to assert against other

Class members.  *See Opp. at 20-21.*  Thus, these defenses do not make Biddix atypical.[29]

Moreover, Wells Fargo's selected quotations from his deposition testimony are misleading.[30]

Wells Fargo does not contest that Plaintiff McKenzie is typical of other Class members.

Instead, it simply attacks his adequacy on the ground that he has a health condition.  This

argument ignores the fact that Mr. McKenzie has fulfilled **all** of his duties as a class

representative to date.[31]  In any event, Mr. McKenzie's wife (who signed the same mortgage and

---

[28] Although Wells Fargo argues that some class members may have been "charged LPFI premiums that were *lower* than the premiums they would have paid for voluntary insurance," *Opp. at 19*, this does not render Plaintiffs' damages analysis inadequate.  *See Lane*, 2013 WL 3187410, at *9.  The relevant question is what they should have paid for *lender-placed* insurance.

[29] It is undisputed that Mr. Biddix has a uniform Fannie/Freddie mortgage; he received generic form letters related to force-placed flood insurance from Wells Fargo; Defendants force-placed flood insurance on his property through ASIC; and Defendants received a commission on the force-placed flood insurance.  *See Pls' Memo at 11-12*.

[30] Wells Fargo meshed almost a dozen *partial* sentences from Mr. Biddix's testimony to make it look like he knew and did not care that he was being charged for excessively-priced FPI.  *See Opp. at 23.*  This is not true.  Mr. Biddix testified multiple times that he disagreed with the commissions and kickbacks and therefore sought legal representation.  *See Biddix Dep. at 20:2-5* ("My characterization is, I did not agree with the flood insurance. When it was imposed on me, I believe they put it in a fashion to where they were going to get kickbacks on it.") (*Barilovits Decl. Ex. B*); *Biddix Dep. at 20:24 – 21:1* ("And then, of course, I was disgruntled. Found attorneys.").

[31] Wells Fargo cites no Ninth Circuit cases supporting its argument that Mr. McKenzie is inadequate, and the cases it cites are inapposite.  In *Krim v. pcOrder.com, Inc.*, the proposed

14

was subject to the same practices) is willing to serve as a class representative if the Court determines that he is too frail to carry out his duties.  *See Declaration of Janet McKenzie.*[32]

## V.   THE TEXAS CLASS ALSO SHOULD BE CERTIFIED

Wells Fargo's challenge to the proposed Texas Subclass is meritless and disingenuous. Each of the elements of Plaintiffs' tortious interference claim[33] can be proven on a class-wide basis based on the common evidence set forth in Plaintiffs' opening brief.  *See Pls' Memo at 2-12.*  The authorities cited by Wells Fargo are distinguishable.[34]

Although Wells Fargo argues that the claims of Texas borrowers should not be litigated here, the Court already has determined that this case is properly venued.  *See ECF No. 72 at 36-38.*  It is disingenuous for Wells Fargo to assert that Plaintiffs' residence is critically important, where it previously sought to transfer the case to Minnesota, where no Plaintiff resides.  *Id.*  Even worse, Wells Fargo suggests that members of the Texas Subclass are not represented by counsel in Texas (*Opp. at 25*), even though Texas counsel has appeared and submitted a declaration in support of class certification.  *See Tighe Declaration* (ECF No. 147).

## CONCLUSION

For the above reasons, Plaintiffs respectfully request that this Court grant their motion.

---

[32] representative was found inadequate because he was too sick to attend a hearing or finish a deposition. 210 F.R.D. 581, 589 (W.D. Tex. 2002).  Here, Mr. McKenzie has performed ***all*** tasks asked of him, including responding to discovery and giving deposition testimony lasting three hours and fifty-three minutes (over thirty minutes longer than Mr. Biddix's deposition).  *See Biddix Dep. at 3:1-10 (Barlovits Decl. Ex. B); McKenzie Dep. at 2:1-10; 87:8 (Barlovits Decl. Ex. D).*  Second, unlike the class representative in *Edgnton v. R.G. Dickinson & Co.*, Mr. McKenzie has not demonstrated a "difficulty with recalling the critical events and facts surrounding [the case]." 139 F.R.D. 183, 195-96 (D. Kan. 1991).  Third, Mr. McKenzie is not mentally incapacitated.  *See Opperman v. Allstate N.J. Ins. Co.*, 2009 WL 3818063, at *6 (D.N.J. Nov. 13, 2009) (class representative inadequate because she suffered from "severe dementia").

[32] If the Court determines that additional class representatives are necessary or desirable, Plaintiffs have submitted declarations from other individuals who are willing to serve in this capacity.  *See Declaration of Sherri Hawes; Declaration of Richard Perez.*

[33] The elements of tortious interference with contract are: (1) the existence of a contract; (2) willful and intentional interference; (3) interference that proximately caused damage; and (4) actual damage or loss.  *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997).

[34] *See Opp. at 24 n. 48* (citing *Christiana Mortg. Corp. v. Del. Mortg. Bankers Ass'n*, 136 F.R.D. 372 (D. Del. 1991); *Conn. Cooling Total Air, Inc. v. Conn. Natural Gas Corp.*, 738 A.2d 1167 (Conn. 1999)).  In *Christiana*, each class member was required to prove that they actually *had* a business relationship subject to interference, making the case "notably different" from a case involving illegal overcharges demonstrated through business records. 136 F.R.D. at 383-84.  The *Connecticut Cooling* case is distinguishable for similar reasons. 738 A.2d at 1170-71.

1                 Respectfully Submitted,

2                 NICHOLS KASTER, PLLP

3  Dated:  August 12, 2013      By: s/ Kai Richter
                   Kai Richter (*pro hac vice*)

5                 FEAZELL & TIGHE, LLP

6                  Austin Tighe (pro hac vice)
                  6618 Sitio Del Rio Boulevard
7                  Building C-101
                  Austin, Texas 78730
8                  Telephone: (512) 372-8100
                  Facsimile: (512) 372-8140
9                  Email: austin@feazell-tighe.com

11              TAUS, CEBULASH & LANDAU, LLP

12               Brett Cebulash (pro hac vice)
                 Kevin S. Landau (pro hac vice)
13               80 Maiden Lane, Suite 1204
                New York, NY 10038
14               Telephone: (212) 931-0704
                Facsimile: (212) 931-0703
15               Email: bcebulash@tcllaw.com
                 klandau@tcllaw.com

17             Attorneys for Plaintiffs
              (Other attorneys listed on caption page)

Plaintiffs' Reply Memorandum in Support of Motion for Class Certification